UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF B.H., *et al.*,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>NETFLIX, INC.,<br><br>　　　　Defendant. | Case No.  4:21-cv-06561-YGR<br><br>ORDER DENYING MOTION TO REMAND AND MOTION FOR JURISDICTIONAL DISCOVERY<br><br>Dkt. Nos. 25, 26 |

　　　　Plaintiffs the Estate of B.H., John Herndon, B.H.'s father and successor in interest, J.H., a minor, and T.H. a minor, on behalf of themselves and others similarly situated (collectively "plaintiffs"), have filed a motion to remand this class action against defendant Netflix, Inc. ("Netflix").  Plaintiffs have also filed a motion for jurisdictional discovery.

　　　　Having carefully considered the papers submitted on both motions along with the pleadings in this action, and for the reasons set forth below, the Court **DENIES** both motions.[1]

**I.　　BACKGROUND**

　　　　On April 30, 2021, plaintiffs filed their class action complaint in the Superior Court of the State of California for the County of Santa Clara.  (Dkt. No. 3-1, the "Complaint.")  The class action alleged claims for failure to adequately warn, wrongful death, and negligence stemming from an alleged increase in youth suicide after Netflix released its show *Thirteen Reasons Why*. Netflix removed the class action complaint to this Court on August 25, 2021, asserting that jurisdiction is proper under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(A). (Dkt. No. 3.)  After the case was removed to this Court, plaintiffs filed a First Amended Complaint, which included new class definitions.  (Dkt. No. 22.)  Plaintiffs then filed a motion to

---

[1] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds this motion appropriate for decision without oral argument and **VACATES** the hearing set for November 16, 2021.

remand and a motion for discovery necessary to establish exceptions to CAFA jurisdiction. (Dkt. Nos. 25-26.)

## II. LEGAL STANDARD

A defendant's removal is proper where the federal courts have original jurisdiction over an action brought in state court. 28 U.S.C. § 1441(a). Pursuant to CAFA, this Court has original jurisdiction over class actions in which there are at least 100 class members, at least one of which is diverse in citizenship from any defendant, and for which the aggregate amount in controversy exceeds the sum of $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d); *Ibarra v. Manheim Invs., Inc.*, 775 F. 3d 1193, 1196-97 (9th Cir. 2015). Generally, courts strictly construe the removal statute against removal jurisdiction. *See, e.g.*, *Provicial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009). However, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

Under CAFA, the removing party bears the burden of establishing federal jurisdiction. *Ibarra*, 775 F.3d at 1197. The removing party must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold, *Dart Cherokee*, 574 U.S. at 88 (citing 28 U.S.C. § 1446(c)(2)(B)), that the number of class members exceeds 100, and that minimal diversity exists between the parties. *See Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006).

When a party moves to remand under CAFA, they present either a "facial" attack or a "factual" attack on the removing party's showing of the jurisdictional elements. A facial attack does not present any new evidence, but instead argues that the allegations offered "are insufficient on their face to invoke federal jurisdiction." *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (cleaned up and citation omitted)). By contrast, a "factual" attack "contests the truth of the [] factual allegations, usually by introducing evidence outside the pleadings." *Salter*, 974 F.3d at 964 (quoting *Leite*, 749 F.3d at 1121 (citation omitted)). When a removing party is presented with a facial attack, the

2

1  Court applies a lower evidentiary standard; in those cases, a removal "need not contain evidentiary
2  submissions but only plausible allegations of jurisdictional elements." *See Salter*, 974 F.3d at 964
3  (quoting *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019)) (cleaned up).
4  When the attack is factual, courts apply a higher evidentiary standard. The removing party "must
5  support [the] jurisdictional allegations with 'competent proof' . . . under the same evidentiary
6  standard that governs in the summary judgment context." *Salter*, 974 F.3d at 964 (quoting *Leite*,
7  749 F.3d at 1121 (citations omitted)).

