1   Gregory Keenan (*pro hac vice* pending)
    DIGITAL JUSTICE FOUNDATION
2   81 Stewart Street
3   Floral Park, New York 11001
    (516) 633-2633
4   Gregory@DigitalJusticeFoundation.org

5   Andrew Grimm (*pro hac vice* pending)
    DIGITAL JUSTICE FOUNDATION
6   15287 Pepperwood Drive
7   Omaha, Nebraska 68154
    (531) 210-2381
8   Andrew@DigitalJusticeFoundation.org

9   Ryan Hamilton (SBN 291349)
    HAMILTON LAW LLC
10  5125 South Durango, Suite C
11  Las Vegas, Nevada 89113
    (702) 818-1818
12  Ryan@HamLegal.com

13  *Attorneys for Plaintiffs*[1]

14              **UNITED STATES DISTRICT COURT**

15          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

16                      **OAKLAND DIVISION**

17
    THE ESTATE OF ISABELLA "BELLA"          Case No. 4:21-cv-6561-YGR
18  HERNDON, JOHN HERNDON, J.H., *a minor*,
    T.H., *a minor*,                         **Plaintiffs' Opposition to Defendant's**
19                                           **Motion to Strike and, in the alternative, to**
                                             **Dismiss [Dkt. 28]**
20  *on behalf of themselves and others similarly*
    *situated*,
21                                           **Notice Date:** January 11, 2022
                    *Plaintiffs*,            **Notice Time:** 2:00 p.m.
22                                           **Courtroom:** 1 (via Zoom)
            v.                               **Judge:** Hon. Yvonne Gonzalez Rogers
23  NETFLIX INC.,
                    *Defendant*.
24

25

26

27

28  —————————————————
    [1] Additional counsel are listed on the following page.  All statutory citations are to the California
    Code of Civil Procedure unless otherwise indicated.  All docket citations are to the ECF's
    pagination, not the party's pagination.  All emphasis supplied unless otherwise noted.

1

Rory Stevens (SBN 338941)
LAW OFFICE OF RORY L. STEVENS
4303 Southwest Cambridge Street
Seattle, Washington 98136
(206) 850-4444
RoryLawStevensEsq@Gmail.com

Megan Verrips (*pro hac vice* pending)
INFORMATION DIGNITY ALLIANCE
P.O. Box 8684
101 Southwest Madison Street
Portland, Oregon 97207
(925) 330-0359
Megan@InformationDignityAlliance.org

James D. Banker (SBN 317242)
DIGITAL JUSTICE FOUNDATION
210 Flamingo Road, #424
Las Vegas, Nevada 89169
(714) 722-5658
JimBanker@Gmail.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Page**

ARGUMENT ...................................................................................................... 4

I. DEFENDANT'S ARGUMENTATION DOES NOT RESPOND TO THE FACTS AS ALLEGED, RENDERING MUCH OF ITS MOTION UNRESPONSIVE TO THE CLAIMS ACTUALLY ASSERTED. **ERROR! BOOKMARK NOT DEFINED.**

II. DEFENDANT IS INCORRECT REGARDING THE APPLICABILITY OF THE CALIFORNIA ANTI-SLAPP LAWSUIT HERE. ........................................................................... 7

    A. Anti-SLAPP is inapplicable to this action because it is subject to both the public-interest exception and the commercial-speech exception to anti-SLAPP. .................. 7

    B. Neither of the claims arise from statements or conducts protected under §425.16(e) of California's anti-SLAPP statute. .......................................................... 11

III. DEFENDANT IS INCORRECT ON THE MERITS OF THIS ACTION AND THE SHOWING OF "MINIMAL MERIT" UNDER THE CALIFORNIA ANTI-SLAPP STATUTE. ..................................... 20

    A. Plaintiffs have standing and brought suit within the limitations period. .................. 20

    B. Defendant's content-delivery platform and targeting algorithms are tangible software products. ...................................................................................... 21

    C. Defendant had a special relationship with Bella and, regardless, owed her a duty of reasonable care. .................................................................................. 24

    D. Plaintiffs have adequately pled causation, should have leave to amend if the Court disagrees, and Defendants raise an affirmative defense. ........................................... 28

CONCLUSION ...................................................................................................... 32

# TABLE OF AUTHORITIES

### Cases

Aghaian v. Minassian,
    64 Cal. App. 5th 603 (2021)..................................................................................... 20

Briggs v. Eden Council for Hope & Opportunity
    19 Cal.4th 1106 (1999). ........................................................................................ 16

City of Cotati v. Cashman,
    29 Cal. 4th 69 (2002). ........................................................................................... 11

Club Members for an Honest Election v. Sierra Club,
    45 Cal. 4th 309 (2008). ........................................................................................... 9

Dual Diagnosis Treatment Ctr., Inc. v. Buschel,
    6 Cal. App. 5th 1098 (2016)................................................................................... 15

Exline v. Gillmor,
    67 Cal. App. 5th 129 (2021)................................................................... 7, 10, 11, 16

FilmOn.com Inc. v. DoubleVerify Inc.,
    7 Cal. 5th 133 (2019). .............................................................. 13, 14, 15, 16, 17

Ingels v. Westwood One Broad. Servs., Inc.,
    129 Cal. App. 4th 1050 (2005)............................................................................... 11

Inland Oversight Comm. v. Cty. of San Bernardino,
    239 Cal. App. 4th 671 (2015).................................................................................. 8

Int'l Fed'n of Prof'l & Tech. Eng'rs, Local 21, AFL-CIO v. Superior Court ,
    42 Cal. 4th 319 (2007). ......................................................................................... 16

Klem v. Access Ins. Co.,
    17 Cal. App. 5th 595 (2017)................................................................................... 9

La Liberte v. Reid,
    966 F.3d 79 (2d Cir. 2020).................................................................................... 18

Major v. Silna,
    134 Cal. App. 4th 1485 (2005)......................................................................... 10, 11

Makaeff v. Trump Univ., Ltd. Liab. Co.,
    736 F.3d 1180 (9th Cir. 2013)............................................................................... 18

Martin v. Inland Empire Utils. Agency,
    198 Cal. App. 4th 611 (2011)................................................................................. 7

Murray v. Tran,
    55 Cal. App. 5th 10 (2020).................................................................................... 12

Nelson v. Adams USA, Inc.,
  529 U.S. 460 (2000)................................................................................................. 18

New.Net, Inc. v. Lavasoft,
  356 F. Supp. 2d 1090 (C.D. Cal. 2004).................................................................. 10

Nygard, Inc. v. Uusi-Kerttula,
  159 Cal. App. 4th 1027 (2008)............................................................................... 17

Planned Parenthood Minn. v. Rounds ,
  686 F.3d 889 (8th Cir. 2012).............................................................................. 14, 18

Plumbers & Steamfitters, Local 290 v. Duncan,
  57 Cal. App. 4th 1083 (2007).................................................................................. 9

Rand Res., LLC v. City of Carson,
  6 Cal. 5th 610 (2019). ....................................................................................... 12, 17

Redfield v. Oakland C. S. R. Co.,
  110 Cal. 277 (1895). ............................................................................................... 20

San Diegans for Open Gov't v. Har Constr., Inc.,
  240 Cal. App. 4th 611 (2015)............................................................................... 8, 10

San Diegans for Open Gov't v. San Diego State Univ. Research Found.,
  13 Cal. App. 5th 76 (2017)....................................................................................... 8

Serrano v. 180 Connect, Inc.,
  478 F.3d 1018 (9th Cir. 2007)................................................................................... 7

Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,
  559 U.S. 393 (2010). ................................................................................................ 18

Simpson Strong-Tie Co., Inc. v. Gore,
  49 Cal. 4th 12 (2010). ........................................................................................... 8, 10

Strathmann v. Acacia Research Corp.,
  210 Cal. App. 4th 487, 501 (2012). ...................................................................... 8, 9

