United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**THE ESTATE OF B.H., *et al.*,**
Plaintiffs,
v.
**NETFLIX, INC.,**
Defendant.

Case No. 4:21-cv-06561-YGR

**ORDER GRANTING SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA ANTI-SLAAP STATUTE, CAL. CODE OF CIV. PROC. § 425.16, OR, IN THE ALTERNATIVE MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Dkt. No. 28 & 70

Pending before the Court is defendant Netflix, Inc.'s special motion to strike pursuant to California anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16, as well as Netflix's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Having considered the motion, the record in this case, and oral argument on the issues, the Court **HEREBY ORDERS** that both motions are **GRANTED** for the reasons stated herein and on the record on January 11, 2022.[1]

The Court assumes the parties' familiarity with the facts as alleged in the first amended complaint ("FAC"). The well-known standards for anti-SLAAP motions and motions to dismiss

[1] This Court previously found that it has jurisdiction under CAFA over the sprawling global class alleged that is not limited in geographical scope. (Dkt. No. 45.) Plaintiffs sought to stay a hearing on the motion to strike and dismiss in light of their discretionary appeal of this Court's order on jurisdiction using a procedurally improper motion. (Dkt. No. 70.) The request for a stay improperly raises substantive issues in an administrative motion. Moreover, many of the arguments that plaintiffs raise concerning the Court's jurisdiction are limited by Civil Local Rule 7-9 for motions for reconsideration. No motion was filed. In any event, the Court reaffirms its jurisdictional findings.

In addition to the procedural issues identified, plaintiffs have not demonstrated irreparable harm in order to warrant a stay. Rather than seek a stay after the jurisdictional order, plaintiffs filed their opposition to the motion to strike and dismiss. Plaintiffs also engaged in extensive motion practice seeking to raise new arguments in connection with their opposition. Accordingly, the administrative motion to stay these proceedings pending discretionary appeal is **DENIED**.

are not in dispute. When, as here, the "motion to strike challenges only the legal sufficiency of a claim, a court should apply the FRCP 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am.v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018).[2]

**Plaintiffs' claims are subject to the anti-SLAPP statute.**

- Netflix has met its burden that plaintiffs' claims "aris[e] from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue[.]" Cal. Civ. Proc. Code § 425.16(b)(1); *id.* § 425.16(e)(4). "[T]he creation of a television show is an exercise of free speech." *Tamkin v. CBS Broad., Inc.*, 193 Cal. App. 4th 133, 143 (2011). There is no dispute here that youth suicide, depression, and sexual assault are of great public interest. "Major societal ills are issues of public interest." *Liberman v. KCOP Television, Inc.*, 110 Cal. App 4th 156, 164 (2003).

    - Courts have found the public interest requirement satisfied where "the public was demonstrably interested in the creation and broadcasting of [an] episode [of a show], as shown by the posting of the casting synopses on various Web sites and the ratings for the episode." *Tamkin*, 193 Cal. App. 4th at 143; *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 955 (9th Cir. 2013) ("'[A] topic of widespread, public interest' satisfies this requirement." (citation omitted)); *see also FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 150 (2019) (establishing that "we examine whether a defendant—through public or private speech or conduct—participated in, *or furthered, the discourse* that makes an issue one of public interest" (emphasis supplied). Here, the FAC alleges that the show, like the "hit, making" and "bestseller" novel it was based upon, was a "huge hit" and "cultural event" that ignited Twitter debate and newsworthy criticism. (FAC ¶¶ 14-15, 20-23.)

- Plaintiffs' efforts to oppose the anti-SLAPP motion on the grounds that the complaint does not concern the content or dissemination of the show do not persuade and are inconsistent with the allegations. *See, e.g.*, *Doe*, 730 F.3d at 955 ("But for the broadcast and Defendants' actions in connection with that broadcast, Plaintiff would have no reason to sue Defendants."); *Bill v. Superior Court*, 137 Cal. App. 3d 1002, 1007 (1982) (rejecting the plaintiff's argument that the failure to warn claim did not concern the content of the film on the basis that the showing

---

[2] This Court is bound to apply the anti-SLAPP statute and its fee provision even though it is based upon state law. *See U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 970-73 (9th Cir. 1999); *see generally Makaeff v. Trump Univ., LLC*, 736 F.3d 1180 (9th Cir. 2013) (continuing to apply anti-SLAPP in light of *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010)).

