UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA          *ORIGINAL*

Before The Honorable YVONNE GONZALEZ ROGERS, Judge

| | | |
|---|---|---|
| THE ESTATE OF B.H., JOHN HERNDON, J.H., a minor, T.H., a minor, on behalf o themselves and all others similarly situated, | ) ) ) ) ) ) | **Motion to Dismiss** |
| Plaintiffs, | ) ) | |
| vs. | ) ) | NO. C 21-06561 YGR |
| NETFLIX, INC., | ) ) | Pages 1 - 18 |
| Defendant. | ) ) ) | Oakland, California Tuesday, January 11, 2022 |

**REPORTER'S TRANSCRIPT OF ZOOM WEBINAR PROCEEDINGS**

**APPEARANCES VIA ZOOM:**

For Plaintiffs:          Hamilton Law LLC
                         5125 South Durango, Suite C
                         Las Vegas, Nevada  89113
                    BY:  RYAN HAMILTON, ATTORNEY AT LAW

                         The Digital Justice Foundation
                         210 Flamingo Road #424
                         Las Vegas, Nevada  89169
                    BY:  JAMES D. BANKER, ATTORNEY AT LAW


For Defendant:           Munger, Tolles & Olson
                         560 Mission Street, 27th Floor
                         San Francisco, California  94105
                    BY:  BLANCA F. YOUNG, ATTORNEY AT LAW


Reported By:        Raynee H. Mercado, CSR No. 8258

     Proceedings reported by electronic/mechanical stenography;
transcript produced by computer-aided transcription.

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 565-7228*

Tuesday, January 11, 2022                               3:27 p.m.

P R O C E E D I N G S

(Zoom Webinar)

--o0o--

**THE CLERK:**  Now calling civil case 21-6561-YGR, the Estate of B.H., et al. versus Netflix, Inc.

Counsel, starting with the plaintiff, please state your appearance for the record.

**MR. HAMILTON:**  Ryan Hamilton, bar number 291349.

**MR. BANKER:**  James Banker for the plaintiff.

**MS. YOUNG:**  Good afternoon, Your Honor.  Blanca Young on behalf of defendant Netflix.

**THE COURT:**  Okay.  Good afternoon, everyone.

With respect to the plaintiffs, who will be doing the argument?

**MR. HAMILTON:**  Your Honor, I will, Ryan Hamilton.

**THE COURT:**  Okay.

Okay.  Mr. Banker, you can turn your video off, then.

So as the prior case right before yours, this is another anti-SLAPP motion.  It's different, but as you can see, these anti-SLAPP motions are not -- are not uncommon in the Ninth Circuit, and we'll see whether or not the Ninth Circuit changes its opinion with respect to whether or not they're appropriate in federal Court.  But for -- for now, we're dealing with them.

So let me -- let me just start off.  Mr. Hamilton, this is a tragic case.

**MR. HAMILTON:**  Yes, Your Honor.

**THE COURT:**  Tragic.  But ultimately, I don't -- I don't think that the case survives, given the anti-SLAPP motion.

We'll go through it, but I did want you to know that I'm not unsympathetic to where your -- where you and your clients find themselves.

(Simultaneous colloquy.)

**THE COURT:**  The main -- the main issue -- and, frankly, I -- you know, I've had internal debates about whether there's something that can be done and -- and -- given the Constitution, given the First Amendment, it is artful pleading, but I still don't think it gets through.

There is no -- I cannot see how, despite your efforts, you can disassociate and -- and untangle the content of that show from what you're trying to do in terms of, you know, a claim of -- of just disclosure and notice.

I just -- I think that you recognize -- because of the way that the complaint is alleged, that if you attempted to -- to sue on the grounds that you didn't want the show itself -- the content of the show to be -- to be publicized and disseminated, that you'd lose.  I think you go to great length to try to disassociate yourself.  But ultimately, I don't

think you can.

