1  BLANCA F. YOUNG (State Bar No. 217533)
   blanca.young@mto.com
2  J. MAX ROSEN (State Bar No. 310789)
   max.rosen@mto.com
3  MUNGER, TOLLES & OLSON LLP
   560 Mission Street, Twenty-Seventh Floor
4  San Francisco, CA 94105-2907
   Telephone: (415) 512-4000
5  Facsimile: (415) 512-4077

6  ELAINE J. GOLDENBERG (*pro hac vice*)
   elaine.goldenberg@mto.com
7  MUNGER, TOLLES & OLSON LLP
   601 Massachusetts Ave. NW, Suite 500 E
8  Washington, DC 20001
   Telephone:  (202) 220-1100
9
   Attorneys for NETFLIX, INC.
10

11                 UNITED STATES DISTRICT COURT

12      NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

13

14  THE ESTATE OF B.H., JOHN HERNDON,          Case No. 4:21-cv-06561-YGR
    J.H., a minor, T.H., a minor, on behalf of
15  themselves and all other similarly situated,   **DEFENDANT'S BRIEF REGARDING**
                                                    ***ROYAL CANIN***
16                 Plaintiffs,

17         vs.

18  NETFLIX, INC.,                             Date: September 23, 2025
                                               Time: 2:00 p.m.
19                 Defendant.                  Ctrm: 1
                                               Judge: Yvonne Gonzalez Rogers
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................2

ARGUMENT ....................................................................................................................6

    I.    *Royal Canin* has no effect on this Court's subject-matter jurisdiction, and the Court should therefore once again enter judgment in favor of Netflix ...............6

        A.    If *Royal Canin* is not clearly irreconcilable with existing Ninth Circuit precedent, then it has no effect on this case ......................................6

        B.    *Royal Canin* is not irreconcilable, let alone clearly so, with Ninth Circuit precedent interpreting CAFA and requiring examination of the complaint in place at the time of removal, because *Royal Canin* does not interpret or apply CAFA. ................................................7

        C.    The Herndons' arguments that *Royal Canin* governs here are unavailing ...........................................................................................11

    II.    Even if the Court were to conclude that *Royal Canin* governs and requires the Court to focus on the amended complaint, there is no basis for remanding this case to state court ...............................................................14

CONCLUSION ................................................................................................................18

1

## **<u>TABLE OF AUTHORITIES</u>**

2

**Page(s)**

3

**FEDERAL CASES**

4

*Arbaugh v. Y&H Corp.*,
546 U.S. 500 (2006) ...........................................................................................13

5

6

*Bonilla-Hernandez v. Garland*,
2022 WL 1467981 (9th Cir. May 10, 2022) .......................................................13

7

8

*Broadway Grill v. Visa*,
856 F.3d 1274 (9th Cir. 2017) ................................................................... 1, passim

9

*In re Burlington Northern Santa Fe Ry.*,
606 F.3d 379 (7th Cir. 2010) ...........................................................................10, 11

10

11

*Carmona Mendoza v. Domino's Pizza*,
73 F.4th 1135 (9th Cir. 2023) .........................................................................6, 12

12

13

*Carzell v. Life of the South Ins. Co.*,
2016 WL 1688774 (N.D. Ga. Apr. 26, 2016) ...................................................16

14

*Close v. Sotheby's*,
894 F.3d 1061 (9th Cir. 2018) ........................................................................6, 7

15

16

*County of San Mateo v. Chevron Corp.*,
32 F.4th 733 (9th Cir. 2022) ..............................................................................6

17

18

*In re Hodge*,
220 B.R. 386 (D. Idaho 1998) .........................................................................12

19

*Kleve v. Hill*,
243 F.3d 1149 (9th Cir. 2001) .........................................................................12

20

21

*Lawrence v. Chater*,
516 U.S. 163 (1996) .........................................................................................12

22

23

*Miller v. Gammie*,
335 F.3d 889 (9th Cir. 2003) (en banc) ...........................................................6

24

*Mondragon v. Capital One Auto Finance*,
736 F.3d 880 (9th Cir. 2013) ..................................................................... 1, passim

25

26

*Native Village of Kivalina v. ExxonMobil Corp.*,
696 F.3d 849 (9th Cir. 2012) ...........................................................................13

27

*Rockwell Int'l v. United States*,
549 U.S. 457 (2007) .........................................................................................13

28

DEFENDANT'S BRIEF REGARDING *ROYAL CANIN*

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*Royal Canin U.S.A. v. Wullschleger*,
 604 U.S. 22 (2025) ............................................................................................. 1, passim

*Salazar v. Avis Budget Group*,
 2007 WL 9776748 (S.D. Cal. May 8, 2007) ............................................................16

*Salter v. Quality Carriers, Inc.*,
 974 F.3d 959 (9th Cir. 2020)............................................................................14, 16

*Serrano v. 180 Connect*,
 478 F.3d 1018 (9th Cir. 2007) .........................................................................17, 18

*Stutson v. United States*,
 516 U.S. 193 (1996) ...............................................................................................12

*United States v. Vanorden*,
 414 F.3d 1321 (11th Cir. 2005)..............................................................................17

*Zurbriggen v. Twin Hill Acquisition Co.*,
 2025 WL 1092973 (N.D. Ill. Apr. 11, 2025) ...................................................7, 10

**FEDERAL STATUTES**

Class Action Fairness Act, 28 U.S.C. § 1332(d)............................................. 1, passim

 28 U.S.C. § 1332(d)(1)(A) .....................................................................................16

 28 U.S.C. § 1332(d)(2)...........................................................................................3

 28 U.S.C. § 1332(d)(2)(A) .....................................................................................16

 28 U.S.C. § 1332(d)(3)......................................................................................4, 17

 28 U.S.C. § 1332(d)(4)(B).................................................................................4, 17

 28 U.S.C. § 1332(d)(5)...........................................................................................3

 28 U.S.C. § 1332(d)(7)................................................................................. 3, passim

28 U.S.C. § 1367.............................................................................................1, 7, 9, 10

28 U.S.C. § 1367(a)................................................................................................9

28 U.S.C. § 1367(c)................................................................................................9

28 U.S.C. § 1441(a)..............................................................................................3, 8

28 U.S.C. § 1446(b)(1)..........................................................................................8

DEFENDANT'S BRIEF REGARDING *ROYAL CANIN*

1

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

28 U.S.C. § 1446(b)(3) ...........................................................................................................8

