1  BLANCA F. YOUNG (State Bar No. 217533)
   blanca.young@mto.com
2  J. MAX ROSEN (State Bar No. 310789)
   max.rosen@mto.com
3  MUNGER, TOLLES & OLSON LLP
   560 Mission Street, Twenty-Seventh Floor
4  San Francisco, CA 94105-2907
   Telephone: (415) 512-4000
5  Facsimile: (415) 512-4077

6  ELAINE J. GOLDENBERG (*pro hac vice*)
   elaine.goldenberg@mto.com
7  MUNGER, TOLLES & OLSON LLP
   601 Massachusetts Ave. NW, Suite 500 E
8  Washington, DC 20001
   Telephone:  (202) 220-1100
9
   Attorneys for NETFLIX, INC.
10

11                    UNITED STATES DISTRICT COURT

12          NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

13

14  THE ESTATE OF B.H., JOHN HERNDON,          Case No. 4:21-cv-06561-YGR
    J.H., a minor, T.H., a minor, on behalf of
15  themselves and all other similarly situated,   **DEFENDANT'S RESPONSE BRIEF
                                                   REGARDING *ROYAL CANIN***
16              Plaintiffs,

17        vs.

18  NETFLIX, INC.,                              Date: October 21, 2025
                                                Time: 2:00 p.m.
19              Defendant.                       Ctrm: 1
                                                Judge: Yvonne Gonzalez Rogers
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..........................................................................................................................1

ARGUMENT ...............................................................................................................................2

    I.    There Is No Clear Irreconcilability Between *Royal Canin* And Ninth Circuit Precedent That Requires Assessment Of CAFA Jurisdiction Based On The Complaint As Of Removal ..........................................................................................2

        A.    The Herndons Inaccurately Portray The Ninth Circuit's Precedent..............2

        B.    Nothing In *Royal Canin* Is Irreconcilable With The Ninth Circuit's CAFA Decisions .................................................................................................4

        C.    A Vacated, Superseded Ninth Circuit Order Is Not "Persuasive Authority" That *Royal Canin* Controls Here...............................................10

    II.    Even If The Court Looks To The Amended Complaint Under *Royal Canin*, The Herndons Fail To Identify Any Basis For A Remand......................................11

CONCLUSION ...........................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Abraham Watkins Nichols Agosto Azia & Stogner v. Festeryga,*
    138 F.4th 252 (5th Cir. 2025) .................................................................................10

*Abrego Abrego v. Dow Chem.,*
    443 F.3d 676 (9th Cir. 2006) ..................................................................................15

*Black v. Mantel & Assocs.,*
    2025 U.S. App. LEXIS 19017 (4th Cir. July 30, 2025) ..........................................10

*Boschetto v. Hansing,*
    539 F.3d 1011 (9th Cir. 2008) ................................................................................15

*Broadway Grill v. Visa,*
    856 F.3d 1274 (9th Cir. 2017) ..................................................................... 1, passim

*Brown v. Metro by T-Mobile,*
    2025 U.S. Dist. LEXIS 24774 (C.D. Cal. Feb. 10, 2025) .........................................6

*California v. U.S. Dep't of Homeland Security,*
    476 F. Supp. 3d 994 (N.D. Cal. 2020) ......................................................................8

*Carmona Mendoza v. Domino's Pizza,*
    73 F.4th 1135 (9th Cir. 2023) ...................................................................................1

*Close v. Sotheby's,*
    894 F.3d 1061 (9th Cir. 2018) ..................................................................................1

*Collins v. Miller,*
    2025 U.S. Dist. LEXIS 13610 (D. Ariz. Jan. 24, 2025) ...........................................6

*Doyle v. OneWest Bank,*
    764 F.3d 1097 (9th Cir. 2014) ..................................................................................4

*Faraji v. Fox,*
    2025 U.S. Dist. LEXIS 53248 (C.D. Cal. Feb. 10, 2025) .........................................6

*Forest Creek Townhomes v. Carroll Property Mgmt.,*
    695 F. App'x 908 (6th Cir. 2017) .............................................................................8

*Gallardo v. Colvin,*
    2014 WL 824227 (E.D. Cal. Mar. 3, 2014) ............................................................15

*Genosa v. Glob. K9 Prot. Grp.,*
    2025 U.S. Dist. LEXIS 44263 (S.D. Cal. Mar. 10, 2025) .........................................6

1

## TABLE OF AUTHORITIES
### (Continued)

2

**Page(s)**

3

*Khlafa v. Or. Health*,
  2025 U.S. Dist. LEXIS 82001 (D. Or. Apr. 30, 2025)................................................6

4

5

*Lui v. DeJoy*,
  129 F.4th 770 (9th Cir. 2025)....................................................................11

6

*Melendez v. J&B Investments*,
  2018 WL 3769827 (C.D. Cal. Aug. 7, 2018) ..............................................13

7

8

*Mondragon v. Capital One Auto Finance*,
  736 F.3d 880 (9th Cir. 2013)............................................................ 3, passim

9

*Native Village of Kivalina v. ExxonMobil*,
  696 F.3d 849 (9th Cir. 2012)......................................................................5

10

11

*In re Realty Trust*,
  1994 WL 202439 (9th Cir. May 24, 1994) ................................................11

12

13

*Roberts v. Eclipz.Io*,
  2025 U.S. Dist. LEXIS 57985 (N.D. Cal. Mar. 27, 2025) ..........................6

14

15

*Royal Canin U.S.A. v. Wullschleger*,
  604 U.S. 22 (2025) ................................................................... 1, passim

16

*Sandoval v. Don Roberto Jewelers*,
  2025 U.S. Dist. LEXIS 68081 (C.D. Cal. Apr. 9, 2025)..............................6