### III. DISCUSSION

#### A. Identifying The Operative Complaint For Removal

Plaintiffs filed the First Amended Complaint after Netflix's removal to this Court. Before the Court can begin a jurisdictional analysis, it must determine which complaint is operative for removal purposes. "[T]he circuits have unanimously and repeatedly held that whether remand is proper must be ascertained on the basis of the pleadings at the time of removal. . . . This unanimity seems firmly to establish that plaintiffs' attempts to amend a complaint after removal to eliminate federal jurisdiction are doomed to failure." *Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1277 (9th Cir. 2017). The Ninth Circuit has recognized a narrow exception for amendments that provide some amplification for federal jurisdiction. *Id.* (explaining the "very narrow" exception set forth in *Benko v. Quality Loan Service Corp.*, 789 F.3d 1111 (9th Cir. 2015)). The Ninth Circuit has clarified that the very narrow exception does not "strike a new path to permit plaintiffs to amend their class definition, add or remove defendants, or add or remove claims in such a way that would *alter the essential jurisdictional analysis*." *Id.* at 1279 (emphasis supplied).

Here, plaintiffs First Amended Complaint includes express class definitions that were not present in their original Complaint filed in the state court. The proposed classes are as follows:

> <u>California Negligence and Failure-to-Warn Class</u>: All ascertainable California citizens (the harmed minors who survived or their successors in interest on behalf of the decedents who did not) who watched Netflix's Show, in full or in part, and assert that they suffered as a result of Netflix's failure to adequately warn and/or as a result of being negligently targeted and manipulated by Netflix (or its streaming and content-delivery products) to watch the Show.
>
> <u>Global Wrongful-Death Class</u>: All ascertainable beneficiaries (or their equivalents

such as those otherwise legally entitled or with standing to bring claims for wrongful death or an equivalent under their state or national laws) of decedents who watched Netflix's Show, in full or in part, and died as a result of Netflix's failure to adequately warn and/or as a result of being negligently targeted and manipulated by Netflix (or its streaming and content-delivery products) to watch the Show.

(First. Am. Compl. ¶ 76.) Both parties agree that plaintiffs' original Complaint did not include such express class definitions even though it made broad class-type allegations.

In its Notice of Removal, Netflix alleged that while the "Plaintiffs failed to include a class definition in their Complaint, Plaintiffs purport to bring the Action on behalf of class members allegedly harmed by the Netflix Show *Thirteen Reasons Why*, which was distributed throughout the United States via Netflix streaming service. Because the class is not geographically limited, it includes members nationwide, and CAFA's requirement is satisfied." (Dkt. No. 3 at ¶ 6.) Indeed, plaintiffs filed suit in their original Complaint as class-representatives "on behalf of all others similarly situated," without any geographic restrictions or limitations. (Compl. ¶¶ 73, 78, 82.) In a subsection entitled "Netflix's failure to adequately warn harmed and caused the death of many children," the original Complaint references an "alarming story" from shortly after the shows release where a school in Florida reported a significant spike in self-mutilation and threats of suicide. (Compl. ¶ 44.) The same section also alleges that "[t]he effect was not merely domestic. For example, similar devastating impacts were identified in Canada." (Compl. ¶ 48.) Plaintiffs' own description of its "ascertainable and numerous" class in its original Complaint is consistent with this broad scope. Plaintiffs described their classes as: "Here, as a result of Netflix's inadequate warnings, Netflix caused the death of an estimated hundreds, possibly a thousand, children who committed suicide since the release of the Show, with their many survivors, heirs, etc., holding viable claims. Beyond those who died, there are many more who suffered substantial trauma at the hands of callous business decisions that prioritized reaching certain business milestones over the safety of Netflix's customers." (Compl. ¶ 69.)

Now, after removal, plaintiffs have limited the failure to warn class to "all ascertainable California citizens" and have submitted declarations that this limitation was intended when the Complaint was filed in state court. *Broadway Grill* does not give this Court discretion to consider the First Amended Complaint. Restricting the class to California citizens when a limitation did

not exist in the original Complaint is the exact definitional change rejected by the Ninth Circuit. *Broadway Grill*, 856 F.3d at 1277-78 ("Instead of being composed of all the merchants in the state of California, regardless of citizenship, the class, as defined in the amended complaint, became exclusively composed of California citizens. We conclude such an amendment is outside the exception recognized in *Benko* and thus cannot affect the removability of the action."). Accordingly, the Court considers the original Complaint as filed in the state court as the operative complaint for removal.