The Inland Oversight Comm. v. Cty. of San Bernardino,
  239 Cal. App. 4th 671 (2015).................................................................................... 9

Tourgeman v. Nelson & Kennard,
  222 Cal. App. 4th 1447 (2014)................................................................................. 8

United States ex rel. Newsham v. Lockheed Missiles & Space Co.,
  190 F.3d 963 (9th Cir. 1999).................................................................................... 18

Wilson v. CNN,
  7 Cal. 5th 871, 890 (2019). ................................................................................... 8, 15

World Fin. Grp., Inc. v. HBW Ins. & Fin. Servs., Inc.,
    172 Cal. App. 4th 1561 (2009)................................................................................. 15

## **Statutes**

Cal Code Civ. Pro. §366.1. ................................................................................ 20

Cal. Code Civ. Pro. § 425.16. ............................................................................ 12

Cal. Code Civ. Pro. § 425.17. ....................................................................... 7, 11

Cal. Code Civ. Pro. §352. .................................................................................. 20

Cal. Code Civ. Pro. §377.20. ............................................................................. 20

Cal. Code Civ. Pro. §377.60. ............................................................................. 20

Plaintiffs' Opposition to Defendant's MTD [Dkt. 28] in No. 4:21-cv-6561-YGR

1

**ARGUMENT**

2

3    I.   **DEFENDANT IS INCORRECT REGARDING THE APPLICABILITY OF THE CALIFORNIA ANTI-SLAPP LAWSUIT HERE.**

4

5        A.   **Anti-SLAPP is inapplicable to this action because it is subject to both the public-interest exception and the commercial-speech exception to anti-SLAPP.**

6        Four issues are addressed in this section.  First, this action is public-interest litigation under

7    §425.17(b), a type of action for which anti-SLAPP is wholly inapplicable.  Second, all the causes of

8

9    action asserted are aimed against commercial acts as defined by §425.17(c) and, for this additional

10   reason, the anti-SLAPP statute does not apply.  Third, a potential carveout from the public-interest

11   exclusion found at §425.17(d) does not apply, primarily because this action pertains to private

12   individualized communications, not public promotions.  Fourth, and finally, Defendant has waived,

13   or at least forfeited, a reply on these threshold issues because its Motion didn't address them.

14                                        * * * * *

15       After enacting the anti-SLAPP statute, the California Legislature determined that the anti-

16   SLAPP statute had "as much potential for abuse as the frivolous SLAPP suits it was enacted to

17   summarily resolve."  Martin v. Inland Empire Utils. Agency, 198 Cal. App. 4th 611, 621-22 (2011).

18   The Legislature observed a "'disturbing abuse of Section 425.16[,]" §425.17(a), and wanted to

19   "limit *corporate* abuse of the anti-SLAPP law," Exline v. Gillmor, 67 Cal. App. 5th 129, 140 (2021)

20   (emphasis in original).  Accordingly, the Legislature offered a partial remedy for anti-SLAPP abuse

21   by enacting "exclusions" to anti-SLAPP.  See Wilson v. CNN, 7 Cal. 5th 871, 890 (2019); Simpson

22   Strong-Tie Co., Inc. v. Gore, 49 Cal. 4th 12, 21-22 (2010) ("In 2003, concerned about the

23   'disturbing abuse' of the anti-SLAPP statute, the Legislature enacted section 425.17 to exempt

24

25   certain actions from" anti-SLAPP motions).

26       **First**, the public-interest exclusion codified at §425.17(b) applies here.  Its applicability

27

28   presents a "threshold consideration[.]"  San Diegans for Open Gov't v. San Diego State Univ.

Research Found., 13 Cal. App. 5th 76, 93 (2017).  Section 425.17's exclusions "must be addressed before considering an anti-SLAPP motion."  San Diegans for Open Gov't v. Har Constr., Inc., 240 Cal. App. 4th 611, 628 (2015).

Section 425.17(b)'s public-interest exclusion renders anti-SLAPP motions inapplicable to "public interest and class action lawsuits 'brought solely in the public interest or on behalf of the general public'" where "*three specified conditions*" are met.  Inland Oversight Comm. v. Cty. of San Bernardino, 239 Cal. App. 4th 671, 676 (2015).

*(a) This action is brought solely in the public interest and on behalf of the general public*. It's undisputed that this is a class action.  Dkt. 3 at 3 ¶ 5; Dkt. 29 at 12; Dkt. 45 at 5.  All claims are class claims.  Dkt. 22 at 22-25 ¶¶ 78-93.  Only class-wide relief is sought.  Dkt. 22 at 25.  Section 425.17(b) straightforwardly applies to such "class actions and private attorney general suits[.]" Tourgeman v. Nelson & Kennard, 222 Cal. App. 4th 1447, 1459 (2014).  It is not disqualifying that the class representatives might obtain relief as a member of the class, even monetary relief. Strathmann v. Acacia Research Corp., 210 Cal. App. 4th 487, 501, 503 (2012).  That's because the "class action not only benefits the individual litigant but serves the public interest in the enforcement of legal rights and statutory sanctions."  Tourgeman, 222 Cal. App. 4th at 1461.  By contrast, under §425.17(b), the action may not seek relief on individual claims independent of class allegations—a type of relief variously characterized as "individualized relief[,]" Club Members for an Honest Election v. Sierra Club, 45 Cal. 4th 309, 320 (2008), or "personal relief[,]" id. at 321 n.6. Nothing in the complaint seeks such relief.  No Plaintiff asserts any claim that "concerns only himself, not the public."  See Klem v. Access Ins. Co., 17 Cal. App. 5th 595, 611 (2017). Accordingly, Plaintiffs do "not seek personal relief within the meaning of section 425.17(b)[.]" Strathmann, 210 Cal. App. 4th at 502.  This action is of the types contemplated by the statutory exception.

*(b) The first condition, codified at §425.17(b)(1), is met.* As discussed just above, all class members seek the same relief. Dkt. 22 at 25. Nothing in this action "seeks a more narrow advantage for a particular plaintiff." Strathmann, 210 Cal. App. 4th at 499.

*(c) The second condition, codified at §425.17(b)(2), is met.* This action, if successful, would enforce important rights and confer significant benefits. For example, prevailing-wage lawsuits do both. See Plumbers & Steamfitters, Local 290 v. Duncan, 157 Cal. App. 4th 1083, 1098 (2007). Likewise, wrongful death, negligence, and products liability, Dkt. 22 at 22-25 ¶¶ 78-93, implicate important rights that protect the public from harm, vindicating fundamental tort policies of just compensation and appropriate deterrence. Here, these rights would protect the most vulnerable from being targeted with content that is known by the targeting party to be highly dangerous to them without warning to them or their family. A victory would confer significant monetary benefits upon the class members and significant precedential value for families and vulnerable children.

*(d) The third condition, codified at §425.17(b)(3), is met.* No other party, public or private, has sought to vindicate these claims against Defendant in litigation and "[t]his fact alone is a sufficient basis to conclude the action is 'necessary,' within the meaning of the public interest exception." See The Inland Oversight Comm. v. Cty. of San Bernardino, 239 Cal. App. 4th 671, 676 (2015). Also, such private enforcement places a disproportionate financial burden on Plaintiffs. This case is extraordinarily complex, involving numerous issues of cutting-edge algorithmic manipulation, of child psychology, and of suicidal contagion. Dkt. 22 at 14-17 ¶¶ 57-67. The cost of litigating on an individual basis could dwarf any recovery, a recovery itself that would likely take years to obtain. Plaintiffs will incur significant litigation costs and expenses, face immense discovery burdens, and risk the possibility of an adverse costs or fee award. See San Diegans for Open Gov't v. Har Constr., Inc., 240 Cal. App. 4th 611, 628-29 (2015).

**Second**, §425.17(c) contains another exception to anti-SLAPP that applies here too, commonly called the commercial-speech exception. It applies here too. It's critical to remember

that statement or conduct that this lawsuit arises from is *not* the content of the Show but Defendant's failure to individually warn and Defendant's individualized algorithmic targeting of the Show at its most vulnerable users.  Dkt. 22 at 10-16 ¶¶ 33-65.