United States District Court
Northern District of California

of the movie "tended to attract violence-prone persons to the vicinity of the theater, [] precisely because of the film's content, and for no other reason").[3]

- Furthermore, since the claims arise from the creation and dissemination of a television show, the statutory exemptions contained in Section 425.17 of the California Code of Civil Procedure do not apply. *See* Cal. Civ. Proc. Code § 425.17(d) (excepting "[a]ny action against any person or entity based upon the **creation, dissemination** . . . or other similar promotion of any dramatic, literary . . . or artistic work, including, but not limited to, a motion picture or **television program**" (emphasis supplied)); *Ingles v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1067-68 (2005).[4]

**Plaintiffs' have failed to sufficiently state a legal claim for several reasons.**

- ***First***, plaintiffs J.H. and T.H. as siblings lack standing to bring a wrongful death claim because B.H. has surviving parents as demonstrated by this suit. There is no dispute here that the California wrongful death cause of action is statutory. The category of persons eligible to bring wrongful death actions is strictly construed. *A.S. v. Mille*r, 34 Cal. App. 5th 284, 290 (2019). A sibling is barred from bringing a wrongful death action unless the decedent has no surviving issue or parents. *See* Cal. Civ. Proc. Code § 377.60(a); Cal. Prob. Code § 6402(c); *see also Scott v. Thompson*, 184 Cal. App. 4th 1506 (2010) (affirming denial of half-sibling's claim for lack of standing); *Stoddard-Nunez v. City of Hayward*, No.13-cv-04490-KAW, 2015 WL 6954963, at *4 (N.D. Cal. Nov. 10, 2015) ("A sibling is barred from bringing a wrongful death action unless the decedent has no surviving issue or

---

[3] Examples demonstrating the clear inconsistency include: "[t]he bases of the claims against Netflix stem from something else: (1) Netflix's failure to adequately warn of *its Show's, i.e., it's products, dangerous features* and (2) Netflix's use of its trove of individualized data about its users to specifically target vulnerable children and *manipulate them into watching content that was deeply harmful to them*[.]" (FAC ¶ 26 (emphasis supplied); *id.* ¶ 28 ("Depicting suicide as the Show does to children would likely result in death"); *id.* ¶ 32 ("Netflix included some advisories, but these advisories have been woefully inadequate because they do not reasonably warn of the risk that the Show could cause suicide."); *id.* ¶ 41 ("Netflix's pre-season advisory is inadequate because it fails to indicate where the most dangerous content appears in the Show. . . . Thus, the warning at the beginning of the Show followed by comparatively tame episodes would leave a reasonable parent unaware and with no easy way to figure out where the most harmful content would be found and when and how to avoid that content"); *id.* ¶ 68 ("Netflix has removed some dangerous content from the Show[.]").

[4] Each exemption also fails for independent reasons. The commercial speech exception fails because plaintiffs do not allege or identify any "representations of fact" that were made by the Netflix's. *See Simpson Strong-Tie Co., Inc. v. Gore*, 49 Cal. 4th 12, 31 (2010) (setting forth *plaintiff's burden* to establish that the commercial speech exemption applies). The public interest exemption fails on the grounds that plaintiffs are seeking individual damages. *Ingles*, 129 Cal. App. 4th at 1067 ("Because appellant alleges and seeks recovery of damages personal to himself, his claim fails to meet the first requirement set out in section 425.17, subdivision (b)."); *Blanchard v. DIRECTV, Inc.*, 123 Cal. App. 4th 903, 915-16 (2004) (finding exception inapplicable in putative class action where "the benefits that would be conferred on plaintiffs, if they were victorious . . . far transcend any conceivable benefit to the general public").

parents."); *Medrano v. Kern Cty. Sheriff's Officer*, 921 F. Supp. 2d 1009, 1018 (E.D. Cal. 2013) (granting motion to dismiss siblings' wrongful death claim).

- ***Second***, the negligence and strict liability claims are time-barred. There is no dispute that both claims are subject to a two-year statute of limitations. *See* Cal. Civ. Proc. Code § 335.1. The claims here are brought four years after B.H. died. The real party in interest for these claims is plaintiff John Herndon. Pursuant to Section 377.30 of the California Code of Civil Procedure, "[a] cause of action that survives the death of the person entitled to commence an action or proceeding ***passes to the decedent's successor in interest*** . . . ***and an action may be commenced by the decedent's personal representative, or if none, by the decedent's successor in interest***." (emphasis supplied). Minor tolling does not apply. *See* Cal. Civ. Proc. Code § 352(a) (applying to "a person entitled to bring an action"); *cf. Schultz v. Harney*, 27 Cal. App. 4th 1611, 1623 (1994) ("Of course, the statute of limitations is tolled during Christopher's minority, ***at least as to causes of action in which Christopher is the real party in interest***." (emphasis supplied)).