And -- and as a consequence, when we -- you know, we can go through the detailed analysis here, you can't avoid the implications of the anti-SLAPP.

You may proceed.

**MR. HAMILTON:**  Thank you for your kind remarks, and I will certainly pass those to the client, Your Honor.  I really appreciate that.

Your Honor, the Court is absolutely correct.  The complaint is -- and -- and this case in our view is not about the content of the show, but it's about the individualized algorithmic targeting, and it's the targeting of vulnerable children.

Your Honor, from our perspective, the content of the show could certainly be swapped out for a different show providing that that same show -- whatever show is at issue causes harm to the vulnerable child in the instance.  And so, Your Honor, our position is that this falls outside the ambit of the anti-SLAPP law.

And -- and, Your Honor, this -- this has been briefed, and I certainly don't want to waste the Court's time, but we would also point out that it is our view that this case falls within two of the exclusions under 425.17.

First, it falls under the public interest exclusion in that all of -- all three of those conditions are met, Your

Honor.  No plaintiff here will be seeking relief that's any narrower or any different from any other plaintiff.

We would also point out that the rights there are at issue here are -- are certainly very valuable rights that protect the -- the public from harm.  And, finally, the third condition, that no other party, public or private, is seeking to vindicate these rights.

Your Honor, I think it's also worth pointing out that a significant -- the defendant in bringing their Anti-SLAPP motion did not raise what the courts have called the 425.17 exclusions -- did not raise these in their initial brief but brought them in their -- addressed them only in their reply brief.

This was a -- similar to an issue that's already been -- been at play in this case.  And, Your Honor, it's our position that the defendant is judiciously estopped from making those arguments for the first time in their reply brief.

Your Honor, it's also our position that the defendants -- the conduct at issue here falls within the commercial speech exception.  What's at play here are ultimately private communications on a -- a platform that Netflix's consumers are paying on a monthly basis.

Despite Netflix's contentions to the contrary, there plainly is a product at issue here, and the speech that is at issue here is -- is plainly commercial, Your Honor.

The courts have discussed this as being -- and I'll -- I'll butcher this word -- synecdoche theory, where it's a vague allusion to a -- an issue of public concern.

Even if the Court believes that the show cannot be disentangled from the private targeting, the show's mere depiction of suicide is -- is not enough to invoke this larger public issue.

But, Your Honor, really, what we have at issue and -- and what this case about from our perspective is the -- the private targeting of vulnerable children, targeting -- and consequences that were not only foreseeable, that were foreseen and that Netflix was warned about.

Your Honor, it's -- it's -- I do believe that the Court indicated that you're going to make a ruling.  I would ask just to preserve for the record if I may a couple of housekeeping issues.

THE COURT:  Go ahead.

MR. HAMILTON:  Your Honor, we -- we have brought an administrative motion asking the Court to take this -- this motion off of calendar pending our interlocutory appeal of the Court's ruling on remand.

There is an appeal up to the Ninth Circuit.  It is discretionary, but it would be for an expedited appeal, Your Honor.

The other reason that we are asking the Court to take this

matter off of the Court's docket goes to jurisdiction -- subject matter jurisdiction under Article III, Section 2.

We understand that the Court has made a ruling on the motion to remand.  But at this juncture, Your Honor, it's our position that there is not the minimal diversity necessary for subject matter jurisdiction.

The plaintiffs and the defendant both are California domiciliaries.  To be sure, we have made a class complaint, but as of yet --

**THE COURT:**  -- global class complaint, not just California but global --

**MR. HAMILTON:**  You're absolutely.

**THE COURT:**  -- complaint, and -- and I'll issue an order with respect -- with respect to your motion for a stay, which, by the way, it should have been a motion.  You actually did not follow the rules properly in bringing this as an administrative request.  It's not an administrative request.

But given the allegations in the complaint and the -- the broad -- the broad class that you are seeking to -- to represent, I stand by -- I stand by my ruling.