**LEGISLATIVE MATERIALS**

S. Rep. 109-14, 109th Cong. 1st Sess. 2005 ........................................................................8

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## **INTRODUCTION**

2      The Ninth Circuit remanded for this Court to decide whether the Supreme Court's recent

3  decision in *Royal Canin U.S.A. v. Wullschleger*, 604 U.S. 22 (2025), has any effect on this Court's

4  conclusion that it has jurisdiction under the Class Action Fairness Act ("CAFA").  The answer to

5  that question is no.  Unless *Royal Canin* is clearly irreconcilable with Ninth Circuit precedent on

6  CAFA jurisdiction, this Court must continue to follow that precedent.  And here there is no

7  tension between *Royal Canin* and the Ninth Circuit's decisions, let alone clear irreconcilability

8  with the binding Ninth Circuit precedent underlying this Court's prior decision.

9      That is so because *Royal Canin* does not analyze the text of CAFA or apply that statute in

10  any way.  Rather, *Royal Canin* analyzes the separate supplemental-jurisdiction statute, 28 U.S.C.

11  § 1367.  Considering that separate jurisdictional statute, *Royal Canin* concludes that a district

12  court must look to an amended complaint filed after removal to determine whether jurisdiction

13  exists over "leftover" state-law claims when a plaintiff drops all federal claims.  604 U.S. at 33.

14  By contrast, the Ninth Circuit precedent that this Court followed in its prior decision analyzes

15  specific statutory language in CAFA.  That precedent holds that district courts must focus on the

16  operative complaint at the time of removal when assessing whether CAFA jurisdiction exists.  *See*

17  *Broadway Grill v. Visa*, 856 F.3d 1274 (9th Cir. 2017); *Mondragon v. Capital One Auto Finance*,

18  736 F.3d 880 (9th Cir. 2013).  In deciding which complaint should form the basis of a

19  jurisdictional analysis, there is nothing inconsistent about taking different approaches under

20  different statutes that use entirely different language.  Indeed, a district court in another circuit has

21  already concluded as much, declining in a CAFA case to displace circuit precedent just like the

22  Ninth Circuit's with the separate rule set forth in *Royal Canin*.

23      Given the lack of any conflict—much less clear irreconcilability—between *Royal Canin*

24  and the Ninth Circuit CAFA cases, *Royal Canin* does not affect this Court's existing decision on

25  CAFA jurisdiction, in which the Court looked to the operative complaint at the time of removal

26  rather than to a post-removal amended complaint.  And because this Court has jurisdiction over

27  this case, this Court's existing merits decision—already affirmed by the Ninth Circuit—must also

28  stand.  That means that the prior final judgment in favor of Netflix should be reinstated.

1    Finally, even if this Court were to conclude that *Royal Canin* is relevant here and that the

2    jurisdictional determination under CAFA should be based on the amended complaint rather than

3    on the original complaint in place at the time of removal, the result would be the same.  The key

4    allegations in the original complaint on which this Court previously relied are reproduced in the

5    amended complaint as well, including allegations demonstrating the existence of minimal

6    diversity under CAFA due to the presence of putative class members in Canada.  Under those

7    allegations, CAFA jurisdiction exists, there is no basis for any remand, and final judgment for

8    Netflix is warranted.

9                                          **<u>BACKGROUND</u>**

10    **1.  *The original complaint and amended complaint*.**  In March 2017, Netflix released the

11    show *13 Reasons Why* worldwide.  Subsequently, the family members and estate of Bella Herndon

12    ("the Herndons") filed a putative class-action complaint against Netflix in California state court,

13    alleging that Bella Herndon viewed the show and later died by suicide; further alleging that the

14    show caused suicides and self-harm in young people; and asserting claims for negligence, failure

15    to warn, and wrongful death.  Dkt. 3-1 Ex. A, ¶¶ 73-86.

16        The complaint swept in putative class members from across the country and the world.  It

17    stated that the Herndons were suing "on behalf of all others similarly situated," asserted that there

18    were "thousands" of putative class members, and included *no* geographical limitations on those

19    members.  Dkt. 3-1 Ex. A, ¶¶ 8, 50, 69.  It alleged that release of the show had caused a spike in

20    "at-risk" youth behavior in a specific school district in Florida, including "over a dozen cases" of

21    Florida children in that district engaging in "threats of suicide."  Dkt. 3-1 Ex. A, ¶ 44.  It also

22    alleged a "spike in hospital admissions at a children's hospital" for suicide attempts or suicidal

23    ideation and cited an article about a specific hospital in Oklahoma.  *Id.* ¶ 47 (citing

24    https://www.jahonline.org/article/S1054-139X(18)30412-9/pdf).  And it alleged "devastating

25    impacts" on young people "in Canada," citing a study on suicide rates in Ontario.  *Id.* ¶ 49.

26        Netflix removed the putative class action to federal district court under CAFA.  CAFA

27    provides that a federal district court has "original jurisdiction" over a class action, thereby

28    rendering it removable, where (1) there is minimal diversity, meaning that at least one putative

1    class member is diverse in citizenship from one of the defendants; (2) there are at least 100

2    putative class members; and (3) the amount in controversy exceeds $5 million exclusive of interest

3    and costs.  28 U.S.C. § 1332(d)(2), (5); *see* 28 U.S.C. § 1332(d)(7) (CAFA provision stating that

4    that the "[c]itizenship of the members of the proposed plaintiff classes shall be determined . . . as

5    of the date of filing of the complaint or amended complaint . . . indicating the existence of Federal

6    jurisdiction"); 28 U.S.C. § 1441(a) (action over which district court has original jurisdiction is

7    removable).  Netflix's notice of removal explains that Netflix is a citizen of California and

8    Delaware and that the putative class includes members in Florida and nationwide—which

9    establishes minimal diversity.  Dkt. 3, at 3-4.