17

18

*Sandoval v. Little Caesar Enters.*,
  2025 U.S. Dist. LEXIS 72629 (C.D. Cal. Apr. 16, 2025)............................6

19

20

*Serrano v. 180 Connect*,
  478 F.3d 1018 (9th Cir. 2007)....................................................................13

21

*United States v. James*,
  1993 WL 409148 (9th Cir. Oct. 12, 1993) ................................................11

22

23

*United States v. Vanorden*,
  414 F.3d 1321 (11th Cir. 2005)..................................................................14

24

*Zurbriggen v. Twin Hill Acquisition*,
  2025 WL 1092973 (N.D. Ill. Apr. 11, 2025) ............................................10

25

26

27

28

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

**FEDERAL STATUTES**

28 U.S.C. § 1332(d)(3)................................................................................................13

28 U.S.C. § 1332(d)(4)(B) .........................................................................................13

28 U.S.C. § 1332(d)(7)..........................................................................................3, 8, 9

28 U.S.C. § 1367....................................................................................................1, 4, 5

**COURT RULES**

Sup. Ct. R. 14.1(a)........................................................................................................9

**LEGISLATIVE MATERIALS**

S. Rep. No. 109-14 (2005) ......................................................................................8, 15

**OTHER AUTHORITIES**

1 Manual of Federal Practice § 1.59............................................................................7

Moore's Federal Practice—Civil Litigation Update (June 2025) ................................7

Wagstaffe Prac. Guide: Fed. Civil Proc. Before Trial § 6-V .....................................7

Jim Wagstaffe, *U.S. Supreme Court Clarifies "Snapshot" Rule in Examining Removal Jurisdiction* (2025) ........................................................................................6

# INTRODUCTION

The Herndons acknowledge that the question before this Court is whether the Supreme Court's decision in *Royal Canin U.S.A. v. Wullschleger*, 604 U.S. 22 (2025), is clearly irreconcilable with Ninth Circuit precedent on the Class Action Fairness Act ("CAFA"). Herndon.Br.19; *see, e.g.*, *Carmona Mendoza v. Domino's Pizza*, 73 F.4th 1135, 1137 (9th Cir. 2023). But the Herndons' arguments do not come close to establishing that the "high standard" of clear irreconcilability is met here, *Close v. Sotheby's*, 894 F.3d 1061, 1073 (9th Cir. 2018)—and it is not.

As Netflix's principal brief explains, Netflix.Br.6-14, the Ninth Circuit's precedent interprets the text of CAFA and holds that courts must examine the complaint that exists at the time of removal to decide whether CAFA jurisdiction exists. By contrast, *Royal Canin* interprets a different statute—28 U.S.C. § 1367, governing supplemental jurisdiction—and holds that courts assessing jurisdiction under that statute must examine any amended complaint that was filed after removal. The Ninth Circuit's precedent and *Royal Canin* therefore simply announce different rules based on the different language of different statutes, without any conflict. Accordingly, the Ninth Circuit precedent that this Court previously applied in finding jurisdiction proper here continues to govern.

In an attempt to deal with that fatal flaw in their argument, the Herndons try to no avail to broaden both the Ninth Circuit's precedent and *Royal Canin* well beyond what those decisions actually say. But the Herndons misread all of those decisions. Contrary to their argument, *Broadway Grill v. Visa*, 856 F.3d 1274 (9th Cir. 2017), does not announce some universal jurisdictional rule; rather, it narrowly concludes that courts must consider the complaint at the time of removal *when assessing CAFA jurisdiction*. And *Royal Canin* does not purport to displace a statute that the Supreme Court did not analyze and that was not before that Court. Instead, as courts and commentators all agree, *Royal Canin* is straightforwardly about a specific question not presented in this case: whether courts must look to an original complaint or an amended complaint in assessing supplemental jurisdiction over leftover state claims when the amended complaint drops all federal claims.

DEFENDANT'S RESPONSE BRIEF REGARDING *ROYAL CANIN*

The Herndons also inexplicably argue that a post-GVR Ninth Circuit order in this case is already "persuasive authority" that *Royal Canin* controls here.  Herndon.Br.23.  But the Ninth Circuit vacated that order and replaced it with one that expressly recognizes that *Royal Canin* may well *not* control here.  That is exactly why the Ninth Circuit remanded to this Court with specific instructions to make that determination itself in the first instance.

Because the Herndons fail to show any conflict, let alone clear irreconcilability, between the Ninth Circuit's CAFA precedent and *Royal Canin*, the Supreme Court's decision has no effect on this Court's existing ruling on CAFA jurisdiction, which faithfully applied that Ninth Circuit precedent.  This Court should therefore reinstate its prior final judgment in Netflix's favor.

Finally, even if this Court were to conclude that it must look to the Herndons' amended complaint in light of *Royal Canin*, the Court should *still* reinstate its prior final judgment.  The Herndons identify no reason why the assessment of CAFA jurisdiction should turn out any differently under their amended complaint, which specifically alleges that putative class members are present in Canada.  And their single-sentence request for jurisdictional discovery provides no reason to depart from this Court's previous rejection of such discovery, especially in light of the Court's broad discretion over the matter and the extraordinary length of time that this case has now been pending.

## ARGUMENT

### I.     There Is No Clear Irreconcilability Between *Royal Canin* And Ninth Circuit Precedent That Requires Assessment Of CAFA Jurisdiction Based On The Complaint As Of Removal

#### A.     The Herndons Inaccurately Portray The Ninth Circuit's Precedent

Ninth Circuit precedent requires courts to look to the complaint in place at the time of removal for purposes of assessing minimal diversity under CAFA and whether a CAFA exception applies.  *See* Netflix.Br.7-9.  The Herndons do not—and could not—contest that point.  But they do inaccurately portray the scope of the Ninth Circuit's precedent, seeking to characterize that precedent as containing broader reasoning than it does in the hopes of manufacturing some conflict with *Royal Canin*.