### B. Whether An Express Class Definition Is A Prerequisite For Removal

A threshold issue presented in the motion to remand is whether the case should be remanded to the state court on the basis that the original Complaint does not expressly include a "class definition." Under CAFA, a "class action" is defined as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). To "determine whether the matter in controversy" exceeds the sum of $5 million, "the claims of the individual class members shall be aggregated." *Id*. § 1332(d)(6). The phrase "class members" includes "persons (named or unnamed) who fall within the ***definition of the proposed*** or certified ***class***." *Id*. § 1332(d)(1)(D) (emphasis supplied).

There is no dispute that this case is a class action within the meaning of CAFA. In its Notice of Removal, Netflix highlights that "Plaintiffs fail to include a [class] definition in their complaint." (Dkt. No. 3 at ¶ 4.) Plaintiffs argue that this dispenses of Netflix's jurisdictional argument and that the case should be remanded. Specifically, plaintiffs argue that in order for there to be "class members" in this case, "there must be a definition of the proposed or certified class in a class action." Since there is no class definition, plaintiffs argue that there are no class members, and in turn no class under section 1332(d)(1). The Court is not persuaded.

To begin, the Court notes that CAFA does not provide a meaning for "definition of the proposed . . . class" and that the Ninth Circuit has not addressed this precise issue. However, in analyzing whether a district court can consider amendments to a pleading, the Ninth Circuit has stated that "[a] class definition, however, will always be present in any class action complaint,

5

state or federal." *Broadway Grill*, 856 F.3d at 1278. *Broadway Grill* does not explain why. The First Circuit's decision cited by the parties, which is instructive here, helps fill the gap as the only case analyzing whether removal can be denied based on an insufficient "class definition." In *College of Dental Surgeons of Puerto Rico v. Connecticut General Life Insurance Company*, the First Circuit acknowledged that "[a] complaint that contains class-type allegations historically has been assumed to assert a class action before formal class certification." 585 F.3d 33, 40 (1st Cir. 2009). Ultimately, the First Circuit held that evaluating the inadequacy of a class definition is a question for the class certification stage and not on a motion for remand under CAFA. *Id*. at 42.

In light of the foregoing, the Court understands that its duty is to analyze the undisputed class-type allegations in order to discern what the proposed class is without weighing the adequacy of any purported class definition, whether express or implied. This approach is consistent with CAFA's legislative history which stresses that vague class definitions cannot be used to evade federal jurisdiction.[2]

Here, plaintiffs filed suit as class-representatives "on behalf of all others similarly situated" without any express geographical restriction. (Compl. ¶¶ 73, 78, 82.) Even without an expressly stated "class definition," "class members" are referenced several times in the original complaint. *See, e.g.*, Compl. ¶ 68 ("the members of the class"); *id*. ¶ 68(a) ("each class member"); *id*. ¶ 68(c) ("members of the class"). Furthermore, as discussed above, plaintiffs' original Complaint characterizes what they view as "ascertainable and numerous" classes. (Compl. ¶ 69.) That conceded description includes at least three classes of similarly situated individuals. The first relates to those similarly situated persons, who Netflix "as a result of Netflix's inadequate warnings, [] caused the death of an estimated hundreds, possibly a thousand, children who

---

[2] *See* Senate Report, S. Rep. 109-14, S. Rep. No. 14, 109th Cong. 1st Sess. 2005, 2005 WL 627977 *43 (Feb. 28, 2005) ("[N]amed plaintiffs will not be able to evade federal jurisdiction with vague class definitions or other efforts to obscure the citizenship of class members. The law is clear that, once a federal court properly has jurisdiction over a case removed to federal court, subsequent events generally cannot 'oust' the federal court of jurisdiction. While plaintiffs undoubtedly possess some power to seek to avoid federal jurisdiction by defining a proposed class in particular ways, they lose that power once a defendant has properly removed a class action to federal court."). Plaintiffs criticize reliance on this Senate Report. However, the Ninth Circuit in *Broadway Grill* considered it in reaching its holding concerning amended class definitions. 856 F.3d at 1278-79.