*(a) Defendant qualifies for the exception itself*.  Defendant is primarily in the business of selling "subscriptions" to both its content and its technology products, both of which are entertainment products.  *(b) §425.17(c)(1) is met*.  Defendant's targeting software and algorithms make certain representations about its actual shows and movies for the purposes of obtaining individualized approval of the individual content and the platform overall.  Indeed, Defendant itself calls it a "*recommendation* system"—making individualized recommendations.  E.g., Dkt. 28 at 26. Under this exception, speech is commercial "if it is likely to influence consumers in their commercial decisions."  New.Net, Inc. v. Lavasoft, 356 F. Supp. 2d 1090, 1111 (C.D. Cal. 2004). Representations of fact "about the person's business operations, goods or services" that are "made in the course of delivering the person's goods or services" fit the bill.  Simpson Strong-Tie Co., Inc. v. Gore, 49 Cal. 4th 12, 26, (2010).  *(c) §425.17(c)(2) is met*.  Defendant makes these targeting "recommendations" to actual subscribers and their families and to people who are likely to influence actual buyers or customers.  Thus, the commercial-speech exception is met.

**Third**, §425.17 "contains an *exception* to the *exemption*" codified at §425.17(d), Exline, 67 Cal. App. 5th at 134, but this exception to the exclusion is "construed narrowly[,]" Major v. Silna, 134 Cal. App. 4th 1485 (2005).   It does not apply here.  *(a) §425.17(d)(1) does not apply here*. Defendant is neither among persons eligible (reporters, authors, or academics) nor engaged in the requisite activities (information processing for the public).  See Ingels v. Westwood One Broad. Servs., Inc., 129 Cal. App. 4th 1050, 1068 (2005) (applying §425.17(d)(1) to news show). *(b) §425.17(d)(2) does not apply here.*  This action is not "*based upon* the creation, dissemination, exhibition, advertisement, or other similar promotion" of the Show.  §425.17(d)(2).  In fact, those acts are expressly disclaimed.  Dkt. 22 at 8 ¶ 25-26.  Reading the listed activities in §425.17(d)(2)

under the interpretative canons of *ejusdem generis*, *expresio unius*, and *noscitur*, <u>Major</u>, 134 Cal. App. 4th at 1494, 1503 n.6, <u>Exline</u>, 67 Cal. App. 5th at 139, it's apparent that the list applies to broad public acts of promotion.

This action is not based upon mere creation or mere publication.   Rather, this action is based upon the lack of an *individualized* warning to a specific *individual* and upon the *individualized* targeting of a specific individual via *private* communications on a *private* platform— none of which are akin to the broad promotions enumerated in §425.17(d)(2).   Nor is Defendant's targeting algorithms, individualized platform, or its software among the listed types of "works"— especially not the "newspaper or magazine of *general circulation*."   §425.17(d)(2).   Defendant prizes its technologies as a trade secret.   *(c) §425.17(d)(3) does not apply here.*   Defendant isn't a nonprofit.

**<u>Third</u>**, Defendant nowhere discusses these threshold anti-SLAPP issues in its opening brief, <u>see generally</u> Dkt. 28.  They are therefore waived, or at least forfeited.  Dkt. 44 at 2.

## B.   Neither of the claims arise from statements or conducts protected under §425.16(e) of California's anti-SLAPP statute.

Defendant acknowledges it bears the burden to satisfy the first step of the anti-SLAPP analysis.  Dkt 28. at 17; <u>City of Cotati v. Cashman</u>, 29 Cal. 4th 69, 76 (2002).  Defendant fails to meet that burden because Defendant adopts an overly broad reading of §425.16(e), contravening both the plain text of the statute and binding case law.

A Defendant meets its anti-SLAPP burden "by demonstrating that the 'conduct by which plaintiff claims to have been injured falls within one of the four categories described in subdivision (e) [of section 425.16.]'" <u>Rand Res., LLC v. City of Carson</u>, 6 Cal. 5th 610, 620 (2019).  That's because Section 425.16(e) expressly defines, through four enumerated subdivisions, what the long phrase: "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" means under California's anti-SLAPP

11

statute. § 425.16(e). Five arguments demonstrate that Defendant profoundly misconstrues §425.16(e) and fails to meet *its* burden under anti-SLAPP.

> *a. Defendant's failure to warn and its individualized algorithmic targeting on Defendant's private platform are not statements or conduct protected by §425.16(e).*

**First**, as a threshold matter, Defendant's argument contravenes the plain text.  Defendant fails to explain how Defendant's *failure* to warn—the *failure* to say something—constitutes a "written or oral statement or writing" under the Anti-SLAPP statute.  §425.16(e)(3); see Dkt. 28 at 19 (citing §425.16(e)(3) as the basis for Anti-SLAPP protection against the failure to warn claims).

**Second**, Defendant is not being sued for the broad dissemination of its Show; rather Defendant is being sued for its individualized, private communications directed at particular individual viewers through personalized algorithm recommendations on Defendant's private, paywalled, password-protected platform.  Thus, Defendant's anti-SLAPP arguments based on widely disseminated media broadcasts are largely unresponsive to the actual claims and factual allegations in the complaint.

Regardless, Defendant's anti-SLAPP arguments are dead on arrival.  California law makes clear that "the private context **eliminates any possibility** of protection under section 425.16, subdivision (e)(3)[.]"  Murray v. Tran, 55 Cal. App. 5th 10, 29 (2020).  And that same private context "makes heavier [the defendant's] burden of showing that [...] the alleged statements nevertheless contributed to discussion or resolution of a public issue for purposes of subdivision (e)(4)."  Id.

Defendant grasps for cases like Metabolife to argue that a "widely disseminated television broadcast...is undoubtedly a public forum."  Dkt 28 at 19.  That may be so, but Metabolife is entirely unresponsive to the claims and factual allegations here.  Defendant's algorithmic recommendations are personalized, not public; they are specifically targeted, not "widely disseminated."  Broadcast cases like Metabolife are simply not on point.  More on point are cases

12

involving digital distributions of private communications to paying clients.  See, e.g., FilmOn.com Inc. v. DoubleVerify Inc., 7 Cal. 5th 133 (2019) (considering "whether the conversations were private or widely broadcasted[.]"). Defendant's Motion simply ignores this crucial consideration flagged by the California Supreme Court in FilmOn.

Indeed, Defendant largely ignores many crucial contextual considerations discussed by the California Supreme Court in FilmOn. Such considerations include whether a statement is "'commercial' in nature'—whether it was private or public, to whom it was said, and for what purpose[.]" FilmOn, 7 Cal. 5th at 148  (2019). These contextual considerations are essential to determining whether speech was "made in furtherance of free speech" for Anti-SLAPP's purposes. Id. Indeed "a court **must** consider the context as well as the content of a statement" to determine if Anti-SLAPP applies. Id. at 149 (emphasis added). Again, Defendant's Motion simply ignores these mandatory contextual considerations.

In sum, the claims here arise from Defendant's (i) private communications that are (ii) uniquely targeted to specific individuals (iii) through personalized algorithmic recommendations (iv) on Defendant's pay-walled, password-protected, private forum. That's a far cry from anti-SLAPP's ambit of public statements about public issues made in public forums. Such speech falls well outside the bounds of §425.16(e) as made clear by the FilmOn and Murray cases.

**Third**, Defendant's failure to warn of known risks and Defendant's personalized algorithmic targeting of minors on its private platform are not "Acts in Furtherance of the Right to Free Speech in Connection with a Public Issue." Dkt 28 at 17.  One court has put the point plainly: "there is **no case authority** for the proposition that the First Amendment provides immunity for defendants in failure to warn cases." (N.D. Ill. 1998) (emphasis added). And, the Eighth Circuit has held that a mandatory "suicide advisory" for medical procedures was not a "violation of physicians' free speech rights." Planned Parenthood Minn. v. Rounds , 686 F.3d 889, 906 (8th Cir. 2012).