- ***Third***, plaintiffs' strict liability claim fails because it is premised on the content and dissemination of the show. There is no strict liability for books, movies, or other forms of media. *See Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1034-36 (9th Cir. 1989) (holding that the content of a book concerning mushrooms did not support a products liability claim and basing its holding on the restatement relied upon by California courts as well as numerous authorities reaching the same). Again, plaintiffs' efforts to distance the claims from the content of the show do not persuade. Without the content, there would be no claim. The authority provided by plaintiffs do not support the application of strict liability to content.[5]

- ***Fourth***, plaintiffs also fail to identify a duty to support the negligence-based claims. The parties do not dispute the *Rowland* factors balanced in the duty analysis.[6] California courts have declined to find a duty as a matter of law under the *Rowland* factors for claims implicating expression. *Mcollum v. CBS*, 202 Cal. App. 3d 989, 1005-06 (1988) (finding no duty as a matter of law when a musician sought to appeal to troubled audience "perhaps most significantly, it is simply not acceptable to a free and democratic society to impose a duty upon performing artists to limit and restrict their creativity in order to avoid the dissemination of

[5] *See generally Loomis v. Amazon.com LLC*, 63 Cal. App. 5th 466 (2021) (concerning use of *hoverboard*); *Sharufa v. Festival Fun Parks, LLC*, 49 Cal. App. 5th 493 (2020) (concerning use of a *water slide* at an amusement park); *Bolger v. Amazon.com, LLC*, 53 Cal. App. 5th 431 (2020) (concerning use of defective *battery*); *Hernandezcueva v. E.F. Brady Co., Inc.*, 243 Cal. App. 4th 249 (2015) (concerning *asbestos*); *Hennigan v. White*, 199 Cal. App. 4th 395 (2011) (concerning use of dermatological services).

[6] Those factors include: "the foreseeability of harm to plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, [and] the extent of the burden to the defendant and consequences to the community of imposing a duty."



United States District Court
Northern District of California

ideas in artistic speech which may adversely affect emotionally troubled individuals"); *Bill*, 137 Cal. App. 3d at 1011 (finding that "the petitioner's activity in producing a motion picture and arranging for distribution, is socially unobjectionable – and, in light of First Amendment considerations, must be deemed so even if it had the tendency to attract violence-prone individuals to the vicinity of the theaters at which it was exhibited."). California courts have required a "very high degree of foreseeability" in cases concerning suicide and have found it difficult to satisfy. *McCollum*, 202 Cal. App. 3d at 1005-06 (holding that teen's suicide "was not reasonably foreseeable risk or consequence of defendants' remote artistic activities" even when the music was known for promoting suicide). The Court has not been persuaded that this case based upon the creation and dissemination of a show requires a different result.

  - Additionally, authority cited by plaintiffs demonstrate that even if there was a special relationship, the *Rowland* factor must be considered and may limit the duty. *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 222 (2021) ("Put differently, even when a special relationship gives rise to an affirmative duty to protect, a court must still consider whether the policy considerations set out in *Rowland* warrant a departure from that duty in the relevant category of cases."). The above cases demonstrate that the countervailing First Amendment policy concerns warrant limiting the duty even if there were a special relationship.[7]

- Finally, argument was raised that plaintiffs' civil claims are precluded in their entirety by the First Amendment. The issues above dispense of the claims and the parties agreed that the Court did not need to reach this issue based upon the doctrine of constitutional avoidance.

Based on the foregoing, plaintiffs have not demonstrated a legally sufficient claim. Both the motion to strike and motion to dismiss are **GRANTED**.

As discussed at the hearing, plaintiffs are granted time to consider whether they can amend their complaint in order to avoid the deficiencies identified in this Order. Plaintiffs are **DIRECTED** to submit a statement by January 18, 2022, indicating whether they will pursue amendment to cure the FAC's deficiencies or whether the case should be dismissed with prejudice. If plaintiffs decide

[7] Plaintiffs also acknowledge that traditional examples of a special relationship are "[t]he relationships between common carriers and their passengers, or innkeepers and their guests." *Regents of Univ. of Cal. v. Superior Court*, 4 Cal. 5th 607, 619-20 (2018). The California Supreme Court recently extended this to college universities who "in turn, have a superior control over the environment and the ability to protect students," including "the power to influence [students'] values, their consciousness, their relationships, and their behaviors." *Id.* at 625-27 (citation omitted). The allegations of targeting in plaintiffs' FAC do not arise to this degree of control. Plaintiffs' allegations again concern the content of the show and implicate countervailing First Amendment policy concerns.

United States District Court
Northern District of California

to file an amended pleading, plaintiffs must then file a second amended complaint no later than February 8, 2022. Netflix's response will be due March 1, 2022. If plaintiffs do not file the requested statement, the Court will dismiss this case with prejudice after January 18, 2022.

This Order terminates Docket Numbers 28 and 70.

**IT IS SO ORDERED.**

Dated: January 12, 2022

YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT JUDGE