**MR. HAMILTON:**  Understood.

**THE COURT:**  So I -- I will take care of that -- that issue.

You know, and -- as a footnote for -- for all the lawyers, we have rules for a reason.  And your -- you don't practice --

I mean, you don't have an office here.  I don't know how regularly you practice in this district, but you have not done a very good job of following our rules, and you need -- if you're going to practice in this district, you need to follow the rules.  And we just don't allow you to keep seriatim filing -- you know, filing new filings.  You file things late.  Then they don't have an opportunity to respond with the full measure that the rule provides.  It was a mess.  And you shouldn't practice that way in this district.

So I put that as a footnote, and I -- because it's not the way we conduct business here.

**MR. HAMILTON:**  Your points are well taken, Your Honor.

**THE COURT:**  So in any event, do you have other housekeeping things you want to address?

**MR. HAMILTON:**  No, Your Honor.

**THE COURT:**  All right.  Do you wish to be heard, Ms. Young, on the -- respond to him with respect to the anti-SLAPP?

**MS. YOUNG:**  Just very briefly, Your Honor, although we've briefed this extensively in our papers.

I would say nobody here is denying or arguing that these are absolutely tragic circumstances.  But, unfortunately, this is not the first case of its kind where, you know, a grieving family has attempted to allege that content that their loved

one viewed was responsible for the harms that they suffered. And the courts simply do not recognize a cause of action for that kind of a claim.  There's no civil liability because of the First Amendment protections that apply.

Mr. Hamilton said that this case is not about the content of the speech.  I think that's belied by the allegations of the complaint itself.  Hard as the plaintiffs have tried to cast their claims differently, they cannot escape the fact that but for what they call the dangerous and traumatic content of the show, we would not be here.

The issue with the recommendation or what they call the "algorithmic targeting" is because of what it recommended. And that was a show that grapples with the very difficult issue of teen suicide.  And that is why we are here, and you just cannot disaggregate it from the content of the show as they are trying to do.

And, again, this is not the first case where plaintiffs have tried to avoid the anti-SLAPP statute and avoid the First Amendment by saying they're not really talking about speech they're talking about targeting of speech and targeting people who are vulnerable.

Ultimately, the reason that the targeting itself is harmful is because of the speech that is alleged to have been targeted, and that is ultimately why we're here.

I did want to quickly address the exclusions to the

anti-SLAPP statute, and the anti-SLAPP statute is very clear that those exclusions simply do not apply to the kind of speech at issue here.

I'm referring to section 425.17, subsection (d)(2), which says that subsection (b) and (c), which are the exceptions that Mr. Hamilton cited for commercial speech and for speech in the public interest, do not apply to any action against any person or entity based upon the creation, dissemination, exhibition, advertisement, or other similar promotion of any dramatic, literary, musical, political, or artistic work including but not limited to a motion picture or television program, et cetera.

And that is precisely what we have here, so those exclusions simply don't apply to the speech that is at issue in this case.

**THE COURT:** Mr. Hamilton, do you want to address that issue?

**MR. HAMILTON:** I do, Your Honor.

We, of course, respectfully disagree with that. We believe that the case is really about a software product that collects massive troves of user data to tailor and target specific content to specific users, and it -- it did so with, of course, huge consequences in this case.

We believe that this is a novel issue that is not the same as the issue that Ms. Young just indicated. This is a far cry

from simply creating a book and placing it on the shelf for anyone in the public to reach.

As we allege in our complaint and the -- the FAC, that Netflix takes great pride in the fact that its recommendations in effect take the choice or -- or exert a huge amount of power in what choices its consumers end up watching.  So we -- we do believe that this takes it outside the ambit of the anti-SLAPP.

**THE COURT:**  Let's -- let's talk about step two.  So even if you were right, Mr. Hamilton, on step one or if -- or if Ms. Young is right on step one, there are issues at step two.