10        After removal, the Herndons filed an amended complaint in this Court proposing two

11   classes.  The first—the "California Negligence and Failure-to-Warn Class"—covers California

12   minors (or "their successors in interest") who watched *13 Reasons Why* and allegedly suffered

13   injury or death based on negligence or a failure to warn.  Dkt. 22, ¶ 76a.  The second—the "Global

14   Wrongful-Death Class"—covers all "beneficiaries . . . of decedents" from across the world who

15   watched *13 Reasons Why* and allegedly "died as a result of" the same alleged conduct.  Dkt. 22,

16   ¶ 76b.

17        The amended complaint alleges "thousands" of putative class members.  Dkt. 22, ¶ 53.

18   And just like the original complaint, it identifies putative class members located in specific places

19   outside of California and Delaware.  It includes the same allegations found in the original

20   complaint about children who suffered injury in a Florida school district, *id.* ¶ 47; about a spike in

21   children admitted to a particular hospital in Oklahoma, *id.* ¶ 50; and about an alleged increase in

22   suicides in Canada, *id.* ¶ 52.

23        **2.  *This Court's denial of the Herndons' motion to remand to state court and ultimate***

24   ***entry of judgment in Netflix's favor*.**  After filing the amended complaint, the Herndons filed a

25   motion to remand the case to state court, which this Court denied.

26        As an initial matter, the Court explained that, under Ninth Circuit precedent, "whether

27   remand is proper must be ascertained on the basis of the pleadings at the time of removal."  Dkt.

28   45, at 3 (quoting *Broadway Grill*, 856 F.3d at 1277 (interpreting 28 U.S.C. § 1332(d)(7), a CAFA

1  provision)).  In this case, the operative pleading at the time of removal was the original complaint,

2  not the amended complaint.  *See id.*

3      Based on the original complaint, the Court ruled that CAFA's minimal diversity

4  requirement was satisfied.  The Court observed that the Herndons' "own allegations identif[ied]

5  harms in Florida and Canada for a sprawling global class."  Dkt. 45, at 8.  In addition, the Court

6  emphasized that the Herndons did not "dispute that they are seeking a global class and 'that

7  minimal diversity very likely exists.'"  *Id.*; *see* Dkt. 26, at 11 n.4, 15 (Herndons stating in a filing

8  that "[p]laintiffs do not dispute . . . that minimal diversity very likely exists" and that plaintiffs

9  "have a good faith belief that there are class members outside of California").

10      The Court also ruled that the Herndons had not met their burden of proving the

11  applicability of any exception to CAFA jurisdiction.  Under CAFA's mandatory home-state

12  exception, a district court must remand to state court if "two-thirds or more of the members of all

13  proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in

14  which the action was originally filed."  28 U.S.C. § 1332(d)(4)(B).  The Court explained that this

15  exception did not apply because the Herndons "concede[d] that they d[id] not know the scope of

16  their national class, let alone the composition of its members across states," and thus could not

17  "carry their burden."  Dkt. 45, at 10.  And under CAFA's discretionary home-state exception, a

18  federal district court may (but need not) remand if "greater than one-third but less than two-thirds

19  of the members of all proposed plaintiff classes in the aggregate and the primary defendants are

20  citizens of the State in which the action was originally filed."  28 U.S.C. § 1332(d)(3).  The Court

21  concluded that "this exception fails" too, because there is "no evidence in the record to support a

22  finding that more than one-third of the putative class are citizens of California."  Dkt. 45, at 10.

23      This Court subsequently addressed the merits of the case.  The Court dismissed the

24  Herndons' amended complaint with prejudice on the ground that they "failed to sufficiently state a

25  legal claim"; struck that complaint under California's anti-SLAPP statute; and entered final

26  judgment for Netflix.  Dkts. 74, 76.  The Herndons appealed, and the Ninth Circuit affirmed.  *See*

27  2024 WL 808797 (9th Cir. Feb. 27, 2024).

28

3. ***The Supreme Court's decision in* Royal Canin*, its GVR, and further proceedings in the Ninth Circuit*.**  The Herndons filed a petition for a writ of certiorari in the Supreme Court. While that petition was pending, the Supreme Court decided *Royal Canin*, 604 U.S. 22, which addresses the text of the statute governing supplemental jurisdiction over state-law claims and does not interpret or apply the text of CAFA.  *Royal Canin* holds that determining whether there is supplemental jurisdiction over state-law claims after all federal claims have been dropped from an action requires examining the complaint that is operative when the determination is made—there, a post-removal amended complaint. *See id.* at 30-31.

After issuing its decision in *Royal Canin*, the Supreme Court granted the Herndons' petition, vacated the Ninth Circuit's judgment, and remanded to the Ninth Circuit—an action known as a "GVR"—"for further consideration in light of" *Royal Canin*.  145 S. Ct. 1165 (2025). The parties then engaged in extensive briefing in the Ninth Circuit about whether the existence of the GVR determines the outcome in this case.  The Herndons contended that the Ninth Circuit should simply order this Court to look to the amended complaint, rather than the original complaint, for purposes of deciding whether jurisdiction exists under CAFA.  No. 22-15260, Dkt. 142, at 1.  Netflix contended that a GVR often has no effect on an existing lower-court judgment, that *Royal Canin* does not change the result here because it does not interpret CAFA's text or displace the binding Ninth Circuit precedent on which this Court relied in examining the original complaint rather than the amended complaint, and that the Ninth Circuit should, at most, remand to this Court to decide in the first instance whether *Royal Canin* affects the outcome.  No. 22-15260, Dkt. 143, at 1-9.

The Ninth Circuit sided with Netflix.  That Court entered an order remanding this case "to the district court to consider what effect, if any, the Supreme Court's decision in *Royal Canin* has on the court's subject matter jurisdiction"—and expressed "no view on whether *Royal Canin* is relevant here."  No. 22-15260, Dkt. 144.