DEFENDANT'S RESPONSE BRIEF REGARDING *ROYAL CANIN*

1      In *Broadway Grill*, the Ninth Circuit held that whether CAFA's minimal diversity

2 requirement is satisfied "must be ascertained on the basis of the pleadings at the time of removal."

3 856 F.3d at 1277.  That holding was based on CAFA's plain text, which provides:  "Citizenship of

4 the members of the proposed plaintiff classes shall be determined . . . *as of the date of filing of the*

5 *complaint or amended complaint . . . indicating the existence of Federal jurisdiction*."  28 U.S.C.

6 § 1332(d)(7) (emphasis added).  The Ninth Circuit explained that the pleading "indicating the

7 existence of Federal jurisdiction" is the complaint in place "at the time of removal."  *Broadway*

8 *Grill*, 856 F.3d at 1279 (citation omitted); *see* Netflix.Br.8.  The court of appeals therefore

9 required that CAFA jurisdiction be assessed based on the original complaint in that case, which

10 proposed a class of California citizens and non-California citizens—not the post-removal amended

11 complaint, which proposed a class of only California citizens.  856 F.3d at 1279.

12      The Herndons attempt to elide the Ninth Circuit's reliance on CAFA's text, arguing that

13 *Broadway Grill* actually relied on a broadly applicable rule "that you examine the pleadings at the

14 time of removal" and asserting that such a sweeping rule is "contrary to" *Royal Canin*.

15 Herndon.Br.21.  But the portions of *Broadway Grill* cited by the Herndons are plainly about

16 CAFA itself, not about other jurisdictional contexts.  *See* 856 F.3d at 1277-79.  And *Broadway*

17 *Grill* specifically refers to other circuits' agreement that *in CAFA cases* the operative complaint at

18 the time of removal is used to determine jurisdiction.  *See id*. at 1277.  *Broadway Grill* therefore

19 sets forth a rule about how Congress's special jurisdiction-related commands work in one

20 particular context, not a rule about jurisdiction more generally.[1]

21      Notably, the Herndons do not even attempt to address *Mondragon v. Capital One Auto*

22 *Finance*, 736 F.3d 880 (9th Cir. 2013), in which the Ninth Circuit held that CAFA requires

23 looking to the complaint in place "as of the date the case became removable" for purposes of

24

25 ─────────────────────

[1] The Herndons also argue that "it's unclear *Broadway Grill* has any applicability here" given that
this case purportedly has different facts.  Herndon.Br.20.  But this Court already ruled that

26 *Broadway Grill* applies to the facts of this case, Dkt. 45, at 3-5, and nothing about the Supreme
Court's GVR or the Ninth Circuit's remand affects that ruling in any way.  Specifically, although

27 the Herndons try to distinguish *Broadway Grill* by contending that "there was no class definition
in the initial complaint" here, Herndon.Br.20 (emphasis omitted), this Court previously ruled

28 exactly the opposite, Dkt. 45, at 6-7.

determining whether a CAFA exception applies. *Id.* at 883. That decision, too, is entirely CAFA-specific. *See id.*; *Doyle v. OneWest Bank*, 764 F.3d 1097, 1098 (9th Cir. 2014).

## B. Nothing In *Royal Canin* Is Irreconcilable With The Ninth Circuit's CAFA Decisions

Having misread the relevant Ninth Circuit precedent in an effort to broaden it beyond the CAFA context, the Herndons next misread *Royal Canin* as standing for various propositions that it simply does not. Properly understood, *Royal Canin* does not decide what CAFA requires, and it therefore does not conflict, let alone irreconcilably, with Ninth Circuit CAFA case law.

**1. Royal Canin *does not establish an across-the-board rule that jurisdiction hinges on a post-removal amended complaint.*** The Herndons contend that *Royal Canin* announces a general rule that applies in every case, no matter what the context: a federal court's jurisdiction depends on the contents of an amended complaint filed after removal. *E.g.*, Herndon.Br.13. But there is no basis for the Herndons' expansive understanding of *Royal Canin* in that decision, its history, or any subsequent authority.

The Herndons' primary theory is that *Royal Canin* involved two separate and distinct questions: first, "which complaint should be considered to decide jurisdiction" as a general matter in every case; and second, whether there was supplemental jurisdiction over the *Royal Canin* plaintiff's remaining state claims given that all federal claims had been dropped in the amended complaint. Herndon.Br.11-12; *see* Herndon.Br.16. But that theory is dead wrong. *Royal Canin* did not resolve some general "which-complaint" question in the abstract and then turn to the narrower matter of supplemental jurisdiction. Instead, *Royal Canin* considered which complaint courts must look to *in the specific and concrete context of determining whether there is supplemental jurisdiction over leftover state claims*.

That *Royal Canin* is specifically about supplemental jurisdiction is clear from the fact that the decision's analysis of which complaint to examine turns on a close reading of 28 U.S.C. § 1367, the supplemental-jurisdiction statute. *See* 604 U.S. at 31-34; Netflix.Br.9-10. The Supreme Court concluded that Section 1367 "contemplates that when an amended complaint is filed, the jurisdictional basis for the suit is reviewed anew." 604 U.S. at 34.