committed suicide since the release of the Show." (*Id*.)  The second relates to "their many survivors, heirs, etc., holding viable claims." (*Id*.)  The third relates to the "many more who suffered substantial trauma at the hands of callous business decisions that prioritized reaching certain business milestones over the safety of Netflix's customers." (*Id*.)  These are enough to support the jurisdictional analysis under CAFA.[3]

### C. Whether CAFA's Jurisdictional Requirements Are Satisfied

#### i. Numerosity

A district court shall not have original jurisdiction pursuant to CAFA if the number of members of all proposed plaintiff classes in the aggregate is less than 100.  28 U.S.C. § 1332(d)(5)(B).  Plaintiffs do not dispute that the number is less than 100.  (Dkt. No. 26 at 11 n.4.)  Instead, plaintiffs argue that Netflix has failed to plead and prove that there are at least 100 class members.

Here, the Court finds that Netflix's Notice sets forth a plausible allegation that the plaintiffs' class is composed of over 100 individuals.  The Notice of Removal incorporates plaintiffs' admission that there "are hundreds, possibly a thousand" proposed class members.  Plaintiffs argue that Netflix has not met its burden because it has not produced any evidence, however, this misconstrues the standard applicable here.  As outlined in the legal standard section, Netflix is only required to produce evidence when a factual attack is made.  Plaintiffs actually agree here with the plausible allegation that there "are hundreds, possibly a thousand" proposed class members.  Thus, evidence was not required.  *Salter*, 974 F.3d 959 at 964-65 (holding that the district court erred in requiring factual evidence when the truth of CAFA jurisdictional allegations

---

[3] Plaintiffs' strategy here illustrates why it is improper to consider amendments to a class definition on a motion to remand after a case has been removed.  As discussed below, plaintiffs argue that their original class action complaint lacked a "class definition" and that this precluded removal.  They do not argue that the Court can or should consider the amended class definitions in order to clarify whether the numerosity, minimal diversity, and the amount in controversy requirements were satisfied.  However, plaintiffs seek to reap the benefit of the amendment in forging their purported class into a home state exception.  Plaintiffs are the masters of their complaint for jurisdictional purposes.  *Hawaii ex rel. Louie v. HSBC Bank Nevada, N.A.*, 761 F.3d 1027, 1040 (9th Cir. 2014).  *Broadway Grill* instructs that plaintiffs could have structured their Complaint to avoid CAFA in the first instance and before removal.  Because they did not, they cannot avoid CAFA through amendments that would alter the jurisdictional analysis.

were not disputed). Plaintiffs' pleading is also a judicial admission sufficient to establish the jurisdictional element. *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376-77 (9th Cir. 2006). CAFA's numerosity requirement is met.

### ii. Minimal Diversity

CAFA confers jurisdiction on federal district courts over class actions when, among other things, "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). There is no dispute here that Netflix and the named plaintiffs are not diverse. Netflix nevertheless argues that minimal diversity is met because plaintiffs filed their class action on behalf of class members harmed by *Thirteen Reasons Why*, which was distributed throughout the United States and internationally via Netflix's streaming platform. Netflix also highlights that there are no geographical limits to the class and points to the allegation concerning Florida's spike in youth at-risk behavior after the show was released. (Dkt. No. 3 at ¶ 6.)

Again, plaintiffs do not dispute that they are seeking a global class and "that minimal diversity very likely exists." (Dkt. No. 26 at 11 n.4.) Instead, plaintiffs argue that Netflix has not met its factual burden of proving by preponderance of the evidence that there are class members outside of California. However, plaintiffs misconstrue the burdens of a facial attack. They have not contested the truth of Netflix's allegation. Furthermore, Netflix's allegation that minimal diversity is satisfied is plausible given the broad class proposed in plaintiffs' Complaint. Indeed, Ninth Circuit case law suggests that the burden is low. In *Ehrman v. Cox Communs., Inc.*, a defendant's burden was satisfied even though allegations were made on information and belief based upon the plaintiffs' own pleading. 932 F.3d 1223, 1227-1228 (9th Cir. 2019). Plaintiffs have not persuaded that a different result should be reached, especially where their own allegations identify harms in Florida and Canada for a sprawling global class. (Compl. ¶¶ 44, 49.) Accordingly, the minimal diversity requirement is met.