Moreover, civil liability for the foreseeable (and, in fact, foreseen) harms caused by Defendant's dangerous algorithmic targeting of minors does not implicate Defendant's right to free speech in connection with a public issue. As the California Supreme Court has explained: "[t]he issue here is civil accountability for the foreseeable results of a broadcast which created an undue risk of harm to decedent. The First Amendment does not sanction the infliction of physical injury merely because achieved by word, rather than act." <u>Weirum v. RKO Gen., Inc.</u>, 15 Cal. 3d 40, 48, 123 Cal. Rptr. 468, 472, 539 P.2d 36, 40 (1975).

   *a. The challenged conduct does not involve an issue of "public interest" pursuant to the anti-SLAPP statute.*

   **Fourth,** Defendant improperly relies on a thoroughly discredited "synecdoche theory" to argue that its challenged conduct is "in connection with an issue of public interest."  Two California Supreme Court cases, <u>FilmOn</u> and <u>Wilson</u>, decisively foreclose Defendant's argument.  Section 425.16(e) "demands 'some degree of closeness' between the challenged statements and the asserted public interest." <u>FilmOn.com Inc. v. DoubleVerify Inc.</u>, 7 Cal. 5th at 150.  Defendants cannot "merely offer a 'synecdoche theory' of public interest, defining their narrow dispute by its slight reference to the broader public issue." Id. at 152. Yet that's precisely what Defendant tries to do here.

   Defendant argues that "13 Reasons Why tackles real-world topics of widespread public interest such as teen suicide, sexual assault, and substance abuse[.]" Dkt. 28 at 22. In so doing,  Defendant committed a common mistake--improperly relying on the "oft-rejected, so-called 'synecdoche theory of public issue in the anti-SLAPP statute'." <u>World Fin. Grp., Inc. v. HBW Ins. & Fin. Servs., Inc.</u>, 172 Cal. App. 4th 1561, 1570 (2009). That's because Defendant focuses "on society's general interest in the subject matter" rather than on "the specific speech or conduct" in question. <u>Id</u>.

1  Consider an instructive example of this common mistake: "In asserting that there is an

2  identifiable public interest, namely, 'addiction treatment' and 'how addiction treatment facilities

3  operate,' [Defendant] falls into the trap referred to in *Commonwealth* as the 'synecdoche theory of

4  public issue in the anti-SLAPP statute.'" Dual Diagnosis Treatment Ctr., Inc. v. Buschel, 6 Cal.

5  App. 5th 1098, (2016).

6

7  Defendant falls into the same trap here by tossing around vague allusions to the public

8  general interest in the general ideas of "suicide, sexual assault, and substance abuse." Dkt. 28 at 22.

9  But it is simply not enough for Defendant to draw a line "connecting their speech to an abstract

10  issue of public interest." FilmOn, 7 Cal. 5th at 150.

11  The Supreme Court's Wilson case is also instructive on Defendant's mistake. In that case

12  CNN attempted to argue that its discussion of a particular journalist's "termination implicates a

13  larger issue that indisputably *is* of public interest--journalistic ethics." Wilson v. Cable News

14  Network, Inc. , 7 Cal. 5th 871, 902 (2019). The California Supreme Court rejected that argument as

15  resting on the discredited "synecdoche theory of public issue in the anti-SLAPP statute." Id.

16

17  Importantly, courts "**cannot answer** this [public interest] question simply **by looking at the**

18  **content** of the challenged statements[.]" FilmOn, 7 Cal. 5th at 152 (emphasis added). Thus,

19  Defendant's mere assertions about the *content* of its show is not enough to meet Defendant's burden

20  to demonstrate a "public interest" within the meaning of §425.16(e).

21

22  Here, Defendant's reliance on the synecdoche theory of "public interest" is a non-starter and

23  is foreclosed by multiple California Supreme Court cases.

24  **Fifth,**  Defendant wildly overreads §425.16(e) because Defendant disregards *ejusdem*

25  *generis*. Defendant therefore misconstrues the meaning of the statute's use of the phrase "public

26  interest."  Importantly, the California courts have repeatedly turned to the doctrine of *ejusdem*

27  *generis* to interpret California's Anti-SLAPP statute. See e.g. Exline v. Gillmor , 67 Cal. App. 5th

28  129, 139 (2021); see also FilmOn, 7 Cal. 5th 133, 144-145.

15

*Ejusdem generis* means that the "general term or category is restricted to those things that are similar to those which are enumerated specifically." Id. "The canon presumes that if the Legislature intends a general word to be used in its unrestricted sense, it does not also offer as examples peculiar things or classes of things[.]" Int'l Fed'n of Prof'l & Tech. Eng'rs, Local 21, AFL-CIO v. Superior Court , 42 Cal. 4th 319, 342 (2007).

Because of *ejusdem generis*, §425.16(e)(4)'s broad catchall phrase "*other* conduct in furtherance" must be cabined to encompassing only that "conduct and speech similar to what is referenced in section 425.16, subdivision (e)(1) through (3)." FilmOn, 7 Cal. 5th at 144.

So too with §425.16(e)(3),(4)'s use of the broad term "issue of public interest[.]"  Indeed, the California Supreme Court has "'*equated* a public issue with the authorized official proceeding to which it connects[.]'" (emphasis in the original). Briggs v. Eden Council for Hope & Opportunity 19 Cal.4th 1106, 1117 (1999). In so doing, the Court has "effectively defin[ed] the protected status of the statement by the context in which it was made." FilmOn.com Inc., 7 Cal. 5th at 144. Thus, under *ejusdem generis*, §425.16(e)(1),(2)'s specific enumeration of statements or writings made in "legislative, executive, or judicial" proceedings clarifies the types of issues qualifying as "public issues" throughout the other subdivisions of §425.16(e).

Defendant tries to radically expand the scope of "public interest" by citing California appellate authority suggesting that "public interest" should be read broadly and untethered from §425.16(e)'s enumerated examples. See Dkt. 28 at 21, citing Nygard, Inc. v. Uusi-Kerttula, 159 Cal. App. 4th 1027, 1042–43 (2008). But subsequent California Supreme Court case law has clarified that "[i]n articulating what constitutes a matter of public interest, courts look to certain specific considerations" FilmOn, 7 Cal. 5th 133, 145-46 (2019). Such considerations include, for example, whether the activity "affect[ed] a community in a manner similar to that of a *governmental entity*." Id. (internal citations omitted) (emphasis added).

16

Thus, when interpreting Anti-SLAPP, courts must be mindful of *ejusdem generis*, a fundamental canon of statutory construction. And the broad, general language of "public interest" in §425.16(e) (e)(3) and (e)(4) must be read to encompass similar conduct and speech to what is specifically enumerated throughout §425.16(e)(1)-(4).

Defendant ignores *ejusdem generis* and the subsequent clarification from the California Supreme Court in construing §425.16(e)'s use of the term "public interest". This leads Defendant astray, adopting a wildly overbroad interpretation of "public interest" that is untethered from §425.16(e) and contrary to binding case law.

\* \* \* \* \* \*

For the foregoing, five independent reasons, Defendant fails to "demonstrat[e] that the 'conduct by which plaintiff claims to have been injured falls within one of the four categories described in subdivision (e) [of section 425.16]'" <u>Rand Res., LLC v. City of Carson</u> , 6 Cal. 5th 610, 620 (2019). Defendant's failure to meet its burden ends the Anti-SLAPP inquiry.

## C.  **Anti-SLAPP statutes are not applicable in federal courts.**

Defendant's Motion should also be denied because California's anti-SLAPP statute should not apply in federal courts.