So in terms of the wrongful death claim by the siblings, it's my view that California law, which is statutory, bars a sibling from bringing a wrongful death action unless the decedent has a surviving issue of parents.  And they have parents, so the siblings in my view cannot bring a claim as a matter of law.  There's that issue.

The second issue is that under California law, these appear to be time-barred.  Minor tolling does not apply to the father, the parent who's bringing the claim.  That's the -- that's not -- that's not the way the statute works.

It's -- it runs, in this case given the allegations, from the time that she -- she passed so you don't get the benefit of tolling.

Third, in terms of strict liability -- well, this -- this dovetails with -- with the first one because, here, on strict liability, if I find that we're really talking about the content and dissemination of a show, that is -- that cannot be pursued under a strict liability claim.

And then, finally, just in terms of negligence, again, under California law, given the *Rowland* factors, this would be protected under the First Amendment again, it -- it's a -- it's -- given the view of the complaint, as being content-based as opposed something else.

So I don't know if you want to address those issues beyond what's in the briefs.

**MR. HAMILTON:** Your Honor, I do believe that those issues are pretty thoroughly briefed, and I -- I don't want to repeat myself or take up the Court's time, but I -- I would just point out with respect to the -- the standing issue of the brothers, my reading of the case law is that it's something that the California Supreme Court, at least going back to 1895, has interpreted heirs to be those who are capable of inheriting.  And the wrongful death statute links heirs and those who are capable of inheriting.  Those two are so closely tied together.

The current version of the statute speaks in terms of persons who would be entitled to inherit by intestate succession.  Plainly the brothers are entitled to inherit by

intestate succession, whether or not they --

**THE COURT:** Not over the father. They would not be. As a matter of law, they're entitled to nothing.

**MR. HAMILTON:** And, Your Honor, I would point out there is case authority, for example, the *Miller* case on page 20 of our briefing, that expressly indicates that whether or not children actually inherit, they would still be able to bring wrongful death claims.

So it -- the -- my reading of the law is that they use the intes- -- intestaces scheme as a means to fix a close enough relationship for who can bring a wrongful death claim.

**THE COURT:** Any response?

**MS. YOUNG:** Yes, Your Honor.

The case that counsel is referring to did not address the issue of sibling standing. That case addressed the issue of whether a child could -- could pursue wrongful death claim at the same time as a parent.

I would also note that the -- the word "heirs" that the California Supreme Court interpreted appears nowhere in the current version of the statute. The current version of the statute sort of splits in two who has standing to bring a wrongful death claim.

Children -- consistent with the case that counsel just cited, children and parents share standing to bring wrongful death claims. That's the first part of the statute. And then

the second part of the statute says that those who inherit have standing to bring a claim.

And, of course, we look to the laws of intestate succession under the language of the statute.  And, as Your Honor said, if there's parent in line first, the siblings do not inherit under the law.  They're not entitled to anything.  And they do not have standing to bring a claim.

And, in fact, the -- the case that counsel cited was decided by Judge Aronson in the Fourth District Court of Appeals, who also wrote the *Scott* decision that we cite in our papers at 184 Cal APP 4th 1506 in 2010.  And in that case, Justice Aronson wrote that "California's wrongful death statute vests priority and exclusive standing in a decedent's surviving parent over a surviving sibling."

And all the cases that we have been able to find that specifically address the issue of sibling standing have reached the same conclusion.

**THE COURT:**  Well, that's certainly -- and I'll go back and take a look at *Miller*, but it's certainly my understanding of the law.

We -- we get those kinds of claims in constitutional cases of wrongful death when they bring the -- the California-based claims in addition to the constitutional -- U.S. constitutional-based claims.

I'll take a look at *Miller*, but I don't think,

Mr. Hamilton, that your reading is -- is accurate.

So here's the question, Mr. Hamilton.  And that is -- I've spent -- I've spent time with your case, and I -- I just don't agree that your theory works, as -- as much as I'm sympathetic for the position.  So I will -- you know, likely to grant this motion.