<u>**ARGUMENT**</u>

**I.**    ***Royal Canin* has no effect on this Court's subject-matter jurisdiction, and the Court should therefore once again enter judgment in favor of Netflix**

    **A.**    **If *Royal Canin* is not clearly irreconcilable with existing Ninth Circuit precedent, then it has no effect on this case**

The Ninth Circuit remanded for this Court to decide whether *Royal Canin* has any effect on this Court's jurisdiction—that is, whether *Royal Canin* requires that this Court assess CAFA jurisdiction based on the Herndons' amended complaint rather than based on the original complaint that was in place at the time of removal. This Court previously took the latter approach in assessing jurisdiction. *See* Dkt. 45, at 3-5.

Where a case is squarely governed by Ninth Circuit precedent, but the Supreme Court has granted, vacated, and remanded ("GVRed") in light of an intervening Supreme Court decision, the question is whether the Ninth Circuit's precedent is "clearly irreconcilable" with the Supreme Court's new decision. *See, e.g.*, *Carmona Mendoza v. Domino's Pizza*, 73 F.4th 1135, 1137 (9th Cir. 2023); *County of San Mateo v. Chevron Corporation*, 32 F.4th 733, 746 (9th Cir. 2022). If the decisions are not clearly irreconcilable, then the Ninth Circuit precedent continues to be binding law in this circuit.

The "clearly irreconcilable" standard is exacting. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). It "is not enough for there to be some tension between the intervening higher authority and prior circuit precedent, or for the intervening higher authority to cast doubt on the prior circuit precedent." *Close v. Sotheby's*, 894 F.3d 1061, 1073 (9th Cir. 2018) (citation omitted). Rather, "[s]o long as the court can apply our prior circuit precedent without running afoul of the intervening authority[,] it must do so." *Id.* (citation omitted).

That exacting standard applies here. As this Court previously recognized, Dkt. 45, at 3, Ninth Circuit precedent interpreting the text of CAFA unambiguously *requires* examination of the original complaint rather than the amended complaint in this case. The Ninth Circuit held in *Broadway Grill* that whether CAFA's jurisdictional requirement of minimal diversity is satisfied "must be ascertained on the basis of the pleadings *at the time of removal*"—not on the basis of any amended pleadings filed post-removal. 856 F.3d at 1277 (emphasis added). And in *Mondragon*,

1  the Ninth Circuit held that whether an exception to CAFA jurisdiction applies is assessed "as of

2  the date the case *became removable*"—not after removal.  736 F.3d at 883 (emphasis added). [1]

3      What this Court must now decide is whether *Royal Canin* is clearly irreconcilable with that

4  Ninth Circuit precedent.  If it is not, then there is no flaw in this Court's existing jurisdictional

5  analysis, and this Court's final judgment in favor of Netflix can simply be reinstated.

6      **B.**    ***Royal Canin* is not irreconcilable, let alone clearly so, with Ninth Circuit
7          **precedent interpreting CAFA and requiring examination of the complaint in
        place at the time of removal, because *Royal Canin* does not interpret or apply
8          CAFA**

9      The answer to the question posed by the Ninth Circuit is clear:  *Royal Canin* does not

10  affect this Court's jurisdictional determination, because that decision is not clearly irreconcilable

11  (or irreconcilable at all) with the binding Ninth Circuit precedent on which this Court previously

12  relied in looking to the original complaint and not the amended one.  The Ninth Circuit's decisions

13  in *Broadway Grill* and *Mondragon* interpret CAFA, and *Royal Canin* interprets a different statute:

14  28 U.S.C. § 1367, governing supplemental jurisdiction.  Thus, it is entirely possible to apply

15  *Broadway Grill* and *Mondragon* in CAFA cases like this one "without running afoul" of *Royal*

16  *Canin*'s different rule for supplemental-jurisdiction cases.  *Close*, 894 F.3d at 1073 (citation

17  omitted).  Notably, in so ruling, this Court would align itself with a district court in the Seventh

18  Circuit that has already held that *Royal Canin* does not displace binding Seventh Circuit precedent

19  taking the same approach as *Broadway Grill* and *Mondragon*.  *See Zurbriggen v. Twin Hill*

20  *Acquisition Co.*, 2025 WL 1092973, at *4 n.4 (N.D. Ill. Apr. 11, 2025).

21      **1.**  ***Under Ninth Circuit CAFA precedent, the relevant complaint here is the original one.***

22  Both *Broadway Grill* and *Mondragon* definitively hold, based on the text of CAFA, that courts

23  must assess whether CAFA jurisdiction exists by evaluating the complaint that is operative at the

24  time of removal—here, the original complaint.  That is exactly the approach this Court followed in

25  ruling that federal jurisdiction is proper in this case under CAFA.

26  

27  [1] Although there are issues other than the citizenship of the parties that can affect whether remand
is proper in a CAFA case, the allegations relevant to those issues did not meaningfully change
28  between the Herndons' original and amended complaints, and the Herndons never contended in
the appeal that those other requirements of CAFA jurisdiction are not satisfied.

1       In *Broadway Grill*, the plaintiff filed a putative class action in California court against

2   companies that were citizens of California and Delaware. 856 F.3d at 1276. The proposed class

3   included "both California and non-California citizens." *Id.* The defendants removed the case to

4   federal court "because CAFA's minimal diversity requirement was satisfied." *Id.* Plaintiff then

5   amended the complaint to change the class "to include only 'California citizens,' in order to

6   eliminate minimal diversity." *Id.*

7       Interpreting CAFA's text, the Ninth Circuit held that whether minimal diversity exists

8   "must be ascertained on the basis of the pleadings at the time of removal" and not on the basis of a

9   post-removal amended complaint. 856 F.3d at 1277; *see id.* at 1279. The key text is found in

10  Section 1332(d)(7), in which CAFA provides that "[c]itizenship of the members of the proposed

11  plaintiff classes shall be determined . . . as of the date of filing of the complaint or amended

12  complaint . . . indicating the existence of Federal jurisdiction." 28 U.S.C. § 1332(d)(7). Under