1       Nothing about that conclusion conflicts with the Ninth Circuit's precedent requiring courts

2   in CAFA cases to look to the complaint that is operative at removal.  And the Supreme Court

3   plainly could not have announced a general rule that somehow trumps CAFA or restricts

4   Congress's ability to set different requirements in different jurisdictional contexts.  *See* 604 U.S. at

5   34 (comparing the Court's analysis of "how amended pleadings can affect jurisdiction" under the

6   supplemental-jurisdiction statute to the same analysis under *other* "federal statutes").  Congress

7   controls the federal courts' jurisdiction, and the Supreme Court is bound to apply the statutes that

8   Congress enacts.

9       The Herndons quote various parts of *Royal Canin* to try to broaden that decision's reach—

10  but all of those quotes are taken out of context.  *See* Herndon.Br.5-6, 13.  For instance, the

11  Herndons repeatedly quote a passage of *Royal Canin* that discusses particular "*judge-made*

12  *procedural rules* linking jurisdiction to the amended, rather than initial, complaint."  604 U.S. at

13  34 (emphasis added); *see, e.g.*, Herndon.Br.5 (quoting *Royal Canin*: "[i]f a plaintiff amends her

14  complaint, the new pleading 'supersedes' the old one"); Herndon.Br.14.  But a statute—like

15  CAFA—displaces any such judge-made, common-law rule.  *See Native Village of Kivalina v.*

16  *ExxonMobil*, 696 F.3d 849, 856 (9th Cir. 2012); Netflix.Br.13-14.  There is no conflict between

17  the Ninth Circuit's determination that Congress chose an original-complaint rule for CAFA cases

18  and *Royal Canin*'s recognition that courts have relied on a different common-law rule in other

19  cases.

20      The Herndons also pluck out of *Royal Canin* some expansive-sounding statements that are

21  irrelevant to assessing jurisdiction under CAFA, which was not at issue in that decision.  On the

22  very first page of their brief, for example, the Herndons emphasize the following quote from *Royal*

23  *Canin*:  "When a plaintiff amends her complaint following her suit's removal, a federal court's

24  jurisdiction depends on what the new complaint says."  Herndon.Br.5 (citing 604 U.S. at 30)

25  (emphasis omitted).  What the Herndons omit is that *Royal Canin* goes on to explain that this

26  "conclusion" stems from "the text of § 1367."  604 U.S. at 30.  Thus, the rule that jurisdiction

27  "depends on what the new complaint says" is a rule for the purposes of determining supplemental

28  jurisdiction under that specific provision.

In addition, the Herndons attempt to find support for their expansive reading of *Royal Canin* in that case's procedural history, pointing in particular to the fact that the petition for a writ of certiorari raised two questions.  Herndon.Br.12.  But neither of those questions has relevance here, as they relate to "federal-question subject-matter jurisdiction" and "supplemental jurisdiction" respectively, Pet. at i,  *Royal Canin*, No. 23-677, and CAFA is a special form of diversity jurisdiction.  In any event, as the petitioners in *Royal Canin* clarified in their merits briefing, "[t]he two questions presented *boil down to one inquiry:*  May a plaintiff in a case removed to federal court based on a federal question strip that court of jurisdiction by amending the complaint to eliminate the federal question?"  Br. for Petitioners at 16, *Royal Canin*, No. 23-677 (emphasis added).  In other words, in *Royal Canin* the Supreme Court considered only whether supplemental jurisdiction over leftover state claims turns on a post-removal amended complaint—a question that this case does not present.

Finally, the Herndons cite various authorities in an effort to bolster their theory that in *Royal Canin* the Supreme Court issued a broad ruling that displaces the Ninth Circuit's precedent, but none of those authorities support their position.  To the contrary, the authorities confirm that *Royal Canin*'s holding is about supplemental jurisdiction and therefore is perfectly reconcilable with the Ninth Circuit's CAFA precedent.  The district-court decisions that the Herndons cite, Herndon.Br.17-18, rely on *Royal Canin* for what it says about supplemental jurisdiction, and none of those decisions addresses CAFA.[2]  Similarly, the Herndons cite an article that explains that *Royal Canin* addresses supplemental jurisdiction in cases where "the plaintiff amends the complaint to delete all the federal-law claims, leaving nothing but state-law claims behind."  Jim Wagstaffe, *U.S. Supreme Court Clarifies "Snapshot" Rule in Examining Removal Jurisdiction*

---

[2] *See Roberts v. Eclipz.Io*, 2025 U.S. Dist. LEXIS 57985, at *2 (N.D. Cal. Mar. 27, 2025); *Khlafa v. Or. Health*, 2025 U.S. Dist. LEXIS 82001, at *3-4 (D. Or. Apr. 30, 2025); *Sandoval v. Little Caesar Enters.*, 2025 U.S. Dist. LEXIS 72629, at *5 (C.D. Cal. Apr. 16, 2025); *Sandoval v. Don Roberto Jewelers*, 2025 U.S. Dist. LEXIS 68081, at *4-5 (C.D. Cal. Apr. 9, 2025); *Brown v. Metro by T-Mobile*, 2025 U.S. Dist. LEXIS 24774, at *8-9 (C.D. Cal. Feb. 10, 2025); *Faraji v. Fox*, 2025 U.S. Dist. LEXIS 53248, at *3-4 (C.D. Cal. Feb. 10, 2025); *Collins v. Miller*, 2025 U.S. Dist. LEXIS 13610, at *3 (D. Ariz. Jan. 24, 2025); *Genosa v. Glob. K9 Prot. Grp.*, 2025 U.S. Dist. LEXIS 44263, at *5 n.1 (S.D. Cal. Mar. 10, 2025).