### iii. Amount in Controversy

There is no dispute here that the Complaint did not expressly allege an amount in controversy. Netflix nevertheless argues that the amount of controversy is sufficient based upon the face of the Complaint due to the wrongful death damages sought.

8

The removing party may not establish federal jurisdiction "by mere speculation and conjecture, [or] with unreasonable assumptions." *Ibarra*, 775 F.3d at 1197-98. Instead, it must rely on "real evidence and the reality of what is at stake in the litigation." *Id*. Nevertheless, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89.

Here, Netflix's Notice of Removal outlines the assumptions that it makes concerning the amount in controversy. First, Netflix highlights the various economic and non-economic damages for injuries allegedly suffered in connection with wrongful death claims. (Dkt. No. 3 at ¶ 9.) Second, it alleges that "Courts have recognized that individual claims for wrongful death are sufficient to establish that the complaint has put in controversy more than $75,000 for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a)" for individual claims. (*Id*.) Third, assuming there are only 100 putative class members with just $75,000 each, the amount put in controversy by the plaintiffs is more than $5 million. (*Id*.)

Plaintiffs do not dispute that the amount in controversy exceeds $5,000,000. (Dkt. No. 26 at 11 n.4.) Instead, they argue that Netflix is still required to produce evidence in order to satisfy its burden. Again, this is inconsistent with the controlling legal standard. Since the plaintiffs have not challenged the "reasonable assumptions" in Netflix's plausible allegations, and instead embrace their truth, the amount in controversy requirement is met. *Salter*, 974 F.3d at 965; *see also Ibarra*, 775 F. 3d at 1199 (permitting reasonable assumptions in calculating the amount of controversy).[4] Furthermore, plaintiffs' judicial admission concedes that the amount in controversy is sufficient to satisfy this element. *Singer*, 116 F.3d at 376-77 (holding that a judicial admission may establish the amount in controversy). Accordingly, all three CAFA factors are satisfied and removal was proper.

### D. Whether CAFA's Exceptions Are Satisfied

In order to escape federal jurisdiction under CAFA, plaintiffs invoke two exceptions. The

---

[4] Plaintiffs' suggestions that *Dart Cherokee* was wrongly decided or that it is inapplicable lacks any support grounded in Ninth Circuit case law. The Court has not been persuaded that any deviation is necessary.

9

first is the mandatory home-state exception pursuant to 28 U.S.C. § 1332(d)(4)(B).  The second is the discretionary home-state exception pursuant to 28 U.S.C. § 1332(d)(3).  As the party seeking to remand these proceedings, the plaintiffs bear the burden of proving that a CAFA exception applies.  *See Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007).

Under the mandatory home-state controversy exception, the Court must decline to exercise jurisdiction where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed."  28 U.S.C. § 1332(d)(4)(B).  To meet this burden, plaintiffs must provide "some facts in evidence from which the district court may make findings regarding class members' citizenship."  *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 884 (9th Cir. 2013).  While this "jurisdictional finding of fact should be based on more than guesswork," the Court may "make reasonable inferences from facts in evidence."  *Id.* at 884, 886.

Here, plaintiffs fail to provide sufficient facts to carry their burden of showing that two-thirds of proposed class members are California citizens.  They concede that they do not know the scope of their national class, let alone the composition of its members across states.  Therefore, this factor is not satisfied.  *Broadway Grill*, 856 F.3d at 1276 ("The district court correctly denied the motion to remand because the class, on its face, included many non-citizens of California, and [the moving party] could not establish two-thirds were California citizens.").

Plaintiffs' second exception fails for similar reasons.  The Court "may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction" when more than one-third of the putative class, and the primary defendants, are citizens of the state where the action was originally filed."  28 U.S.C. § 1332(d)(3).  There is no evidence in the record to support a finding that more than one-third of the putative class are citizens of California.  Therefore, this exception fails.  Because plaintiffs have failed to establish that an exception to CAFA applies, their motion to remand is **DENIED WITHOUT PREJUDICE**.