Multiple Courts of Appeals have held that state anti-SLAPP statutes should not be applied in federal courts because they conflict with the Federal Rules of Civil Procedure. Take two examples:

- "[W]e hold that California's anti-SLAPP statute is inapplicable in federal court because it increases a plaintiff's burden to overcome pretrial dismissal, and thus conflicts with Federal Rules of Civil Procedure 12 and 56[.]" <u>La Liberte v. Reid</u>, 966 F.3d 79, 83 (2d Cir. 2020)

- "The first issue before the Court is whether a federal court exercising diversity jurisdiction may apply the D.C. Anti-SLAPP Act's special motion to dismiss provision. The answer is no." <u>Abbas v. Foreign Policy Grp., LLC</u> , 414 U.S. App. D.C. 465, 470, 783 F.3d 1328, 1333 (2015).

Admittedly, the Ninth Circuit has taken the contrary view.  See e.g., <u>United States ex rel. Newsham v. Lockheed Missiles & Space Co.</u>, 190 F.3d 963, 973 (9th Cir. 1999). Yet the Ninth Circuit has since acknowledged the "hotly disputed" issue of whether "the anti-SLAPP provisions are consistent with the Federal Rules of Civil Procedure[.]" <u>Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress</u> , 890 F.3d 828, 833 (9th Cir. 2018). And, numerous Ninth Circuit judges have recently argued that the issue of whether state anti-SLAPP statutes apply in federal courts should be revisited.  See <u>Makaeff v. Trump Univ., Ltd. Liab. Co.</u>, 736 F.3d 1180, 1192 (9th Cir. 2013) (Circuit Judges, dissenting from the denial of rehearing en banc) ("Our circuit's anti-SLAPP jurisprudence runs afoul of two separate lines of Supreme Court precedent[.]").

Two additional arguments demonstrate why anti-SLAPP cannot be applied in federal court.  <u>First</u>, the Supreme Court's <u>Shady Grove</u> decision demonstrates why California's anti-SLAPP statute conflicts with Federal Rules 12 and 56, thereby precluding its application in federal court. See <u>Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.</u>, 559 U.S. 393 (2010). Moreover, such conflicts with the Federal Rules raises due process concerns. C.f. <u>Nelson v. Adams USA, Inc.</u>, 529 U.S. 460, 465 (2000) ("The Federal Rules of Civil Procedure are designed to further the due process of law that the Constitution guarantees.").

<u>Second</u>, California anti-SLAPP's fee-shifting feature is incompatible with the Federal Rules. Anti-SLAPP's award of monetary sanctions for asserting "non frivolous argument[s] for extending, modifying, or reversing existing law" contravenes Rule 11(c)(5)(A) and Rule 11(b)(2).  Thus, Defendant's attempt to assert state anti-SLAPP statutes in federal court is improper and should be rejected. And, Plaintiffs hereby expressly preserve the following issues for appeal: (1) whether California's anti-SLAPP statute should apply in federal courts; (2) whether California's anti-SLAPP statute is compatible with the Federal Rules of Civil Procedure, including

but not limited to Rules 8, 11, 12, and 56; and (3) whether applying California's anti-SLAPP statute in federal courts violates the Constitution's guarantees of due process.

1

2

**II.    DEFENDANT IS INCORRECT ON THE MERITS OF THIS ACTION AND THE SHOWING OF "MINIMAL MERIT" UNDER THE CALIFORNIA ANTI-SLAPP STATUTE.**

3

**A.  Plaintiffs have standing and brought suit within the limitations period.**

4

5

6

7

8

**First**, Plaintiff John Herndon has filed a declaration pursuant to §377.32, Dkt. 52, rendering moot Defendant's objection that the lack of such a declaration would be a basis for dismissing these survivor claims.  Dkt. 28 at 23 n.4.  Regardless, Defendant misstates the law: §377.32 "does *not* require that the affidavit be filed as a condition precedent to commencing or continuing the action." Aghaian v. Minassian, 64 Cal. App. 5th 603, 614 (2021).

9

10

11

12

13

14

15

16

17

18

**Second**, Plaintiffs John Herndon and the Estate timely filed their survivor claims, contrary to Defendant's argument, Dkt. 28 at 22-23, because they sued before Bella's 20th birthday.  These claims survive Bella's death.  §377.20(a).  The limitations period should be calculated, however, as though Bella had not died.  §366.1(b).  The limitations period for these claims is ordinarily two years.  §335.1.  Yet, because Bella was under 18 at the time these claims accrued, those two years did not begin until what would have been her 18th birthday.  §352(a).  Accordingly, the last day to file would be Bella's twentieth birthday, May 1, 2021.  Dkt. 52 at 6.  This action was filed before May 1, 2021.  Thus, Defendant is incorrect that these survivor claims were filed too late.

19

20

21

22

23

24

25

26

27

28

**Third**, Bella's brothers have standing (and timely sued, §352(a)).   Defendant misreads the wrongful-death statute, §377.60(a), as conferring standing in a line of succession rather than upon a community of interest.  Dkt. 28 at 23-24.  Yet, the California Supreme Court has interpreted the word "heirs" to refer to those "capable of inheriting"—not just those who in fact inherit.  Redfield v. Oakland C. S. R. Co., 110 Cal. 277, 290 (1895); A.S. v. Miller, 34 Cal. App. 5th 284, 294 (2019) ("*capable of inheriting*" (emphasis in original)).  The revised statute has the same effect—and is referring to heirs (those capable of inheriting)—when it confers standing, if no issue, upon those who "*would be* entitled […] by intestate succession"—not those who *are* so entitled.  §377.60(a); see Hayes v. S.D., 57 Cal. 4th 622, 629 (2013); Ruiz v. Podolsky, 50 Cal. 4th 838, 844 (2010).

20

1

2     To remove all doubt, the statute clarifies that the 1992 revision of the wrongful-death statute

3     was "not intended to adversely affect the standing of any party having standing under prior law[,]"

4     §377.60(e), *i.e.*, did not adversely affect sibling standing.  Because Bella's brothers are capable of

5     inheriting through intestate succession, Cal. Prob. Code §6402(c), they have statutory standing to

6     assert wrongful death against Defendant for causing their sister's death.

7

8     **B. Defendant's content-delivery platform and targeting algorithms are tangible software products.**

9     Separately, Defendant argues that "strict liability for failure to warn applies only to tangible

10    products, and no tangible product is at issue here." Dkt. 28 at 25.  That's incorrect.  There *are*

11    tangible products at issue here—*e.g.*, Defendant's content-delivery platform and the software

12    implementing its targeting algorithms.  E.g., Dkt. 22 at 22 ¶ 79.  Defendant simply chooses not to

13    consider them.  Instead, Defendant would have this Court focus on the Show's content and ignore

14    the platform, software, and algorithms that caused the harm.  Dkt. 28 at 25.  That's an unresponsive

15    strawman that doesn't engage the claims actually asserted here.

16

17    **First**, Defendant's platform and targeting algorithms are tangible software products.  Dkt.

18    22 at 14-16 ¶¶ 54-65.  It is not Defendant's Show but its "*software program*" and other technologies

19    that subject it to products liability.  See Hardin v. PDX, Inc., 2014 Cal. App. LEXIS 660, at *1 (Ct.

20    App. 2014) (emphasis in original), *amending* 227 Cal. App. 4th 159.  Indeed, Defendant's *own* cited

21    case, Winter v. G.P. Putnam's Sons, indicates that "highly technical tools" such as "graphical

22    depictions of technical, mechanical data" are tangible products.  938 F.2d 1033, 1036 (9th Cir.

23    1991).  So is "*computer software*."  See id.; Hou-Tex, Inc. v. Landmark Graphics, 26 S.W.3d 103,

24    113 (Tex. App. – Houston [14th Dist.] 2000) ("[S]oftware is a product for purposes of this appeal

25    because […] it is a highly technical tool used to create a graphic representation from technical

26    data.") (relying on Winter).  Defendant's platform, targeting algorithms, *etc.*, are not mere abstract

27    ideas, but are tangible software products.