And the question, then, is do you just want to then stand on the complaint and take it to the Ninth Circuit and see what the Ninth Circuit says, or do you want to amend again?

And -- and I remind you, as I did in the last case, your attorneys' fees provisions associated with these anti-SLAPP motions, and -- and that's the way the statute works.  And so it's -- it's difficult because -- and -- and they're intended to be -- to stop people from filing lawsuits that would violate the statute.

So the question is where do you want to proceed from here?

**MR. HAMILTON:**  Your Honor, may I -- may I pose a question?  Does the Court believe that there are any pleading deficiencies, or is it just the -- the gravamen of the --

**THE COURT:**  Yeah, I -- I think that -- you know, frankly, I think that you've done as good a job as you can probably do in -- in articulating a theory.  I just don't think that the theory works under the law.

And so that's why -- that's why I'm raising this, because I -- I would typically give people leave to amend.  But in

this case, I'm not sure that you can really do anything because you've got a theory.  And it's my view having spent time with this case, that the theory doesn't work in light of the anti-SLAPP motion.

Now, I could be wrong and -- and the Ninth Circuit judges may say, yeah, she was wrong.  We're -- we're going to send it back.  And, you know, that would be fine with me.  I -- I don't -- it's just that based on the law, I don't -- I don't think I can get there, so --

**MR. HAMILTON:**  Your Honor --

(Simultaneous colloquy.)

**THE COURT:**  I can -- you know, if I grant the motion without leave to amend, then you can appeal and take this complaint up and -- and make your arguments there.

**MR. HAMILTON:**  Your Honor, I'm just -- I'm just thinking that through.

Your Honor, would it be possible to consult with the client on that just so that we can make sure that he understands the risks?

**THE COURT:**  Sure.  So what I will say is I will give you -- how much time do you need?

**MR. HAMILTON:**  I don't think very long, Your Honor.

**THE COURT:**  A week?  A day?  Two days?  What do you need?

**MR. HAMILTON:**  Maybe -- a week, if we could.

THE COURT:  Okay.

So by -- Monday is a holiday.  So by next Tuesday, file a statement advising whether you believe you can amend if the motion is granted.  And then I can issue an order, either -- I'll consider what you have to say and decide whether it would be with leave or without leave.

MR. HAMILTON:  Will do, Your Honor.

THE COURT:  Or -- I guess the alternative is I could issue an order and then you'd have it in front of you and give you about a week to decide whether or not you're going to amend.  How about -- we do it -- why don't we do it that way.  That way you have an order in front of you.

MR. HAMILTON:  Fair enough.  And, Your Honor, I believe both counsel -- both sides were in agreement about the principle of constitutional avoidance as it applied to this case, deferring the -- the First Amendment issues.  And so we'd respectfully request that the Court follow that principle.

THE COURT:  And I didn't think that I had to reach that issue, but I'll take a look again.

MR. HAMILTON:  Thank you, Your Honor.

Well, we're not trying to make you reach that issue so --

THE COURT:  I never want to --

(Simultaneous colloquy.)

THE COURT:  I never want to reach issues that I don't

have to reach.

MR. HAMILTON:  And, Judge, we -- we sure appreciate your time spent on this case, even though it sounds like it may not come out our way.

THE COURT:  All right.  Good enough.

So I'll issue an order with some direction as to how to proceed hereafter, Mr. Hamilton.

And we're adjourned on your case.  Thank you.

MR. HAMILTON:  Thank you.

MS. YOUNG:  Thank you, Your Honor.

(Proceedings were concluded at 3:56 P.M.)

--o0o--


**CERTIFICATE OF REPORTER**


I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter. I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further that I am not financially nor otherwise interested in the outcome of the action.

_____

Raynee H. Mercado, CSR, RMR, CRR, FCRR, CCRR

Wednesday, August 10, 2022

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 565-7228*