13  that text, the Ninth Circuit concluded, whether there is minimal diversity "must be determined as

14  of the date of the pleading giving federal jurisdiction." *Broadway Grill*, 856 F.3d at 1278 (citation

15  omitted). And the pleading indicating federal jurisdiction is the complaint in place "at the time of

16  removal," *id.* at 1277—because a case may be removed only if it falls within federal district

17  courts' original jurisdiction, and generally must be removed within a certain period after the

18  receipt of a pleading or other document indicating removability, *see* 28 U.S.C. §§ 1441(a),

19  1446(b)(1), (b)(3).[2]

20      *Mondragon* reaches the same conclusion, based on the same CAFA text, as to which

21  complaint is relevant to determining whether a CAFA exception applies. In that case, after

22  removal of a putative class action to federal court, the plaintiff sought to remand the case under

23  CAFA's local-controversy exception, which (*inter alia*) requires that two thirds of all putative

24  class members are citizens of the state where the action was filed. 736 F.3d at 882. Relying on

25

26  _____

    [2] The Ninth Circuit also explained that this rule is "in accord with CAFA's legislative history"
    because "Congress specifically noted that, under CAFA, if minimal diversity exists at the time of

27  removal, jurisdiction could not be divested, even if the situation changed as a result of a later

28  event, 'whether beyond the plaintiff's control *or the result of his volition*.'" *Broadway Grill*, 856
    F.3d at 1278-79 (emphasis added) (quoting S. Rep. 109-14, 109th Cong. 1st Sess. 2005).

Section 1332(d)(7), the Ninth Circuit held that to show that the exception applied the plaintiff would have to "establish that greater than two-thirds of prospective class members were citizens of" the relevant state "as of the date the case became removable." *Id.* at 883 (citing 28 U.S.C. § 1332(d)(7)). To the extent that a complaint's allegations shed light on that question, then, it is the complaint in place "as of the date the case became removable," *id.*, that is relevant.

As this Court previously (and correctly) concluded, Ninth Circuit precedent is unambiguous and directly on point in this case. The complaint that was operative at the time of removal here was the original complaint, not the amended complaint—and so it is the original complaint to which the Court must look in making determinations about citizenship under CAFA.

**2. Royal Canin *is not irreconcilable with Ninth Circuit CAFA precedent.*** Far from being clearly irreconcilable with that Ninth Circuit precedent, *Royal Canin* has no effect on it at all. *Royal Canin* does not interpret or apply CAFA; rather, it involves an entirely different jurisdictional statute.

In *Royal Canin*, the plaintiff filed a lawsuit in state court alleging both state-law and federal-law claims. *See* 604 U.S. at 28. The defendant removed the case on the basis of federal-question jurisdiction. *See id.* The plaintiff then amended the complaint to eliminate any federal question, "leaving her state claims to stand on their own," and sought a remand to state court. *Id.* at 29.

To decide which version of the complaint should govern in determining whether supplemental jurisdiction exists over the remaining state claims, the Supreme Court interpreted the text of 28 U.S.C. § 1367. Section 1367 provides that a federal court has supplemental jurisdiction "over all other claims that are so related to claims" over which the court has "original jurisdiction" (including federal-question jurisdiction) "that they form part of the same case or controversy," 28 U.S.C. § 1367(a), and gives the court discretion to "'decline to exercise supplemental jurisdiction'" in certain situations, including where the "court 'has dismissed all claims over which it has original jurisdiction,'" *Royal Canin*, 604 U.S. at 31-32 (quoting 28 U.S.C. § 1367(c)).

Based on that statutory text, the Supreme Court concluded that whether supplemental jurisdiction exists must depend on the amended complaint filed after removal—and that

1  jurisdiction under Section 1367 is no longer proper "[o]nce the plaintiff has ditched all claims

2  involving federal questions," because at that stage "the leftover state claims are supplemental to

3  nothing." 604 U.S. at 34. The Court found support for that conclusion in various aspects of

4  Section 1367. The Court looked to the portion of that provision giving district courts discretion to

5  decline to exercise supplemental jurisdiction, noted that such discretion exists where a *court* has

6  dismissed all federal claims but not where a *plaintiff* jettisons all federal claims in filing an

7  amended complaint, and observed that it would be nonsensical for Congress to have allowed

8  dismissal for lack of jurisdiction in the first category but not the second category. *Id.* at 32-33.

9  The Court also explained that the supplemental-jurisdiction statute does not "distinguish[] between

10  cases removed to federal court and cases originally filed there"—and in the latter category of

11  cases, courts "look to the amended complaint." *Id.* at 32-33 (citation omitted).

12       Nothing in *Royal Canin*'s analysis of supplemental jurisdiction dictates the outcome in a

13  CAFA case, which is governed by an entirely separate statutory scheme. The Supreme Court had

14  no occasion to analyze CAFA's text, purpose, or history—and it did not do so. The Supreme

15  Court also had no occasion to specifically address whether in a CAFA case the original complaint

16  or an amended complaint governs in deciding the jurisdictional question—and again, it did not do

17  so. It is therefore impossible to conclude that Royal Canin cannot be reconciled with *Broadway

18  Grill* and *Mondragon*. Far from being irreconcilable, all of those decisions are entirely consistent

19  with each other, because they each hew to the governing statutory scheme that is relevant to the

20  facts at issue.

21       Notably, the only court to have addressed a question about the compatibility of *Royal

22  Canin* with a decision like *Broadway Grill* held that there was no "direct[] conflict[]."

23  *Zurbriggen*, 2025 WL 1092973, at *4 n.4 (citation omitted). Before *Royal Canin* issued, the

24  Seventh Circuit had joined the Ninth Circuit (and other circuits) in holding that CAFA jurisdiction

25  "is determined at the time of removal, and nothing filed after removal affects jurisdiction." *In re

26  Burlington Northern Santa Fe Ry.*, 606 F.3d 379, 380 (7th Cir. 2010). A district court in the

27  Seventh Circuit considering the existence of CAFA jurisdiction recently determined that *Royal

28  Canin* does not "overrule[] that holding." *Zubriggen*, 2025 WL 1092973, at *4 n.4. The court

1    explained that, "while *Royal Canin* held that post-removal amendment of a complaint to remove

2    all federal claims defeats subject-matter jurisdiction predicated on" the supplemental-jurisdiction

3    statute, the Supreme Court's decision does not "address[]" CAFA.  *Id.* (citing CAFA, 28 U.S.C.