1   (2025), *cited in* Herndon.Br.18.  The Herndons' cited treatises, Herndon.Br.18-19, likewise

2   describe *Royal Canin* as a decision about supplemental jurisdiction.  *See* Moore's Federal

3   Practice—Civil Litigation Update (June 2025) (*Royal Canin* "held that the district court loses its

4   supplemental jurisdiction over related state-law claims when a post-removal amended complaint

5   drops the federal claims that enabled removal."); 1 Manual of Federal Practice § 1.59 (same);

6   Wagstaffe Prac. Guide: Fed. Civil Proc. Before Trial § 6-V (same).

7       Thus, all except the Herndons agree:  *Royal Canin* held only that a post-removal amended

8   complaint is the proper basis for determining whether supplemental jurisdiction over state-law

9   claims exists.  That holding is fully consistent with the Ninth Circuit's holdings in *Broadway Grill*

10  and *Mondragon* regarding CAFA jurisdiction.

11      **2.  Royal Canin's *dicta regarding ordinary diversity jurisdiction is not irreconcilable**

12  **with the Ninth Circuit's precedent*.**  The Herndons also rely on dicta in *Royal Canin* about

13  ordinary diversity jurisdiction to argue that the decision is clearly irreconcilable with the Ninth

14  Circuit's CAFA precedent.  But no conflict exists, because CAFA jurisdiction is, by statute,

15  distinct from ordinary diversity jurisdiction.

16      In *Royal Canin*, the Court described two different sets of common-law rules that operate in

17  ordinary diversity jurisdiction cases.  First, the "so-called time-of-filing rule" "evaluates a party's

18  citizenship . . . at the time a suit is brought, and never again later."  604 U.S. at 36 n.5.  In other

19  words, the actual "facts on the ground" regarding citizenship—"*e.g.*, whether the defendant is in

20  fact from New York"—are assessed at the time the complaint is filed.  *Id.*  Second, the citizenship

21  of the "parties that the plaintiff includes" in an action are assessed based on what is contained in

22  any "amended pleading."  *Id.* at 36-37.  For example, the "addition of a non-diverse party in" an

23  amended complaint "typically destroys diversity jurisdiction, requiring the case's dismissal."  *Id.*

24  at 37; *see id.* at 43 (noting that the rule that courts "look to the amended complaint to determine

25  jurisdiction" "operates in federal-question cases and diversity cases" (citation omitted)).

26      The Herndons argue that those rules conflict with *Broadway Grill*.  Herndon.Br.20-21.

27  But again, *Broadway Grill* interprets CAFA's *statutory text* and reads that text to require courts to

28  evaluate the composition of the proposed class based on the complaint in place at the time of

DEFENDANT'S RESPONSE BRIEF REGARDING *ROYAL CANIN*

removal.  And Congress is fully entitled to alter common-law rules governing ordinary diversity jurisdiction in any way that it wishes.  *See* p. 5, *supra*; *see also, e.g.*, *Forest Creek Townhomes v. Carroll Property Mgmt.*, 695 F. App'x 908, 913 (6th Cir. 2017) ("[R]emoval based on CAFA differs from removal based on diversity jurisdiction in important ways.").  Indeed, the common-law rules on ordinary diversity jurisdiction that *Royal Canin* describes predated the enactment of CAFA, and Congress intentionally legislated to *change* them with respect to a category of class actions, like this one, that Congress wanted to keep in federal court.  *See* S. Rep. No. 109-14, at 4, 6 (2005) (CAFA legislative history explaining that pre-CAFA "diversity and removal standards as applied in interstate class actions have facilitated a parade of abuses" because they "enable[d] lawyers to 'game' the procedural rules and keep nationwide or multi-state class actions in state courts" with "reputations for readily certifying classes and approving settlements without regard to class member interests").

There is thus no conflict here.  Courts in the Ninth Circuit can and do apply the common-law rules described in *Royal Canin* in ordinary diversity cases.  *See* Herndon.Br.17-18 (citing diversity cases relying on *Royal Canin*, none of which involves CAFA).  But courts must apply a different rule in CAFA cases:  the special rule that the Ninth Circuit has ruled that Congress enacted in the class-action context.

Ultimately, the Herndons fall back to arguing that *Broadway Grill* was wrongly decided, insisting that the Ninth Circuit misread both the key language of CAFA, 28 U.S.C. § 1332(d)(7), and CAFA's legislative history.  Herndon.Br.22.  That argument is wrong—but more importantly, it is irrelevant here.  As the Herndons concede, the Ninth Circuit decided in *Broadway Grill* that courts must look to the composition of the class pleaded in the operative complaint as of removal. Herndon.Br.19.  And whether *Broadway Grill* was correct to make that decision is not for this Court to determine.  *See, e.g.*, *California v. U.S. Dep't of Homeland Security*, 476 F. Supp. 3d 994, 1011-12 (N.D. Cal. 2020) ("[p]ublished decisions" of the Ninth Circuit "become law of the circuit, which is binding authority" (citation omitted)).

   **3.  Royal Canin *is not a CAFA case, and its passing, parenthetical reference to CAFA is not irreconcilable with Ninth Circuit precedent*.**  The Herndons also make several attempts to link *Royal Canin* to CAFA in some way that is relevant to this case.  Each of those attempts fails.

   First, the Herndons assert in passing that removal in *Royal Canin* "was predicated upon the diversity provisions of [CAFA] as well as federal-question assertions."  Herndon.Br.10 (citation modified).  But that assertion is entirely irrelevant to the question of what *the Supreme Court decided* in *Royal Canin*, which is the only question before this Court.  Although the petitioners in *Royal Canin* did initially remove the case based on assertions of CAFA and federal-question jurisdiction, the CAFA issue subsequently dropped out of the case.  The Supreme Court decides only particular legal questions presented, and the questions on which the Supreme Court granted review pertained *only* to federal-question and supplemental jurisdiction.  *See* Pet.  at i, *Royal Canin*, No. 23-677; Sup. Ct. R. 14.1(a) ("Only the questions set out in the petition, or fairly included therein, will be considered by the Court.").