### E. Timeliness Of Removal

Plaintiffs on reply raise a new argument in support of remand.  For the first time, they assert that Netflix's removal was untimely.  Raising new argument in reply is improper.  *See*

*Floyd v. Filson*, 949 F.3d 1128, 1145 n.6. (9th Cir. 2020) (holding that new argument was forfeited when it was not raised in the opening brief); *Colgate v. JUUL Labs, Inc.*, 345 F. Supp. 3d 1178, 1196 (N.D. Cal. 2018) (declining to consider theory for dismissal raised for the first time in reply). The timing requirements are also procedural, not jurisdictional, and can be forfeited. *Corono-Contreras v. Gruel*, 857 F.3d 1025, 1029 (9th Cir. 2017); *Firstoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir. 1980) ("Although the time limit is mandatory and a timely objection to a late petition will defeat removal, a party may waive the defect or be estopped from objecting to the untimeliness by sitting on his rights."). Plaintiffs waived the issue by not raising it earlier.

### F. Jurisdictional Discovery

Plaintiffs also request jurisdictional discovery in order to meet their burden in order to establish that a CAFA exception applies.[5] The request is **DENIED**.

The Court has discretion to grant jurisdictional discovery to assist it in determining whether it has subject matter jurisdiction. *See Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n. 24 (9th Cir. 1977). "[A]ny decision regarding jurisdictional discovery is a discretionary one, and is governed by existing principles regarding post-removal jurisdictional discovery, including the disinclination to entertain substantial, burdensome discovery on jurisdictional issues." *Abrego*, 443 F.3d at 692 (internal quotation marks and citation omitted). Furthermore, it is appropriate to deny a request for jurisdictional discovery that is "based on a little more than a hunch that it might yield jurisdictionally relevant facts." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008).

Limited jurisdictional discovery is permissible in those instances where it is *likely* to

---

[5] Specifically:

> Plaintiffs seek information that is exclusively in the province of Netflix about which accounts watched the Show, who Netflix targeted and manipulated into watching the Show, and their contract information and account addresses—all with the simple goal of ascertaining, if for the California citizens, there is any assertion of harm as a result as a result of Netflix's targeting and/or failure to adequately warn and, for both California and non-California citizens alike, whether anyone died as a result of Netflix's targeting or failure to warn.

(Dkt. No. 25 at 13.)

11

support a CAFA exception. *See Modragon*, 736 F.3d at 885 (permitting jurisdictional discovery where it was suspected that the two-thirds citizen requirement would be satisfied). Netflix has submitted unrefuted evidence that its content can be accessed in more than 190 countries. (Long Decl. ¶ 2.) Based on the face of plaintiffs' Complaint, which asserts global claims, it is apparent that the class as alleged includes many non-citizens of California. Plaintiffs only speculate that there are more California citizens in the class than non-citizens and they have not persuaded the Court that limited discovery is appropriate. This speculation is insufficient to support a claim for jurisdictional discovery. *Boschetto*, 539 F.3d at 1020.

Notably, Netflix opposed the discovery sought by plaintiffs on the ground that it does not exist, that it would be unduly burdensome, and that it cannot establish the "simple goal" sought by plaintiffs. Declarations were submitted in support of Netflix's assertions. Plaintiffs did not file a reply and have effectively conceded Netflix's argument.[6] The request for jurisdictional discovery is **DENIED**.

### IV.    CONCLUSION

For the reasons state above, plaintiffs' motion for remand is **DENIED**. Plaintiffs' motion for jurisdictional discovery is also **DENIED**. Pursuant to this Court's Order Granting Stipulated Request for Order Changing time (Dkt. No. 35), plaintiffs have **14 days to file an opposition** to Netflix's Motion to Strike/Dismiss the First Amended Complaint. Netflix has **21 days from the opposition to file a reply**.

This Order terminates Docket Numbers 25 and 26.

**IT IS SO ORDERED.**

Dated: November 12, 2021

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**

---

[6] Netflix also presented unrefuted evidence and argument that in 2017, when *Thirteen Reasons Why* was released, only 0.5% of the estimated global number of child suicides occurred in California. Plaintiffs did file the Declaration of Rory Stevens in support of their motion for jurisdictional discovery. (Dkt. No. 39.) However, it is not cited and its relevancy has not been made clear.