28

**Second**, instead of the Restatement's tangible-intangible distinction, some California courts focus on a product-service distinction decided by the consumer's primary purpose. E.g., Hennigan v. White, 199 Cal. App. 4th 395, 403 (2011). Under this distinction, Defendant's platform, software, and algorithms are still products—not services. Again, Defendant's *own* case, is instructive: Pierson v. Sharp Mem'l Hosp. defines a service as "*direct* human action or human performance." 216 Cal. App. 3d 340, 345 (1989). Defendant's subscribers are not purchasing *direct* human actions or *direct* human performance when they subscribe.[2] Indeed, recasting Defendant's entertainment *products* as an "amusement *service*" would "risk weakening products liability protections for consumers of products such as games and recreation equipment." See Sharufa v. Festival Fun Parks, LLC, 49 Cal. App. 5th 493, 503 (2020).

**Third**, there's an even more fundamental problem with Defendant's mode of analysis: Defendant ignores the animating policy goals that continue to guide the development of California products liability. Defendant asks this Court to answer a profoundly important products-liability question through metaphysical categorizations (tangible or intangible; products or service). Yet, California courts refuse to reduce the common law to such casuistry:

> [S]trict products liability was created judicially because of the economic and social need for the protection of consumers in an increasingly complex and mechanized society. *The scope of strict liability was expanded when necessary to account for market realities* and to cover new transactions, such as this one, in widespread use in today's business world *regardless of labels or dictionary definitions*.

Loomis v. Amazon.com LLC, 63 Cal. App. 5th 466, 479 (2021). California courts don't resort to labels analysis when deciding whether strict products liability should apply in a novel situation. Bolger v. Amazon.com, LLC, 53 Cal. App. 5th 431, 449 (2020).

---

[2] Defendant's subscribers purchase Defendant's product. But, even if this Court thinks it's not a purchase, Defendant brings its products to the market and puts them in the stream of commerce, which is sufficient for liability to attach. Stein v. S. Cal. Edison Co., 7 Cal. App. 4th 565, 571 (1992) ("[I]n California, a sale of the product is not necessary for imposition of products liability; the object must be 'placed on the market, knowing that it is to be used without inspection for defects[.]'").

22

1    Instead, when fashioning and developing the common law, California courts look "primarily

2    look to the _purposes_ of the doctrine"—purposes of "enhancing product safety, maximizing

3    protection to the injured plaintiff, and apportioning costs among the defendants."  Id.  California

4    strict products liability was "created by the courts and expanded and contracted where warranted by

5    its purposes."  Loomis, 63 Cal. App. 5th at 479.  So, even if this Court thinks that existing common-

6    law doctrine would bar this suit, California courts have clearly signaled that they will adapt the

7    doctrine to minimize social harms, especially where, as here it would be so easy to do so: don't

8

9    _individually_ target the most vulnerable children and, for _individual_ subscribers who Defendant's

10   own data analytics and algorithms indicate are most at risk, provide an _individualized_ warning of

11   the genuine health risks.  Emphatically, Defendant has not cited a single case indicating that

12   _algorithms_ or _internet platforms_ or _sophisticated software_ are not products.

13   **Fourth**, Defendants rely heavily on non-California law.  Yet, the California Supreme Court

14   has frequently refused to rely upon the decisions of out-of-state courts that do not appropriately

15   conduct a similar policy analysis in fashioning their common-law tort liability.  E.g., T.H. v.

16   Novartis Pharm. Corp., 4 Cal. 5th 145, 179 (2017) ("We likewise discount decisions from those

17

18   jurisdictions that differ from California […]").  Many don't.  Id.; Kesner v. Superior Court, 1 Cal.

19   5th 1132, 1161 (2016) (same).

20   **Fifth**, although Defendant wants this issue decided now as a matter of law, Dkt. 28 at 25

21   n.5, several California courts see this issue as one that should _not_ be decided at an "early juncture"

22

23   in the case.  E.g., Hardin, 2014 Cal. App. LEXIS 660, at *1 (Ct. App. 2014) _amending_ 227 Cal.

24   App. 4th 159; Sharufa, 49 Cal. App. 5th at 502 (for complex product classifications, the "ultimate

25   decision on the legal issue [should be] deferred" for extensive factual development).

26   Ultimately, because Defendant is best positioned "to enhance product safety" and to "bear

27

28   the costs of compensating for injuries" caused by its software, the vital policies underlying products

     liability apply here.  Hernandezcueva v. E.F. Brady Co., Inc., 243 Cal. App. 4th 249, 262 (2015).

1

2

**C. Defendant had a special relationship with Bella and, regardless, owed her a duty of reasonable care.**

3       <u>**First**</u>, Defendant argues it has no legal duty here.  Dkt. 28 at 26-30.  Defendant suggests this

4   case presents a blank slate upon which to decide a duty.  It doesn't.  Defendant plainly owes a duty

5   to avoid causing injury, including to decedent:

6
> Generally speaking, <u>***all persons have a duty to take reasonable care in their***</u>
> <u>***activities to avoid causing injury***</u>, though particular policy considerations may
7   > weigh in favor of limiting that duty in certain circumstances.

8   <u>Brown v. USA Taekwondo</u>, 11 Cal. 5th 204, 209 (2021); <u>Lugtu v. California Highway Patrol</u>, 26

9
10  Cal.4th 703, 716 (2001). There <u>is</u> a duty.  This duty is the "default rule."  <u>Brown</u>, 11 Cal. 5th at 209.

11  And, Defendant is asking to be excused from this fundamental duty, to be given the tort-law

12  equivalent of a license to kill under the veil of technological bells and whistles.  Defendant turns

13  this analysis on its head, suggesting that it is Plaintiffs' burden to establish a duty rather than

14  Defendant's pleas for an exception to an omnipresent duty not to cause injury.  In this way,

15  Defendant's duty analysis is wrongheaded from the outset.

16
17      <u>**Second**</u>, Defendant is right that exceptions to a legal duty ultimately turn on the "sum total"

18  of policy considerations, Dkt. 28 at 27, but those policy considerations weigh decisively against

19  Defendant here.  Again, the California Supreme Court will "create an exception only if 'clearly

20  supported by public policy.'"  <u>Brown</u>, 11 Cal. 5th at 225.  The public-policy interest weighs

21  decisively against Defendant, however.  Defendant caused a 30% spike in child suicides in a month.

22  Dkt. 22 at 12-13 ¶¶ 44-53.  The National Institutes of Health was alarmed.  <u>Id.</u> at 4 ¶ 7.  And, not

23  only was Defendant's catastrophic increase in child suicides foreseeable, it was foreseen.  It was

24  foreseen both by its *own* retained expert, Dr. Dan Reidenberg, among others; Defendant simply

25  chose to greedily, recklessly, knowingly, and purposefully chose to overrule its own experts at the

26  cost of hundreds of lives.  Dkt. 22 at 8-9 ¶¶ 27-32.

27

28

This outrageous result was also foreseen by Defendant's own targeting algorithms, decades of research into suicidal contagion that form a scientific consensus, and by media guidelines and advisories that prudently advise not to target vulnerable individuals with this type of content. Especially given how easy and limited the fixes would have been, the outcome on this question of duty is a no brainer. The California Supreme Court is not going to bequeath Defendant with algorithmic immunity and impunity, at the cost of thousands of lives and contrary to its most fundamental purposes of avoiding foreseeable harm, all so Defendant can avoid tweaking its algorithms and platform to avoid individually pursuing the most vulnerable children and give the vulnerable ones an individualized warning.

**Third**, applying the <u>Rowland</u> factors here is another path to the same result—a conclusion that Defendant does not remotely merit an exception to its duty not to cause harm. Dkt. 22 at 25 ¶ 91-92. The <u>Rowland</u> factors fall into "two categories": the "foreseeability" factors and the "public policy" factors. <u>Regents of Univ. of Cal. v. Superior Court</u>, 4 Cal. 5th 607, 629 (2018). The suicides here were eminently foreseeable and the actions Defendant took to cause they are morally reprehensible and easily avoidable by Defendant.