4    § 1332(d), and *In re Burlington*, 606 F.3d at 380).

5          This Court should reach the same result:  Ninth Circuit precedent continues to govern

6    because it is not irreconcilable, let alone clearly so, with *Royal Canin*.  Under that Ninth Circuit

7    precedent, it is the Herndons' original complaint that must be used to determine whether there is

8    minimal diversity and whether any CAFA exception applies.  That is exactly the analysis that this

9    Court carried out in its prior jurisdictional decision.  There is no basis to displace this Court's

10   ruling that, under the original complaint, CAFA's minimal diversity requirement is satisfied and

11   no CAFA exception applies.  *See* Dkt. 45.  And because jurisdiction is proper in this Court, and

12   this Court's reasons for dismissing this action without prejudice are not at issue here, the prior

13   judgment in favor of Netflix should be reinstated.

14         **C.**     **The Herndons' arguments that *Royal Canin* governs here are unavailing**

15         In briefing in the Ninth Circuit after the GVR, the Herndons made several deeply flawed

16   arguments that *Royal Canin* commands this Court to assess CAFA jurisdiction in light of the

17   amended complaint.  This Court should reject those arguments.

18         **1. *The mere fact of a GVR does not indicate that the intervening Supreme Court***

19   ***decision governs*.**  The Herndons argued before the Ninth Circuit that the Supreme Court's GVR

20   in light of *Royal Canin* means that the Supreme Court "believes that [this] intervening authority

21   affects the judgment below."  No. 22-15260, Dkt. 142, at 8 (emphasis and underline omitted).  In

22   remanding to this Court to decide *whether* the decision in *Royal Canin* affects this Court's existing

23   jurisdictional determination, *see* No. 22-15260, Dkt. 144, the Ninth Circuit necessarily rejected the

24   proposition that the mere existence of a GVR dictates the outcome of that inquiry.  The Herndons'

25   argument fails on that ground alone.

26         In any event, the Herndons' argument badly misunderstands the nature of a GVR.

27   "Issuance of a GVR does *not* amount to a decision on the merits of a case"; rather, "it can be

28   understood as if [the] Supreme Court had flagged the case as one upon which the intervening

1  precedent could *possibly* have bearing." *In re Hodge*, 220 B.R. 386, 395 n.9 (D. Idaho 1998)

2  (emphases added); *see, e.g.*, *Stutson v. United States*, 516 U.S. 193, 197 (1996) (GVR reflects only

3  that new Supreme Court decision is "potentially relevant"); *Lawrence v. Chater*, 516 U.S. 163,

4  168 (1996). Thus, in the wake of a GVR, a lower federal court may decide that the intervening

5  Supreme Court decision calls for a different outcome than the one it initially reached—but it may

6  instead decide, as the Ninth Circuit itself has done on many occasions, that the original outcome is

7  still warranted. *See, e.g.*, *Kleve v. Hill*, 243 F.3d 1149, 1150 (9th Cir. 2001) (stating, post-GVR,

8  that "we believe that the [Supreme] Court's decision and rationale" in the intervening Supreme

9  Court decision "do not affect the analysis in this case"); *Carmona Mendoza*, 73 F.4th at 1137

10  (similar).

11      In short, this Court is by no means *required* by the GVR to reach a different outcome than

12  it originally did. If the court were required to do so, then the rule that Ninth Circuit precedent

13  remains binding unless it is clearly irreconcilable with the intervening Supreme Court decision

14  that prompted the GVR could not exist. This Court can and should conclude that *Royal Canin*

15  does not affect this case and does not require a different outcome than the one this Court

16  previously reached.

17      **2. The fact that Royal Canin *cites CAFA in passing does not mean that it decides***

18  ***anything about what CAFA dictates in a case like this one.*** During post-GVR briefing in the

19  Ninth Circuit, the Herndons cited various snippets of *Royal Canin* in an attempt to establish that

20  the decision governs here, despite the fact that *Royal Canin* is not a case about CAFA jurisdiction,

21  *see* No. 22-15260, Dkt. 142, at 2-3—but there is nothing in *Royal Canin* that supports that

22  position.

23      First, although *Royal Canin* does include one passing, parenthetical reference to CAFA,

24  that reference does not suggest that the Court decided anything about how to interpret CAFA or

25  somehow rejected the Ninth Circuit's reading of CAFA's text. *See* 604 U.S. at 34. The

26  parenthetical in question says only that CAFA "provid[es] that an 'amended complaint' in a

27  proposed class action may *create* '[f]ederal jurisdiction.'" *Id.* (emphasis added) (citing 28 U.S.C.

28  § 1332(d)(7)). That is true enough in some circumstances. For instance, a plaintiff could file a

complaint in state court that does not allege minimal diversity that would satisfy CAFA, and then later amend the complaint in state court to allege just such minimal diversity.  If after that amendment the defendant removes based on CAFA, then under Ninth Circuit precedent it is the amended complaint—the one in place at the time of removal—that would govern the jurisdictional inquiry.  *See Broadway Grill*, 856 F.3d at 1279; *Mondragon*, 736 F.3d at 883; 28 U.S.C. § 1332(d)(7) ("[c]itizenship of the members of the proposed plaintiff classes shall be determined . . . as of the date of filing of the complaint or amended complaint . . . indicating the existence of Federal jurisdiction").  But the issue here is not whether an amended complaint can *create* federal jurisdiction in a CAFA case, but rather whether such a complaint can *destroy* pre-existing federal jurisdiction.  The Ninth Circuit has definitively held that the answer to that question is no, and *Royal Canin* does not say otherwise.