   Second, the Herndons mischaracterize *Royal Canin*'s single parenthetical reference to CAFA, incorrectly asserting that the reference indicates that "CAFA . . . make[s] clear that the amended complaint is the one to look at."  Herndon.Br.13 (emphasis omitted).  As Netflix's principal brief explains, that reference states only that CAFA "similarly provid[es] that an 'amended complaint' in a proposed class action may *create* '[f]ederal jurisdiction."  604 U.S. at 34 (emphasis added) (citing 28 U.S.C. § 1332(d)(7)); *see* Netflix.Br.12-13.  That is a true statement.  For example, a plaintiff who files a putative class action in state court that does not satisfy CAFA's requirements could amend the complaint so that it does—at which point the defendant may remove under CAFA, and the operative complaint at the time of removal is the amended complaint.  But the issue addressed by existing Ninth Circuit precedent like *Broadway Grill* has nothing to do with *creating* jurisdiction in order to remove under CAFA.  Instead, that Ninth Circuit precedent addresses whether plaintiffs may amend the complaint to *destroy* CAFA jurisdiction in order to obtain a remand—which is exactly what the Herndons have attempted to do here.  *Royal Canin*'s reference does not touch on that topic.

Finally, the Herndons cite two decisions that they mistakenly characterize as showing that *Royal Canin* "applies in a class-action context to a class definition." Herndon.Br.17 (emphasis omitted). In fact, neither of those decisions involves CAFA, and thus neither provides even tangential support for the notion that *Royal Canin* somehow displaces the Ninth Circuit's CAFA precedent. *See Black v. Mantel & Assocs.*, 2025 U.S. App. LEXIS 19017, at *12 (4th Cir. July 30, 2025) (addressing removal of a case under the Securities Litigation Uniform Standards Act); *Abraham Watkins Nichols Agosto Azia & Stogner v. Festeryga*, 138 F.4th 252, 255 (5th Cir. 2025) (addressing removal under ordinary diversity jurisdiction).

Unsurprisingly, the Herndons ignore the one decision that has actually considered *Royal Canin*'s effect on CAFA cases: *Zurbriggen v. Twin Hill Acquisition*, 2025 WL 1092973 (N.D. Ill. Apr. 11, 2025). In that case, the district court concluded that *Royal Canin* does *not* displace Seventh Circuit precedent that—like the Ninth Circuit precedent at issue here—directs courts to assess CAFA jurisdiction based on the complaint as it exists at the time of removal. *See id.* at *4 n.4.

### C.    A Vacated, Superseded Ninth Circuit Order Is Not "Persuasive Authority" That *Royal Canin* Controls Here

Finally, the Herndons incorrectly argue that a vacated Ninth Circuit order from earlier in this case constitutes "persuasive authority" that *Royal Canin* controls here over circuit precedent. Herndon.Br.23. That argument is fundamentally mistaken.

Immediately following the Supreme Court's GVR, and without providing any opportunity for briefing by the parties, the Ninth Circuit issued an order on March 4, 2025, that assumed without analysis that *Royal Canin* controls in this case. That order stated that the case would be remanded to this Court to decide whether the Herndons' "*amended complaint* confers subject matter jurisdiction under [CAFA]." No. 22-15260, Dkt. 126 (emphasis added).

At Netflix's urging, however, the Ninth Circuit subsequently vacated the March 4 order, stating that the order had "erroneously issued" before "the Supreme Court's mandate" issued. No. 22-15260, Dkt. 132. And on May 13, 2025, after the parties had the opportunity to brief the effect of the Supreme Court's GVR, *see* Netflix.Br.5, the Ninth Circuit issued an entirely different order:

one remanding this case to this Court "to consider what effect, *if any*, the Supreme Court's decision in *Royal Canin* has on the court's subject matter jurisdiction in this case." No. 22-15260, Dkt. 144 (emphasis added). That order specifically stated that "[t]he district court has not yet had the opportunity to consider whether *Royal Canin* has any significance to a case removed to federal court pursuant to the Class Action Fairness Act" and that the Ninth Circuit "express[es] no view on whether *Royal Canin* is relevant here." *Id.*

The Ninth Circuit's March 4, 2025 order is therefore the farthest thing possible from "persuasive authority." Herndon.Br.23. It was "vacated," *In re Realty Trust*, 1994 WL 202439, at *1 (9th Cir. May 24, 1994), and its "reasoning" was completely "invalidated" by the Ninth Circuit's later order expressly recognizing that *Royal Canin* may have no effect whatsoever on this case, *United States v. James*, 1993 WL 409148, at *4 (9th Cir. Oct. 12, 1993).

*       *       *

For all of those reasons, there is no clear irreconcilability—or any irreconcilability—between the Ninth Circuit's precedent and *Royal Canin*. Thus, *Broadway Grill* and *Mondragon* govern here, and this Court should look to the Herndons' original complaint to determine whether there is minimal diversity and whether any CAFA exception applies. This Court already held, after examining the original complaint, that there is minimal diversity and that no CAFA exception applies. The prior judgment in favor of Netflix should therefore be reinstated.[3]

## II. Even If The Court Looks To The Amended Complaint Under *Royal Canin*, The Herndons Fail To Identify Any Basis For A Remand

Even if this Court were to rule that *Royal Canin* somehow requires looking to the Herndons' amended complaint to assess jurisdiction, the Court should still reinstate its judgment in Netflix' favor. Contrary to the Herndons' arguments, under the amended complaint minimal

---

[3] Although the Herndons state in passing that "all removal issues should be considered anew," Herndon.Br.6, they never argue in their principal brief that any issue other than minimal diversity and the applicability of CAFA exceptions is affected by this Court's decision on whether *Royal Canin* governs here, Herndon.Br.24. The Herndons thus have forfeited the argument that any other removal issue is affected by *Royal Canin*. *See Lui v. DeJoy*, 129 F.4th 770, 780 (9th Cir. 2025) ("[A]rguments . . . omitted from the opening brief are usually deemed forfeited." (citation omitted)).

diversity under CAFA exists, the Herndons cannot show that any CAFA exception applies, and the Herndons are not entitled to the jurisdictional discovery that this Court denied the last time the case was before this Court.