Even if one thinks there is an intervening cause in the case of a suicide, that intervening cause was itself foreseeable had Defendant bothered to heed its own experts or consult the longstanding consensus of scientific data—or even listen to what its own data scientists and algorithms would have indicated. <u>See</u> <u>Kesner v. Superior Court</u>, 1 Cal. 5th 1132, 1148 (2016) ("touchstone of the analysis is the foreseeability of that intervening conduct"); <u>T.H. v. Novartis Pharm. Corp.</u>, 4 Cal. 5th 145 (2017) ("most important" factor is foreseeability). Again, this catastrophe was foreseen. And, the policy concerns of "concerns of moral blame, preventing future harm, burden, and insurance availability" all militate strongly against leaving families who had to bury their children without any measure of justice and against giving judicial imprimatur to such outrageous conduct by short-circuiting time-tested tort principles. <u>See</u> <u>Kesner</u>, 1 Cal. 5th at 1148.

1    **Fourth**, Defendant's authorities are inapposite.  Those authorities are primarily applying

2    non-California law and frequently in federal courts.  California law does not recognize these as

3    authorities on tort, as discussed above.  E.g., T.H, 4 Cal. 5th at 179 ("discount[ing] decisions from

4    those jurisdictions that differ from California […]"); Kesner, 1 Cal. 5th at 1161 (same).  Or, they

5    discuss cases where liability is premised purely on the content of an artistic work or a broad public

6    dissemination of it rather than an individual targeting of it.  The distinction is at once fundamental

7    and elementary:  anyone can say largely whatever they want in a book.  They don't have a right to

8    say whatever they want to a *particular person*.   And, none of these authorities discuss *algorithmic*

9    *targeting* or apply *algorithmic* immunity.

10        A few examples of obviously distinguishable authorities should do.  Consider Defendant's

11   reliance upon Sanders v. Acclaim Ent., Inc., 188 F. Supp. 2d 1264, 1272 (D. Colo. 2002).

12   Critically, the plaintiffs in Sanders had been harmed by third parties (the Columbine shooters) rather

13   than harmed directly by the content of the violent video games and movies produced by the

14   defendants; the content had not been targeted at the plaintiffs themselves via black-box

15   technologies.  Id. at 1268.

16        Moreover, this case is a far cry from McCollum and Watters because Defendant is

17   knowingly targeting highly vulnerable children directly through their devices, often in the privacy

18   of their own bedrooms, recommending a dangerous show specifically targeted to them without also

19   giving them a warning—a warning that could be individually provided to them.  As the McCollum

20   court observed, "While it is true that foreseeability is ordinarily a question of fact… it may be

21   decided as a question of law if 'under the disputed facts there is no room for reasonable difference

22   of opinion.'"  202 Cal. App. 3d 989 at 1005.

23        Also, Defendant is utterly hyperbolic about the consequences of its tort liability when it says

24   "the only practicable way of ensuring media could never reach a 'mentally fragile' individual would

25   be to refrain from selling it at all." Dkt. 28 at 28.  Defendant could have simply refrained from

26

targeting the most vulnerable—as indicated by its algorithms—leaving them to watch the show or not without targeted algorithmic manipulation.  And, Defendant could have provided an individualized warning of the health risks.  These two tweaks would avoided almost all of the catastrophic harm, done so cheaply, done so without affecting Defendant's content at all, and done without truly affecting Defendant's ability to present its show broadly to the public at large—and to succeed in the streaming marketplace.

**Fifth**, Defendant disputes it has any cognizable special-relationship duty for decedent.  Dkt. 28 at 30.  The California Supreme Court has recently described a certain type of special-relationship duty analogous to the one here:

> Similarly, a duty to warn or protect may be found if the defendant has a special relationship with the potential victim that gives the victim a right to expect protection.  The relationships between common carriers and their passengers, or innkeepers and their guests, are classic examples of this type of special relationship.

Regents of Univ. of Cal. v. Superior Court, 4 Cal. 5th 607, 619-20 (2018) (cleaned up). Defendant's platform accumulates massive data troves and has immense control over its users, like decedent.  Dkt. 22 at 14-16 ¶¶ 57-65.  It has immense power, knowledge, control, and influence with respect to online activities and especially its platform.  Defendant's relationship with its users when they are on its platform is quite akin to "a business or landowner with invited guests, a landlord with tenants, a guard with those in custody, an employer with its employees, and 'a school with its students.'"  Id. at 620.  At least with respect to its users when using its platform (and being subjected to its immense data-gathering facilities and algorithmic analysis), Defendant had a special-relationship duty.  Because Defendant has "superior control" with respect to its platform, it has a special relationship to its users when they are on that platform, especially the children using it. Id. at 621.

In sum, no only is Defendant plainly not eligible for an exception to the most general and widely applicable duty to avoid foreseeable harm, it had a special-relationship duty to decedent.

**D. Plaintiffs have adequately pled causation, should have leave to amend if the Court disagrees, and Defendants raise an affirmative defense.**

**First**, Defendant disputes causation.  Dkt. 28 at 31-32.  *If this Court thinks that the complaint is inadequately pleaded in any manner for which amendment could possibly correct the issue, then Plaintiffs respectfully request 30-days leave to amend.*  Indeed, the very case upon which Defendant place principal reliance give leave to amend *after appeal*.  See Tate v. Canonica, 180 Cal. App. 2d 898, 919 (1960) ("plaintiffs should be given an opportunity to amend if the facts as they exist can constitute a cause of action under the above mentioned rules"); see also Jones v. Cate, 2016 U.S. Dist. LEXIS 8463, at *37 (E.D. Cal. Jan. Jan. 22, 2016) (multiple opportunities to amend their claims").  And, Defendant's case law suggests this shouldn't be decided as a matter of law until after factual development.  See King v. United States, 756 F. Supp. 1357, 1361 (E.D. Cal. 1990) ("summary judgment motion").

**Second**, Defendant misstates the law.  *(a). Superseding cause is an affirmative defense.*  See, e.g., Green v. Healthcare Servs., Inc., 68 Cal. App. 5th 407, 416 (2021) ("superseding cause defense").  Defendant bears the burden of proof.  Id.  *(b) Decedent's death was foreseeably caused by Defendant's acts*, as discussed in the detailed foreseeability argued above in the section on duty (with enough specificity to apply to the causation analysis as well).  See Jacoves v. United Merch. Corp., 9 Cal. App. 4th 88, 111 (1992) ("The usual rule is 'that the intervening act of a third person does not relieve the original wrongdoer of liability if the intervening act was a reasonably foreseeable result of the original actor's wrongdoing.'" (quoting Tate, 180 Cal. App. 2d at 918)).

**Third**, the complaint does not merely make a conclusory allegation of causation.  Rather, it amply meets Twombley and Iqbal discusses in detail Defendant's targeting, Dkt. 22 at 14-16 ¶¶ 57-65, and incorporates by reference the science of suicidal contagion and the warnings that foresaw the harm, with extensive quantitative and qualitative research linking the suicides directly to the act,

1   Dkt. 22 at 8-14 ¶¶ 27-56.  That's more than sufficient to show the plausibility required by

2   Twombley and Iqbal.  Plaintiffs have amply pled causation in their FAC.

3           **Fourth**, Plaintiffs are not required to show that Defendant's algorithmic targeting software

4   and failure to warn as the was the sole cause of Bella's death. Instead, Plaintiffs need only show

5   Defendant's products and wrongful acts and omissions were a substantial factor in bringing about

6   the harm. See, e.g., Rutherford v. Owens-Illinois, 16 Cal.4th 953, 968 (1997) (explaining that

7   California has adopted the substantial factor test for causation in personal injury and products

8   liability cases).  Substantial factor causation is even broader than "but for" causation in that also

9   encompasses independent and concurrent causes in fact.  Id.