In any event, the Supreme Court's passing remark about CAFA in a case that is about interpreting an entirely different statute could not possibly be enough to render *Royal Canin* irreconcilable with *Broadway Grill* and *Mondragon*, let alone clearly so.  Indeed, the Ninth Circuit has quite recently indicated as much in a different context.  *See Bonilla-Hernandez v. Garland*, 2022 WL 1467981, at *1 (9th Cir. May 10, 2022) ("the Supreme Court's 'passing comments do not' convince us that [Ninth Circuit precedent] is clearly irreconcilable with" Supreme Court precedent); *see also Royal Canin*, 604 U.S. at 42-43 ("drive-by" statement relating to jurisdiction is not entitled to any "precedential effect" (citing, *e.g.*, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006))).

Second, statements in *Royal Canin* that do not reference CAFA cannot be read as a secret signal that the decision should be read to displace Congress's commands as to CAFA jurisdiction.  *Royal Canin* canvassed various "mainly judge-made procedural rules linking jurisdiction to the amended, rather than initial, complaint," including the rule that, in cases originally filed in *federal* court, courts generally "look to the amended complaint to determine jurisdiction."  604 U.S. at 34, 36 (quoting *Rockwell Int'l v. United States*, 549 U.S. 457, 474 (2007)).  But a federal statute like CAFA trumps any such judge-made rules every time.  *See Native Village of Kivalina v.*

1   *ExxonMobil Corp.*, 696 F.3d 849, 856 (9th Cir. 2012) ("If Congress has addressed a federal issue

2   by statute, then there is no gap for federal common law to fill.").

3         Here, the Ninth Circuit held in *Broadway Grill* and *Mondragon* that CAFA is dispositive

4   on the question of which complaint is relevant in assessing CAFA jurisdiction.  There is no

5   inconsistency—much less a clear one—between *Royal Canin*'s recognition of judge-made

6   procedural rules that predicate jurisdiction on an amended complaint in certain circumstances and

7   the Ninth Circuit's clear holding that Congress provided a different (and definitive) answer in

8   CAFA cases.  Still less is there any inconsistency between Ninth Circuit CAFA precedent and a

9   few stray sentences in *Royal Canin* that seem broad when read in isolation, but in context simply

10   describe the rule that applies in a case involving supplemental jurisdiction over state-law claims—

11   which this CAFA case does not.  *See* 604 U.S. at 30, 39 (focusing on scenario in which "a

12   plaintiff, after removal, cuts out all her federal-law claims"); *id.* at 36-38 nn.5-8 (acknowledging

13   that different rules may apply in diversity cases than in federal-question cases like *Royal Canin*).

14   **II.**    **Even if the Court were to conclude that *Royal Canin* governs and requires the Court
     to focus on the amended complaint, there is no basis for remanding this case to state
15         court**

16         For all of the reasons discussed above, this Court need not examine the amended

17   complaint, as nothing in *Royal Canin* affects the Court's ruling that it has jurisdiction over this

18   case under CAFA in light of the original complaint and that the Herndons lose on the merits—

19   which means that this Court should once again enter judgment in Netflix's favor.  But even if the

20   Court were to conclude that *Royal Canin* does somehow require the Court to look to the

21   Herndons' amended complaint rather than their original complaint to assess CAFA jurisdiction,

22   the result would be exactly the same.  Under the allegations in the amended complaint, CAFA

23   jurisdiction exists, there is no basis for remanding this case to state court, and this Court's

24   judgment on the merits should be reinstated.

25       **A.  *Minimal diversity still exists*.**  The very same reasons that this Court gave for finding

26   minimal diversity in light of the allegations of the original complaint are fully applicable to the

27   amended complaint as well.  Netflix has plausibly alleged minimal diversity, which is all that is

28   required here.  *See Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) (discussing

1  facial attack on a defendant's allegations of minimal diversity, which is the only attack the

2  Herndons have ever mounted).[3]

3        First, just like the allegations in the original complaint, the amended complaint's "own

4  allegations identify harms in Florida and Canada for a sprawling global class."  Dkt. 45, at 8

5  (discussing original complaint).  The amended complaint proposes two classes:  the "California

6  Negligence and Failure-to-Warn Class" and the "Global Wrongful-Death Class."  Dkt. 22, ¶¶ 76a-

7  b; *see* p. 3, *supra*.  The global class proposed in the amended complaint is obviously extremely

8  broad.  And the amended complaint specifically alleges that Netflix's show resulted in a spike in

9  suicide rates in "Canada"—which would mean that relevant putative class members (the

10 beneficiaries of the decedent minor children) are located in Canada as well.  Dkt. 22, ¶¶ 47, 47, 49,

11 52-53.  The amended complaint also alleges in some detail that specific (although not identified)

12 minors in Florida and Oklahoma engaged in suicide-related behavior, which also indicates the

13 existence of putative class members in the global wrongful-death class who are located outside of

14 California.  *See id.*

15       Second, the Herndons have effectively conceded the existence of minimal diversity with

16 respect to their amended complaint, just as they did with respect to their original complaint.  In

17 ruling that in light of the original complaint that there is minimal diversity, this Court emphasized

18 that the Herndons did not "dispute that they are seeking a global class and 'that minimal diversity

19 very likely exists.'"  Dkt. 45, at 8 (citing Dkt. 26, at 11 n.4).  But those very statements by the

20 Herndons apply equally to the amended complaint.  Although the statements are contained in a

21 filing that at points (correctly) notes that the original complaint was the proper basis for analyzing

22 jurisdiction, the statements were made *after* the amended complaint was filed and in the present

23 tense, so as to refer to the *case* as it stood at the time of the filing.  *See* Dkt. 26, at 11 n.4, 15

24 (Herndons stating that "[p]laintiffs do not dispute . . . that minimal diversity very likely exists" and

25 that plaintiffs "have a good faith belief that there are class members outside of California").  And,

26

27 ───────────────
[3] The allegations about Netflix's own citizenship set forth in the Notice of Removal remain in the
28 record—and, in addition, the amended complaint alleges that Netflix is a citizen of California.  *See*
   Dkt. 3-2 (declaration of Blanca Young); Dkt. 22, ¶ 11.