### A.    Netflix Adequately Alleges Minimal Diversity

The Herndons' original complaint was filed "'on behalf of all others similarly situated' without any express geographical restriction." Dkt. 45, at 6.  The Herndons then amended their complaint and proposed two classes:  (1) the "California Negligence and Failure-to-Warn Class," which covers California minors (or "their successors in interest") who watched *13 Reasons Why* and allegedly suffered injury or death based on negligence or a failure to warn; and (2) the "Global Wrongful-Death Class," which covers "beneficiaries . . . of decedents" from across the world who watched *13 Reasons Why* and allegedly "died as a result of" the same alleged conduct.  Dkt. 22, ¶¶ 76a-76b.

As Netflix has explained, the Herndons have already effectively conceded in a court filing that minimal diversity exists under their amended complaint.  Netflix.Br.15-16; *see* Dkt. 26, at 11 n.4, 15 (Herndons stating that "[p]laintiffs do not dispute . . . that minimal diversity very likely exists" and that plaintiffs "have a good faith belief that there are class members outside of California").  That is in and of itself a sufficient basis for this Court to assert jurisdiction over this case.

In any event, the Herndons' current argument that minimal diversity does not exist because of the way their amended complaint defines the putative classes lacks merit.  According to the Herndons, the only class members with citizenship that is diverse from Netflix's citizenship are in the "Global Wrongful-Death Class," so Netflix must allege the existence of at least one "person [who] died" and is diverse in citizenship from Netflix.  Herndon.Br.24.  But the amended complaint makes that very allegation *on its face*.  It expressly alleges that the show caused "devastating impacts . . . in Canada" and then cites an article that discusses "*[s]uicides*" by young people in Ontario after the release of *13 Reasons Why*.  Dkt. 22, ¶ 52 (citing Sinyoir *et al.*, *Suicides in Young People in Ontario Following the Release of "13 Reasons Why*," 64 Canadian Journal of Psychiatry (Aug. 21, 2019), https://pmc.ncbi.nlm.nih.gov/articles/PMC6882071/).  The

1   amended complaint therefore *necessarily* alleges that at least one person who allegedly died by

2   suicide after watching the show had Canadian citizenship—which in turn indicates that it at least

3   one beneficiary of such an alleged decedent likewise has Canadian citizenship.  In addition, the

4   amended complaint alleges that specific, unnamed minors in Florida and Oklahoma engaged in

5   suicide-related behavior—providing further support for the conclusion that putative class members

6   in the "Global Wrongful-Death Class" are citizens of states other than California or Delaware.  *See*

7   Dkt. 22, ¶¶ 47, 49-50.  Any of those allegations is more than sufficient to support minimal

8   diversity.  *See, e.g.*, *Melendez v. J&B Investments*, 2018 WL 3769827, at *2 (C.D. Cal. Aug. 7,

9   2018) (finding a CAFA requirement satisfied based on "the allegations of the Complaint itself").[4]

10      **B.      The Herndons Have Not Carried Their Burden To Show That CAFA's**
             **Exceptions Apply**

11

12         A plaintiff asserting a CAFA exception has the burden of proving its applicability, and

13   there "must ordinarily be at least some facts in evidence" for that burden to be satisfied.

14   *Mondragon*, 736 F.3d at 884; *see Serrano v. 180 Connect*, 478 F.3d 1018, 1024 (9th Cir. 2007);

15   Dkt. 45, at 10.  The Herndons cannot meet that standard here, for multiple reasons—even

16   assuming that this Court assesses jurisdiction in light of their amended complaint.

17         In their original motion to remand in this Court, the Herndons argued that two CAFA

18   exceptions apply.  *See* Dkt. 45, at 9-10.  First, they pointed to the mandatory home-state exception,

19   under which a court must decline to exercise jurisdiction where "two-thirds or more" of all

20   putative class members and the defendant "are citizens of the State" where the "action was

21   originally filed."  28 U.S.C. § 1332(d)(4)(B).  Second, they relied on the discretionary home-state

22   exception, under which a court may (but need not) decline to exercise jurisdiction when "greater

23   than one-third but less than two-thirds" of all putative class members and the defendant "are

24   citizens of the State" where filing originally took place.  28 U.S.C. § 1332(d)(3).  The Herndons

25   assert that those ratio requirements are satisfied here because, in their view, the number of putative

26

_____

27   [4] The Herndons also argue that Netflix must "show[]" and "demonstrate" a diverse class member
     who "died."  Herndon.Br.24.  This Court previously rejected an identical argument, explaining

28   that Netflix has no "factual burden" of "proving" minimal diversity, Dkt. 45, at 8—and nothing
     about any subsequent development in the case undermines the Court's ruling in that regard.

members of their new "California Negligence and Failure-to-Warn Class" is larger than the number of putative members of their new "Global Wrongful-Death Class."  Herndon.Br.24.

That argument fails.  As Netflix has explained, it is too late for the Herndons to urge a reexamination of the CAFA exceptions based on their amended complaint, because they *never* argued any error as to those exceptions during any of the appellate proceedings.  Netflix.Br.17; *see United States v. Vanorden*, 414 F.3d 1321, 1323 (11th Cir. 2005).  This Court need go no further than that to reject applicability of the exceptions here.