10

11

12      **A.  Plaintiffs claims do not have First Amendment problems.**

13  •   **Constitutional Avoidance & Party Presentation**:  Defendant defers to the principle of

14      Constitutional avoidance.  Dkt. 28 at 22.  So do Plaintiffs.  Therefore, under the principles of

15      both Constitutional avoidance and the party-presentation rule, United States v. Sineneng-Smith,

16      140 S. Ct. 1575, 1579 (2020).  this Court should not address First Amendment issues unless it

17      addresses all other issues first.

18

19  •   **Request for Supplemental Briefing**:  The First Amendment issues here are extraordinarily

20      nuanced and complex and the limited space in this briefing does not permit a full briefing of the

21      relevant issues, doctrines, and arguments for robust First Amendment analysis.  Accordingly, if

22      this Court wishes to engage in First Amendment analysis, Plaintiffs request supplemental

23      briefing.

24

25  •   **No Protected Speech at Issue**:  Plaintiffs action, if successful, would not affect the public

26      activities of Defendant—would not affect its "editorial slate" or "alter its message" or interfere

27      with the "right to receive" or prohibit "dissemination[.]"  See Dkt. 28 at 31-32.  Defendant could

28      continue in its editorial choices, making the same message, with the same dissemination—

except with an individualized warning for at-risk individuals and refraining from *targeting* them on its algorithm. Latent materials on its platform wouldn't be affected. <u>See generally</u> Dkt. 22. The content of the Show is not at issue. Rather it's the targeting of dangerous content.

- **Speech vs. Act**: Defendant says its speech cannot be disentangled from the content. This is too simplistic. While *writing* an algorithm may be speech and distributing the algorithm may be speech, *implementing* an algorithm is an act subject to liability. For example, if an autonomous vehicle algorithm causes an accident, that's an act, not speech. So too here.

- **Compelled Labeling / Warning**: <u>Zauderer v. Office of Disc. Counsel</u>, 471 U.S. 626 (1985), supports that the proposition that Defendant's speech interests do not outweigh it for not having a warning label that warns of death.

- **Strict Scrutiny Met**: Even if there were protected speech here, this case would meet strict scrutiny because stopping wrongful death is a compelling government interest and it can be narrowly tailored through tweaks that give individualized warnings and that . See <u>Holder v. Humanitarian Law Project</u>, 561 U.S. 1 (2010) (strict scrutiny met).

- **Commercial Speech**:

- **Targeted Private Speech**:

Several additional points respond to Defendant's absolutist suggestion that the First Amendment precludes all liability for the foreseeable harms caused by Defendant's tortious conduct here.

- The Supreme Court has "long recognized that not all speech is of equal First Amendment protection." <u>Snyder v. Phelps</u>, 580 F.3d 206, 214 (4th Cir. 2009). Indeed, "[w]hen speech gives rise to civil tort liability, the level of First Amendment protection varies depending on the nature and subject matter of the speech." Id. While the First Amendment does apply to a plaintiff seeking damages for repetitional, mental or emotional injury arising from defendant's speech, the "Supreme Court has deemed the First Amendment defense inapplicable to a state law tort claim only when the plaintiff seeks damages for actual pecuniary loss[.]" Id. at 218 at n. 11.

- Defendant recognizes several limited categories of unprotected speech. Dkt. 28 at 33. Yet Defendant overlooks that "[w]hile the Supreme Court has clearly defined five categories of speech which do not further First Amendment principles, these categories are not all-encompassing of unprotected speech." <u>Stricklin v. Stefani</u>, 358 F. Supp. 3d 516, 527

30

1
2
3

(W.D.N.C. 2018). Just because a type of speech falls outside those categories does not mean that speech is "automatically entitled to broad First Amendment protection." Id. That is especially so where the statements "actually disserve society by creating the potential for disorder and danger." Id.

4
5
6
7
8
9
10
11

The <u>Stefani</u> case is analogous in many regards to the present case. There singer Gwen Stefani "invited patrons to move towards the stage, prompting an alleged 'stampede crowd rush.'" <u>Stricklin v. Stefani</u>, 358 F. Supp. 3d 516, 521 (W.D.N.C. 2018). The court rejected defendant's analogy to <u>McCollum</u> (i.e. the Ozzy Osbourne case) and instead found the case more analogous to <u>Weirum v. RKO General</u>. The Court noted that "imbuing Stefani's invitation with artistic significance does not immunize her from being held accountable for negligence and the resulting harm which flowed from her statements." Id. at 528.

12

### III.   THE FAC SHOULD NOT BE DISMISSED FOR FAILURE TO STATE A CLAIM.

13
14

For the same reasons that Plaintiffs succeed in establishing a probability of succeeding on the merits under the anti-SLAPP analysis, they also succeed in plausibly stating a claim for relief under Rule 12(b)(b).

15
16
17
18
19
20

Moreover, Defendant's Motion raises a host of factual disputes and improperly attempts to recast the factual dispute between the parties, ignoring the factual allegations about Defendant's technological tools as alleged throughout the FAC. As the Ninth Circuit has instructed, "'when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply. But in such a case, discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court." <u>Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress</u>, 890 F.3d 828, 834 (9th Cir. 2018).

21

For both of these independent reasons, dismissal under Rule 12(b)(6) would be improper.

22
23
24
25
26
27
28

1

**CONCLUSION**

2

For the reasons stated, this Court should deny the Motion in full.

3

DATED: November 29, 2021                    Respectfully submitted,

4

                                            */s/ Rory Stevens*

5                                           Rory Stevens (SBN 338941)
                                            LAW OFFICE OF RORY L. STEVENS
6                                           4303 Southwest Cambridge Street
                                            Seattle, Washington 98136
7                                           (206) 850-4444
8                                           rorylawstevensesq@gmail.com

9                                           Gregory Keenan (*pro hac vice* pending)
                                            DIGITAL JUSTICE FOUNDATION
                                            81 Stewart Street
10                                          Floral Park, New York 11001
                                            (516) 633-2633
11                                          gregory@digitaljusticefoundation.org

12                                          Andrew Grimm (*pro hac vice* pending)
                                            DIGITAL JUSTICE FOUNDATION
13                                          15287 Pepperwood Drive
                                            Omaha, Nebraska 68154
14                                          (531) 210-2381
15                                          andrew@digitaljusticefoundation.org

16                                          Ryan Hamilton (SBN 291349)
                                            HAMILTON LAW LLC
17                                          5125 South Durango, Suite C
                                            Las Vegas, Nevada 89113
18                                          (702) 818-1818
19                                          ryan@hamlegal.com

20                                          Megan Verrips (*pro hac vice* pending)
                                            INFORMATION DIGNITY ALLIANCE
                                            P.O. Box 8684
21                                          101 Southwest Madison Street
                                            Portland, Oregon 97207
22                                          (925) 330-0359
23                                          megan@informationdignityalliance.org

24                                          James D. Banker (SBN 317242)
                                            DIGITAL JUSTICE FOUNDATION
25                                          210 Flamingo Road, #42
                                            Las Vegas, Nevada 89169
26                                          (714) 722-5658
                                            jimbanker@gmail.com

27

                                            *Attorneys for Plaintiffs*

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing *OPPOSITION* on:

> Ms. Blanca F. Young
> MUNGER, TOLLES & OLSON LLP
> 560 Mission Street,
> Twenty Seventh Floor
> San Francisco, California 94105
> (415) 512-4000
> (415) 512-4077 (fax)
> blanca.young@mto.com
>
> Ms. Jennifer L. Bryant
> Ms. Cory M. Batza
> MUNGER, TOLLES & OLSON LLP
> 350 South Grand Avenue
> Fiftieth Floor
> Los Angeles, California 90071
> (213) 683-9100
> (213) 687-3702 (fax)
> jennifer.bryant@mto.com
> cory.batza@mto.com

> *Attorneys for Defendant Netflix, Inc.*

via **electronic filing** in CM/ECF.

Dated: November 29, 2021          */s/ Rory Stevens*
                                   Rory Stevens