1    in any event, the allegations of the original and the amended complaint that relate to minimal

2    diversity are essentially identical, such that the Herndons' original concession necessarily carries

3    over to the amended complaint as well.  That concession is the end of the story:  CAFA's minimal

4    jurisdiction requirement is satisfied.  *See Salazar v. Avis Budget Group*, 2007 WL 9776748, at *7

5    (S.D. Cal. May 8, 2007) ("Because plaintiffs concede the class has at least one hundred potential

6    members and at least one class member is a citizen of a different state from any defendant, this

7    Court has jurisdiction under CAFA.").[4]

8          Finally, the fact that the Herndons' amended complaint proposes a California-only class

9    (the "California Negligence and Failure-to-Warn Class") as well as a global class does not change

10   the analysis.  CAFA provides that there is minimal diversity when "any member of a *class* of

11   plaintiffs is a citizen of a State different from any defendant"—and, critically, defines "class" to

12   mean "*all* of the class members in a class action."  28 U.S.C. § 1332(d)(1)(A), (d)(2)(A)

13   (emphases added).  That means that minimal diversity exists when *any* member, out of *all* of the

14   class members in the action, is diverse from any defendant, even if the relevant complaint

15   proposes multiple classes.  *See, e.g.*, *Carzell v. Life of the South Ins. Co.*, 2016 WL 1688774, at *3

16   (N.D. Ga. Apr. 26, 2016) (asking whether there was minimal diversity "between *any member of*

17   *the Classes*" and "Defendants" (emphasis added)).  And here, the amended complaint alleges a

18   "Global" class that includes at least one member that is diverse from Netflix.

19          **B.   *CAFA's exceptions still do not apply.***  In the previously filed motion to remand at

20   issue here, the Herndons argued that two CAFA exceptions apply:  (1) the mandatory home-state

21   exception, under which a court must decline to exercise jurisdiction where "two-thirds or more" of

22   all putative class members and the defendant "are citizens of the State" where the "action was

23   originally filed"; and (2) the discretionary home-state exception, under which a court may (but

24   need not) decline to exercise jurisdiction when "greater than one-third but less than two-thirds" of

25   _____

26   [4] The Herndons also have forfeited their ability to make any new "factual attack" on Netflix's
     allegations of minimal diversity, which entails "introducing evidence outside the pleadings."
27   *Salter*, 974 F.3d at 964.  Any such attack would be inconsistent with their existing concession.  In
     addition, the only question now before this Court is whether the Herndons' previously filed
28   motion to remand (Dkt. 26), which raised no factual attack, should have been evaluated in light of
     the original complaint or the amended complaint.

1  all putative class members and the defendant "are citizens of the State" where filing originally

2  took place. 28 U.S.C. § 1332(d)(3), (d)(4)(B); *see* Dkt. 45, at 10. This Court correctly rejected

3  those arguments—and, once again, even if the Court were to look to the amended complaint rather

4  than the original complaint, the result would be exactly the same.

5      As an initial matter, there is no basis to reexamine the CAFA exceptions in light of the

6  amended complaint. In all of the many appellate proceedings that have occurred since this Court

7  entered final judgment in 2022, the Herndons focused only on the threshold question of minimal

8  diversity. They *never* argued that this Court erred as to the CAFA exceptions or that those

9  exceptions should be revisited in light of *Royal Canin*, and it is too late to do so now. *See United*

10  *States v. Vanorden*, 414 F.3d 1321, 1323 (11th Cir. 2005).

11      In any event, there is no reason to displace this Court's prior ruling on the exceptions. As

12  this Court explained in that ruling, the party asserting a CAFA exception has the burden of

13  proving its applicability, and there "must ordinarily be at least some facts in evidence" for that

14  burden to be satisfied. *Mondragon*, 736 F.3d at 884; *see Serrano v. 180 Connect*, 478 F.3d 1018,

15  1024 (9th Cir. 2007); Dkt. 45, at 10. The Court concluded, as to the original complaint, that the

16  Herndons had not met their burden because they "concede[d] that they do not know the scope of

17  their national class, let alone the composition of its members across states." Dkt. 45, at 10.

18      The Herndons have made the same concession as to their amended complaint. They stated

19  that they do not know the scope of their proposed global class, the composition of its members

20  across the world, or what percentage of all of the members of both proposed classes might be

21  citizens of California. Dkt. 26, at 21 (referring to "Global" class in amended complaint and stating

22  that "there are no facts to establish how many wrongful death beneficiary class members there are

23  or where they are located"); *see id.* at 19 (apparently referring to amended complaint and

24  explaining that "Plaintiffs have yet to establish that there exists greater than one-third but less than

25  two-thirds of all class members are citizens of California"). In addition, they introduced no actual

26  evidence as to what percentage of putative class members might be citizens of California, and they

27  cannot extend these proceedings by trying to introduce such evidence now, *see Vanorden*, 414

28

F.3d at 1323; p. 16 n.4, *supra*—even assuming that such proof existed.[5]  Thus, for precisely the same reasons this Court previously gave, the Herndons have not met their burden of showing that either CAFA exception applies.[6]

#### CONCLUSION

This Court should decide that *Royal Canin* has no bearing on this case and should reinstate its final judgment in favor of Netflix.


DATED:  August 1, 2025                MUNGER, TOLLES & OLSON LLP


By:     */s/ Blanca F. Young*
       _____
       BLANCA F. YOUNG
       Attorneys for NETFLIX, INC.

---

[5] The amended complaint does *allege* that "it is likely that more than two thirds of the proposed class members of all such proposed classes are California citizens" or, at least, that "one third of the members" are.  Dkt. 22, ¶ 77.  But that allegation is not evidence, and it is not enough to carry the Herndons' burden.  *See Mondragon*, 736 F.3d at 884; *Serrano*, 478 F.3d at 1024.

[6] If this Court were to conclude that the discretionary exception applies (which it does not), the Court should exercise its discretion to decline to remand.  This Court has already used substantial resources to adjudicate the merits of this case—and it did so in *2022*.  It is time for this matter to come to an end.