In any event, there is no basis for displacing this Court's prior ruling that the Herndons failed to meet their burden of providing "at least some facts in evidence" showing the applicability of the CAFA exceptions.  Netflix.Br.17 (quoting *Mondragon*, 736 F.3d at 884).  As to the original complaint, the Court ruled that the Herndons conceded a lack of facts about the scope and composition of the putative class.  Dkt. 45, at 10.  And in a prior court filing, the Herndons made the same concession regarding their amended complaint.  Netflix.Br.17 (citing Dkt. 26, at 19, 21).  Indeed, in their principal brief, the Herndons request "jurisdictional discovery"—again effectively conceding that they lack facts and need discovery to develop them.  Herndon.Br.24.

Further, even absent that concession, the Herndons' mere say-so about the supposed number of members of each of the amended complaint's putative classes would not be close to enough to carry their burden to show that a precise percentage of all class members are California citizens.  Even assuming that *anyone* suffered any harm as a result of the show, which Netflix vigorously denies, this Court has no way of knowing whether more people were injured in California than died across the world—and if so, what the exact relationship between those numbers might be.[5]  If mere assertions like the Herndons' were sufficient to vitiate federal-court jurisdiction under CAFA, then a plaintiff's burden to show the applicability of CAFA's exceptions

---

[5] As Netflix previously explained, general statistics indicate that the portion of potential class members under the amended complaint who have California citizenship is small.  In 2017, when *13 Reasons Why* debuted, suicide deaths among California minors were only 0.5% of the estimated global suicides in that age group.  Dkt. 30, at 9.  Even adding in alleged self-harm incidents involving California minors, it hard to see how the Herndons could possibly establish the existence of the large percentages of putative class members with California citizenship that are required to satisfy the CAFA exceptions.

1  could be readily satisfied in almost any case, and—contrary to Congress's clear intent—class-

2  action plaintiffs could easily return to state court, where "inconsistent[]" and unfair "appli[cation]"

3  of the "rules" governing class actions and "inadequate supervision over litigation procedures and

4  proposed settlements" results in harm to class members and the public.  S. Rep. No. 109-14, at 4.

5         **C.    Jurisdictional Discovery Is Not Warranted**

6         In a single sentence, the Herndons incorrectly claim that there "would be a basis for

7  jurisdictional discovery" regarding the applicability of the CAFA exceptions "should the amended

8  complaint be considered."  Herndon.Br.24.  But even if the Herndons' arguments regarding the

9  applicability of CAFA's exceptions under their amended complaint were timely (and they are not,

10  *see* p. 14, *supra*), and even if that one sentence were enough to properly assert an argument for

11  jurisdictional discovery (which it is not, *see, e.g.*, *Gallardo v. Colvin*, 2014 WL 824227, at *15

12  (E.D. Cal. Mar. 3, 2014)), there is no basis for permitting such discovery here.

13        Jurisdictional discovery under CAFA is "governed by existing principles regarding post-

14  removal jurisdictional discovery, including the disinclination to entertain substantial, burdensome

15  discovery on jurisdictional issues."  *Abrego Abrego v. Dow Chem.*, 443 F.3d 676, 691 (9th Cir.

16  2006) (citation modified).  Accordingly, whether to allow such discovery is within this Court's

17  discretion, *see id.* at 692, and allowing discovery is improper where a plaintiff's request is "based

18  on little more than a hunch that it might yield jurisdictionally relevant facts," *Boschetto v.*

19  *Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008).

20        Applying those principles, this Court previously denied the Herndons' request for

21  jurisdictional discovery as to the applicability of the CAFA exceptions under their original

22  complaint.  The Court determined that jurisdictional discovery was not "likely" to support a

23  CAFA exception.  Dkt. 45, at 11-12 (emphasis omitted).  It reasoned that the complaint "asserts

24  global claims," and so "the class as alleged includes many non-citizens of California."  *Id*. at 12.

25  And it observed that the Herndons only "speculate[d] that there are more California citizens in the

26  class than non-citizens."  *Id*.  The Court also noted that the Herndons effectively conceded

27  Netflix's argument that the discovery the Herndons seek "does not exist" and that "it would be

28  unduly burdensome" and ineffective to establish the existence of any CAFA exception.  *Id*.

1    There is no ground for displacing that prior ruling now.  Similar to the original complaint,

2  the amended complaint proposes a "Global" class, and the Herndons only speculate that the ratio

3  of California citizens to California non-citizens would support the application of a CAFA

4  exception.  Herndon.Br.24; *see* pp. 12-13, 15, *supra*.  And again, the Herndons provide no reason

5  to think that jurisdictional discovery would be effective and non-burdensome.  *See* Herndon.Br.24

6  (not addressing these concerns); *see* Dkt.30, at 10-14 (Netflix filing explaining why discovery

7  would be burdensome and would not help the Herndons).

8    In addition, the passage of time and the nature of the information at issue makes an

9  exercise of discretion permitting discovery especially inappropriate.  This case began in 2021, and

10  the Court originally denied jurisdictional discovery late that year—now almost four years ago.

11  The Herndons have had ample time to investigate their own putative class members, and

12  information about those class members, who are alleged viewers of a show that Netflix streamed

13  worldwide, is not somehow in Netflix's sole possession, or in its possession at all.  In those

14  circumstances, an exercise of discretion that would slow the resolution of this case is unwarranted.

### CONCLUSION

16    This Court should decide that *Royal Canin* has no bearing on this case—and, regardless of

17  whether *Royal Canin* does have any bearing, should reinstate its final judgment in favor of Netflix.

20  DATED:  September 26, 2025              MUNGER, TOLLES & OLSON LLP

22                              By:  _____/s/ Blanca F. Young_____

23                                   BLANCA F. YOUNG
                                     Attorneys for NETFLIX, INC.