Ryan Hamilton (SBN 291349)
HAMILTON LAW LLC
5125 South Durango, Suite C
Las Vegas, Nevada 89113
(702) 818-1818
Ryan@HamLegal.com

James Banker (SBN 317242)
DIGITAL JUSTICE FOUNDATION
210 Flamingo Road, #424
Las Vegas, Nevada 89169
(714) 722-5658
JimBanker@Gmail.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

THE ESTATE OF ISABELLA "BELLA" HERNDON, JOHN HERNDON, J.H., *a minor*, T.H., *a minor*,

*on behalf of themselves and others similarly situated,*

*Plaintiffs*,

v.

NETFLIX INC.,

*Defendant*.

Case No. 4:21-cv-6561-YGR

**Plaintiffs' Supplemental Reply Briefing on *Royal Canin***

**Hearing Date:** October 21, 2025
**Hearing Time:** 2:00 p.m.
**Courtroom:** 1
**Judge:** Hon. Yvonne Gonzalez Rogers

**[ORAL ARGUMENT REQUESTED]**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........ 4

ARGUMENT ........ 6

I. THE ANSWER TO THE WHICH-COMPLAINT QUESTION HAS IMPLICATIONS FOR SUBJECT-MATTER JURISDICTION. ........ 6

A. This Honorable Court should address the which-complaint question first. ........ 6

B. The amended complaint affects whose citizenship matters for jurisdiction. ........ 7

C. The amended complaint establishes that the CAFA exceptions apply here. ........ 7

D. The amended complaint establishes a basis for jurisdictional discovery. ........ 8

II. REGARDLESS OF THE ANSWER TO THE WHICH-COMPLAINT QUESTION, JURISDICTION HAS NOT BEEN ESTABLISHED. ........ 8

A. Regardless of which complaint, jurisdiction must be established by specific allegations and facts, not probabilistic guesswork these. ........ 9

B. Regardless of which complaint, neither the Honorable Court nor the Defendant have identified a diverse person. ........ 10

C. Regardless of which complaint, the place of harm does not establish the domicile of a person, let alone their residency. ........ 11

D. Regardless of which complaint, the place of harm in 2017 does not establish that person's citizenship in 2021 ........ 11

E. Regardless of which complaint, no diverse person has been joined into this lawsuit under governing authority. ........ 12

F. Regardless of which complaint, no demonstrated Article III injury in fact has been established as to any Plaintiff or any other diverse putative class member. ........ 12

G. All of these challenges to jurisdiction are expressly made as both factual and facial challenges to the removal. ........ 13

III. THE *ROYAL CANIN*'S FIRST HOLDING GIVES AN ANSWER TO THE WHICH-COMPLAINT QUESTION. .......... 14

A. Defendant misunderstands when the Justices will exercise their GVR power. .......... 14

B. The Ninth Circuit has expressed a view on the effect of *Royal Canin*. .......... 15

C. Defendant conflates the issues decided in *Royal Canin*. .......... 16

D. Defendant mis-states the *Miller v. Gammie* standard. .......... 16

E. The *Broadway Grill* holding is inapposite. .......... 18

F. The *Broadway Grill* rationale is contrary to *Royal Canin*. .......... 18

G. Defendant's reliance on §1332(d)(7) doesn't support *Broadway Grill*. .......... 18

H. Faithful application of Supreme Court rationales and holdings is required. .......... 19

IV. REGARDLESS OF THE OUTCOME ON THIS, UPDATES ON THE MERITS ISSUE SINCE 2021 ENTAIL THAT BRIEFING ON THE MERITS MUST ALSO OCCUR. .......... 19

CONCLUSION .......... 21

CERTIFICATE OF SERVICE .......... 21

# TABLE OF AUTHORITIES[1]

## Cases

Bender v. Williamsport Area Sch. Dist., 475 U.S. 534 (1985) ..... 9

Bingham v. Cabot, 3 U.S. 382 (1798) ..... 10

Broadway Grill, Inc. v. Visa Inc. 856 F.3d 1274 (9th Cir. 2017) ..... 11

Brown v. Keene, 33 U.S. 112 (1834) ..... 10

Cameron v. Hodges, 127 U.S. 322 (1888) ..... 10

Cervantes-Torres v. United States, 141 F.4th 1101 (9th Cir. 2025) ..... 6

D.B. Zwirn Special Opportunities Fund, L.P. v. Methrota, 661 F.3d 124 (1st Cir. 2011) ..... 10

Dancel v. Groupon, Inc., 940 F.3d 381, 385 (7th Cir. 2019) ..... 11

Ehrman v. Cox Communs., Inc., 932 F.3d 1223 (9th Cir. 2019) ..... 9

Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567 (2004) ..... 11

In re Spint Nextel Corp., 593 F.3d 669 (7th Cir. 2010) ..... 9

J.A. Masters Invs. v. Beltramini, 117 F.4th 321 (5th Cir. 2024) ..... 10, 11

Mondragon v. Capital One Auto Fin., 736 F.3d 880 (9th Cir. 2013) ..... 7

Relevant Grp., Ltd. Liab. Co. v. Nourmand, 116 F.4th 917 (9th Cir. 2024) ..... 6

[1] Herein, emphasis is added unless otherwise indicated. Internal brackets, quotation marks, and citations are frequently removed for ease of reading. Citations to the docket entries of this Honorable Court of the Ninth Circuit are to the CM/ECF docket-stamp pagination. Citations to the Supreme Court docket use the internal pagination of the document since there is no stamping process.

Royal Canin U.S.A., Inc. v. Wullschleger, 604 U.S. 22 (2025) ..... 11

Sanchez v. Ameriflight, LLC, 724 F. App'x 524 (9th Cir. 2018) ..... 11

Smith v. Marcus & Millichap, Inc., 991 F.3d 1145 (11th Cir. 2021) ..... 9

Teter v. Lopez, 125 F.4th 1301 (9th Cir. 2025) ..... 6

Toulon v. Cont'l Cas. Co., 877 F.3d 725 (7th Cir. 2017) ..... 11

# ARGUMENT

## I. THE ANSWER TO THE WHICH-COMPLAINT QUESTION HAS IMPLICATIONS FOR SUBJECT-MATTER JURISDICTION.

Defendant's Supplemental Brief argues that the answer to the which-complaint question has no effect here. Dkt.108 at 6 ("any effect"); Dkt.108 at 7 ("result would be the same") 19 ("result would be exactly the same"). Plaintiffs reply that **(A)** given that the which-complaint question is a threshold question and given the Ninth Circuit's remand order, this Honorable Court should address the which-complaint question first; **(B)** the which-complaint question has significance because the amended complaint limits the scope of any diverse party to those that *died* and no allegations, let alone facts, show the *diverse citizenship* of a specific, identified person who died; **(C)** the allegations establish that the CAFA exceptions apply; and, **(D)** if those allegations are disputed then jurisdictional discovery should be allowed.

### A. This Honorable Court should address the which-complaint question first.

This Honorable Court should address Royal Canin and the which-complaint question first. After all, the Ninth Circuit's remand was ordered, upon Defendant's request, to do just that – to consider the significance of Royal Canin. Dkt.94 at 2. Likewise, this Honorable Court treated the which-complaint question as a threshold question in its prior order on jurisdiction. Dkt.45 at 3-5 (first discussion section about "**Identifying The Operative Complaint For Removal**"); Dkt.45 at 3 ("Before the Court can begin a jurisdictional analysis, it must determine which complaint is operative for removal purposes.").

Answering that threshold question first – addressing first things first – simplifies. Moreover, Ninth Circuit requires that this Honorable Court should *not* address unnecessary issues and the which-complaint question determines which issues are relevant. See, e.g., Cervantes-Torres v. United States, 141 F.4th 1101, 1107 (9th Cir. 2025) ("Having decided as much, the 'cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more—counsels us to go no further.' Teter v. Lopez, 125 F.4th 1301, 1309 (9th Cir. 2025) (en banc)"); Relevant Grp., Ltd. Liab. Co. v. Nourmand, 116 F.4th 917, 935 (9th Cir. 2024) (same).

If this Honorable Court determines that the operative complaint for jurisdiction is the *amended* complaint, *then* it should address the issues of diversity jurisdiction under the amended complaint, both those specific to the amended complaint and whether diversity has been established generally. See generally Sections I.-II, *infra*. Yet, if it determines that the *original* complaint is operative, then the Court doesn't need to address the amended complaint in any fashion but must still address outstanding questions of subject-matter and Article III jurisdiction. See generally Section II, *infra*.

**B. The amended complaint affects whose citizenship matters for jurisdiction.**

Although Defendant argues that the amended complaint has no effect, Defendant elsewhere concedes that there were changes *to the class definitions* in the amended complaint. Dkt.108 at 8 (conceding that the amended complaint was "proposing two classes"). As discussed in Plaintiffs' Supplemental Briefing, that has big ramifications here. Dkt.109 at 23-24. The only way a person could be within the scope of the alleged class definition under the amended complaint is if that person died. Dkt.22 at 21¶76. So, allegations about *harm* in other states are beside the point. See Dkt.108 at 7 ("Florida" and "Oklahoma" and "Canada"). Under the amended complaint, to establish diversity, Defendant must establish both (1) *death* of an identified person and (2) the *diverse citizenship* of that specific decedent *at the outset of this case* (not in 2017). Defendant has not done so. And, this has especially big implications for Article III injury-in-fact. See Section II.F, *infra*.

**C. The amended complaint establishes that the CAFA exceptions apply here.**

Moreover, this Honorable Court had decided the CAFA exceptions in light of the original complaint, not the amended complaint. Dkt.45 at 3-5, 9-10. Yet, the amended complaint makes a key allegation about the class compositions. Dkt.22 at 21¶76. Remand should occur on this allegation. 28 U.S.C. § 1332(d)(3)-(4). Mondragon is about *proof* of the relative class compositions, *not* allegations. E.g., Mondragon v. Capital One Auto Fin., 736 F.3d 880, 884 (9th Cir. 2013). The allegations control unless challenged. Id. And, ***if challenged***, then this Honorable Court should permit jurisdictional discovery. Mondragon, 736 F.3d at 885 ("We instruct the district court to allow Mondragon an opportunity, if he chooses to do so, to renew his motion to remand and to take jurisdictional discovery tailored to proving that more than two-thirds of the putative class are citizens of California."). ]

**D. The amended complaint establishes a basis for jurisdictional discovery.**

And, in addition, this Honorable Court's discussion of jurisdictional discovery was also targeted to the *original* complaint. Dkt.45 at 11-12. Yet, in light of the class definitions in the amended complaint, Dkt.22 at 21¶76, and in light of the allegation in the amended complaint regarding the relative size of the class compositions, Dkt.22 at 21¶77, either the allegation must be accepted as true or jurisdictional discovery is permitted.

## II. REGARDLESS OF THE ANSWER TO THE WHICH-COMPLAINT QUESTION, JURISDICTION HAS NOT BEEN ESTABLISHED.

Defendant argues that the which-complaint question doesn't matter because the result is the same. Dkt.108 at 6 ("any effect"); Dkt.108 at 7 ("result would be the same") 19 ("result would be exactly the same"). Plaintiffs reply and reiterate that, regardless of whether the original complaint or amended complaint is examined, fundamental jurisdiction prerequisites have not been pleaded and have not been proven – with regard to aspects of subject-matter jurisdiction that this Honorable Court has no considered or decided. In that sense, Plaintiffs respectfully submit that, *even if* this Honorable Court's speculation about the world leads it to believe that there *must* be diversity, that isn't the standard Defendant is required to allege and prove in order to bring a case to federal court. Rather, Defendant must specifically ***identify*** a diverse party; specifically ***identify*** their state or country of ***domicile*** (not mere place of harm), with the relevant at the outset of the case (called the time-of-filing rule); identify the ***jurisdiction*** of this Honorable Court over that party; and identify the ***Article III injury-in-fact to that person*****.**

No one – not this Honorable Court and certainly not Defendant - has ever answered any of the questions that are required prerequisites to the exercise of limited federal jurisdiction over this case: **(1) Who is the specifically-identified diverse person? (2) Where were they domiciled in *2021*? (3) How are they joined into this case such that this Honorable Court has personal jurisdiction over that person, even though they are not a Californian, not served, and not notified of this action? (4) What was the Article III injury in fact (an injury cognizable under common law of which death alone is not) that they suffered such that this Court can hear their case?** Regardless of which complaint, *none of these questions have been answered***.**

The order on the motion to remand didn't answer these required questions – and nothing in the record, neither fact nor allegation answers it. Instead, this Honorable Court relied upon allegations about the *place of harm* ***in 2017*** (which do not establish residency, let alone *domicile*, let alone in *2021*) – and population statistics to merely speculate that there is a high probability of non-Californians. Dkt.45 at 8; see also Dkt.45 at 12 ("non-citizens of California").[2] That does not establish any diversity of citizenship or Article III injury, let alone of a person joined into this action:

> **[I]t is not sufficient that jurisdiction may be inferred argumentatively from averments in the pleadings, it follows that the necessary factual predicate may not be gleaned from the briefs and arguments themselves. This first principle of federal jurisdiction applies whether the case is at the trial stage or the appellate stage**.

E.g., Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 546-547 (1985) (cleaned up).

**A. Regardless of which complaint, jurisdiction must be established by specific allegations and facts, not probabilistic guesswork these.**

Defendant argues that a mere likelihood of diversity is sufficient. Dkt.108 at 9 ("diversity very likely exists"); 21 ("very likely exists"). That's not how our legal system generally or federal subject-matter jurisdiction works. Courts have likewise resisted misuse of statistics and bare probabilities when determining the citizenship of class members. See, e.g., Smith v. Marcus & Millichap, Inc., 991 F.3d 1145, 1159 (11th Cir. 2021) ("[N]one of the generalized data submitted was sufficient to establish the class members' intent to remain in the state. At best, the submitted data speak only to population moving patterns[.]"); id. ("requiring something more than general data sources is not impractical or unreasonable"); In re Spint Nextel Corp., 593 F.3d 669, 674 (7th Cir. 2010) ("But that's all guesswork. Sensible guesswork […] but guesswork nonetheless."). Indeed, our judicial system rightfully treats cases and person as individuals—not as tokens or placeholders for a broader group. Indeed, no court would—or should—ever accept a probabilistic or statistical likelihood about any population group (race, religion, etc.) to infer facts about a specific person in

[2] The sole case authority cited by this Honorable Court cited a single case regarding minimal diversity. Dkt.45 at 8 (relying exclusively on Ehrman v. Cox Communs., Inc., 932 F.3d 1223, 1227-1228 (9th Cir. 2019)). Erhman is plainly inapposite. Ehrman involved ***named*** parties from ***different*** states. Id. In Ehrman, the defendant corporation was a "citizen of Delaware and Georgia" (id. at 1226) whereas the plaintiff was a "a citizen of California" (id. at 1228). Here, the named parties are plainly not diverse. Dkt.45 at 8 ("There is no dispute here that Netflix and the named plaintiffs are not diverse.").

lieu of actually examining the facts and evidence about that specific person. Not only is such an inference in the absence of facts unfair to the person, it's a basic misuse of statistics predicated upon a basic fallacy—what statisticians call an "ecological fallacy" or "population fallacy."

And, this general principle holds true when it comes to jurisdiction as well. Federal courts don't do jurisdiction by statistic or probabilistic guesswork. They insist that jurisdiction be established—i.e., shown. And, the federal courts have done so for centuries. E.g., Bingham v. Cabot, 3 U.S. 382, 838 (1798) ("necessary to set forth the citizenship"); Brown v. Keene, 33 U.S. 112, 115 (1834) (MARSHALL, C.J.) ("the averment of jurisdiction shall be positive, that the declaration shall state expressly the fact on which jurisdiction depends."); Cameron v. Hodges, 127 U.S. 322, 325 (1888) ("requiring a distinct statement of the citizenship of the parties, and of the particular State").

Likewise, courts have eschewed diversity by negative inference – *i.e.*, arguing that there are non-Californians rather than specifically identifying the *domicile at the time of filing* (not the place of injury 4 years beforehand). A party can't just come to federal court by reasoning that the other party is from somewhere else, anywhere else (we just don't know where). E.g., Cameron, 127 U.S. at 324-235; D.B. Zwirn Special Opportunities Fund, L.P. v. Methrota, 661 F.3d 124, 127 (1st Cir. 2011). Indeed, Plaintiffs have conceded *nothing* about jurisdiction. See Dkt.26 at 11 n.4. Yes, you might think that it's very likely – even speculatively / probabilistically certain that there is *someone*, *somewhere* who is diverse. That's not a replacement for *facts*, *allegations*, and *evidence* establishing federal jurisdiction. Until that happens, all rulings are *ultra vires*. E.g., J.A. Masters Invs. v. Beltramini, 117 F.4th 321, 323-324 (5th Cir. 2024) (per curiam) ("But without full assurance that this case falls within the strictures of our limited jurisdiction, any resolution we would purport to provide would be a nonbinding advisory opinion at best and an ultra vires act at worst. We decline to risk transgressing our Article III power absent a sound basis in the record[.]").

**B. Regardless of which complaint, neither the Honorable Court nor the Defendant have identified a diverse person.**

Defendant concedes that no one has been specifically identified. E.g., Dkt.108 at 20 ("specific (***although not identified***") minors in Florida and Oklahoma"). That concession concedes that diversity jurisdiction has ***not*** been established. E.g., Sanchez v. Ameriflight, LLC, 724 F. App'x 524,

526 (9th Cir. 2018) ("***identify*** any ***specific*** putative class member that was diverse"); Toulon v. Cont'l Cas. Co., 877 F.3d 725, 733 (7th Cir. 2017); ("***identify* the *name* and *state* of citizenship**"); Dancel v. Groupon, Inc., 940 F.3d 381, 385-386 (7th Cir. 2019) ("**Failure to *identify* a *specific* party** from a diverse state fails to meet ***CAFA's*** minimal diversity requirement.").

**C. Regardless of which complaint, the place of harm does not establish the domicile of a person, let alone their residency.**

Defendant argues for jurisdiction based upon the *place of harm*. Dkt.108 at 9 ("***harms*** in Florida and Canada in 2017); 20 ("***harms*** in Florida and Canada"). *Even under* Broadway Grill, that's insufficient: jurisdiction turns on ***citizenship***. See, e.g., Broadway Grill, Inc. v. Visa Inc. 856 F.3d 1274, 1279 (9th Cir. 2017) ("**CAFA means what it says—citizenship** of the class for purposes of minimal diversity **must be determined** as of the operative complaint **at the date of removal**."). So, *even if* you stick with Broadway Grill, allegations about *place of harm* are insufficient to establish diversity jurisdiction. Defendant failed this rule of jurisdiction too. Indeed, there's no allegation in any pleading – or any facts – as to *residency* or *domicile*. E.g., J.A. Masters, 117 F.4th at 322 (5th Cir. 2024) (per curiam) ("While the underlying pleadings mentioned the *residence* of each party, they did not specifically identify the *citizenship* of each party—a common yet unfortunate mistake when invoking a federal court's diversity jurisdiction.'").

**D. Regardless of which complaint, the place of harm in 2017 does not establish that person's citizenship in 2021.**

There's another problem: Defendant makes another implicit concession on the time-of-filing rule. E.g., Dkt.108 at 9 ("harms in Florida and Canada in ***2017***). Telling you where someone was *harmed* **in 2017** doesn't establish where they were *domiciled* **in 2021**. 2021 is the key year: that's because the "jurisdiction of the Court depends upon the state of things at the time of the action brought." E.g., Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 570 (2004); 28 U.S.C. §1332(d)(7). Indeed, this "**rule is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure.**" Id. at 570-571; Royal Canin U.S.A., Inc. v. Wullschleger, 604 U.S. 22, 36 n.5 (2025) (The time-of-filing rule operates "in diversity cases, [and] evaluates a party's citizenship (e.g., whether the defendant is in fact from New York) ***at the time a***

***suit is brought***[.]"). Binding authority requires a determination of the domicile *at the outset of this case in 2021, not in 2017 when the harm occurred*. Defendant has made no such showing.

**E. Regardless of which complaint, no diverse person has been joined into this lawsuit under governing authority.**

Defendant suggests parties have been joined here. E.g., Dkt.108 at 7 ("swept in putative class members"). That's just false. No diverse party has been served and joined. And, in Shutts, the Supreme Court explained that a court can exercise jurisdiction over those persons, but they first "***must receive notice plus an opportunity to be heard***" to be part of the civil action. See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 811-812 (1985) (citing Mullane, 339 U.S., at 314-315); cf. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 174-175 (1974). In short, the most elementary and bare minimums of due process were not taken as to any diverse party—and as such they were not brought into the case. Notably, not only was no diverse party ever identified, no diverse party is part of this case. As such, it remains entirely unclear who the diverse party is and, furthermore, how that party is even in the case to establish diversity. There is no such person. The Plaintiffs are Californians. The Defendant is a Californian. No one else is here in this case. That's dispositive against jurisdiction.

**F. Regardless of which complaint, no demonstrated Article III injury in fact has been established as to any Plaintiff or any other diverse putative class member.**

Moreover, Defendant hasn't established Article III injury in fact – especially not as to any putative class member. *Importantly*, Article III injury in fact tracks the common law. TransUnion explained that Article III's "concrete-harm requirement" that must be met before jurisdiction is established. TransUnion, 594 U.S. at 429; id. at at 417 ("[n]o concrete harm, no standing."). In TransUnion, the Supreme Court Court reaffirmed a clear rule that a "concrete harm" must be established to bring a case to federal court. TransUnion LLC v. Ramirez, 594 U.S. 413, 417 (2021). Simply put, "[n]o concrete harm, no standing." Id. That injury-in-fact inquiry turns on whether there's a "**close historical or common-law analogue**[.]" Id. at 424. That's because the "judicial power of common-law courts was historically limited depending on the nature of the plaintiff's suit." Spokeo, Inc. v. Robins, 578 U.S. 330, 343 (2016) (Thomas, J., concurring). And, such "limitations persist" in modern Article III standing doctrine. Id. And, in turn, the common law did *not* recognize

death as an injury. E.g., Henshaw v. Miller, 58 U.S. 212, 219 (1855) ("The maxim of the common law is 'actio personalis moritur cum persona[.]'"); Hunt v. Authier, 28 Cal. 2d 288, 290 (1946) ("At common law the maxim, Actio personalis moritur cum persona, persisted to effect the abatement of all actions[.]"). Simply put, at common law, it was well-settled that a personal right of action dies with the person. Indeed, "[n]othing was more firmly settled at common law[.]" Clark v. Goodwin, 170 Cal. 527, 529-530 (1915). Thus, there are serious Article III injury-in-fact infirmities with Defendant's theory *because there are no allegations whosoever establishing an injury-in-fact for any person.* Indeed, even as to Bella Herndon and Plaintiffs, there are no allegations in the notice of removal or either complaint that establish an injury-in-fact. Death is *not* an injury-in-fact. And, Defendant hasn't demonstrated an injury-in-fact as to Plaintiffs. Defendant certainly hasn't as to any other persons – and would need to explain the injury in fact. It hasn't.

**G. All of these challenges to jurisdiction are expressly made as both factual and facial challenges to the removal.**

Defendant mischaracterizes the challenges to jurisdiction as only facial. Dkt.108 at 20-21 ("facial attack"). That's erroneous and, regardless, Defendant hasn't facially or factually met diversity jurisdiction, Article III injury-in-fact, or brought any putatively diverse person into this action. *For the avoidance of doubt, and because jurisdiction can be questioned at any time, Plaintiffs reiterate that both facially and factually, Defendant has failed to establish subject-matter jurisdiction, under the statute and under Article III*.

*****

It's approaching 5 years of litigation of this case. And, ultimately, what happened here is a ***premature removal***. Defendant simply hasn't established subject-matter jurisdiction because it brought this case to federal court prematurely. Instead of confessing error, it's argued against centuries of precedent and against the entire manner of the legal system by using probabilities and guesswork. That's insufficient. It's worth noting that ***Congress*** didn't set a one-year deadline for CAFA removals. 28 U.S.C. § 1453(b) ("except that the 1-year limitation under section 1446(c)(1) shall not apply" shall not apply to CAFA removals). There's a reason for that: the longer timeframe permits the counsel and the parties to a class-action will engage in the preliminary discovery and

determine who's in the class with particularity, *rather than litigating subject-matter jurisdiction for years*. Yes, regardless of which complaint, Defendant's positions on subject-matter jurisdiction are deeply deficient. And, remand need not be permanent. If this Honorable Court remands and in turn there is later an identification and joinder of a diverse person into the case, then Defendant can remove *at that time*. Yet, here and now, there is simply no subject-matter jurisdiction that's been established.

## III. THE *ROYAL CANIN*'S FIRST HOLDING GIVES AN ANSWER TO THE WHICH-COMPLAINT QUESTION.

### A. Defendant misunderstands when the Justices will exercise their GVR power.

Defendant argues that Plaintiffs misunderstand the Supreme Court's GVR power. Dkt.108 at 16 ("badly misunderstands the nature of a GVR"). Yet, it is Defendant that is mistaken, overlooking the key distinction between the *power* to GVR and when the Justices will exercise their *discretion* to do so. Defendant conflates two different issues: (1) ***power***, *i.e.*, the Supreme Court's "power to issue a GVR[;]" and (2) ***discretion***, *i.e.*, what constitutes an "appropriate exercise of [the Supreme Court's] discretionary certiorari jurisdiction" to issue a GVR. Lawrence v. Chater, 516 U.S. 163, 166 (1996) (per curiam); id. at 175-176 (STEVENS, J., concurring) (distinguishing "power to remand" and when to exercise that "discretionary authority").

The majority of the sitting Honorable Justices of the U.S. Supreme appear to *only* issue a GVR if they believe it affects the underlying judgment, so although the power is broader, the discretionary exercise of that power is limited to judgments. Lawrence, 516 U.S. at 178 (1996) (SCALIA, J., joined by THOMAS, J., dissenting); Nunez v. United States, 554 U.S. 911, 912 (2008) (SCALIA, joined by ROBERTS, C.J., and THOMAS, J., dissenting); Wellons v. Hall, 558 U.S. 220, 228-29 (2010) (ALITO, J., joined by Roberts, C.J., dissenting); see also Grzegorczyk v. United States, 142 S. Ct. 2580, 2584 (2022) (SOTOMAYOR, J., joined by BREYER, KAGAN, GORSUCH, JJ., dissenting from denial of GVR) ("Members of this Court have raised arguments for constricting this Court's longstanding GVR practice[.]"). It is Defendant that simply misunderstands the GVR and that's important here because the Justices are very respectful of the lower courts' time. They don't idly GVR.

**B. The Ninth Circuit has expressed a view on the effect of *Royal Canin.***

Defendant says the Ninth Circuit has expressed not view on Royal Canin. Dkt.108 at 10 ("expressed 'no view'"). That's incorrect. The Ninth Circuit did express a view in the now-vacated order and that remains persuasive authority. See Dkt.109 at 23 (making this point).

***Most importantly***, the Ninth Circuit has now applied the Royal Canin which-complaint principle in the context of the federal-officer-removal statute. California v. Express Scripts, Inc., No. 24-1972, ___ F.4th _____, 2025 U.S. App. LEXIS 23123, at *9 (9th Cir. Sep. 8, 2025) (MURGIA, C.J.). ***This is extremely important because Defendant's central position is what the which-complaint principle enunciated at some length and then reiterated against was limited to the supplemental jurisdiction-context.*** Express Scripts demonstrates otherwise:

> The Supreme Court's decision in *Royal Canin U. S. A., Inc. v. Wullschleger*, issued during the pendency of this appeal, reinforces the district court's conclusion. **604 U.S. 22**, **28**, 145 S. Ct. 41, 220 L. Ed. 2d 289 (2025). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction,' the case must be 'remanded' to state court." *Id.* (quoting 28 U.S.C. § 1447(c)) (citation modified). Plaintiff, as "the master of the complaint" excised the basis for federal jurisdiction with its disclaimer, which made remand necessary. *Id.* at 35 (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987)).

Id. at *9. **Under Ninth Circuit published authority, *Royal Canin*'s which-complaint principle is not limited to the supplemental-jurisdiction statute**. Rather, as its plain language demonstrates, it is applicable beyond it.

Indeed, this is quite clear because, as numerous authorities have established, that there are *two separate principles*. And, as discussed at some length in Plaintiffs' principal supplemental briefing, the first principle – the *which-complaint* principle – is the controlling one here.

And, Defendant simply disregards this in trying to stick to contrary principles that amendment is a one-way racket in favor of Defendant's preferred forum. For example, Defendant argues that "But the issue here is not whether an amended complaint can create federal jurisdiction in a CAFA case, but rather whether such a complaint can destroy pre existing federal jurisdiction." Dkt.108 at 18. ***That's not what the Supreme Court has said in* Royal Canin**: "In *multiple contexts*—involving both *cases brought in federal court and cases removed there*—courts conceive of amendments to

pleadings as potentially jurisdiction-changing events. ***<u>The amended complaint</u>*** becomes the operative one; and in taking the place of what has come before, it ***<u>can either create or destroy jurisdiction</u>***. <u>Royal Canin</u>, 604 U.S. at 34-35 (2025). The issue is whether the amended complaint is operative and, yes, it is. The "original complaint without legal effect." <u>Id.</u> at 29 (quoting Eighth Circuit).

**C. Defendant conflates the issues decided in *Royal Canin.***

Defendant argues that <u>Royal Canin</u> is inapplicable because this is a CAFA case. <u>E.g.</u>, Dkt.108 at 17 ("passing, parenthetical reference to CAFA"). Yet, <u>Royal Canin</u> is a CAFA case too and Defendant simply conflates and overlooks that there are two principles at work in <u>Royal Canin</u> – the first principle going to which complaint and the second principle going to supplemental jurisdiction. Dkt.109 at 10-16 (discussing this). The Supreme Court granted cert on both and decided both. IN turn, <u>Royal Canin</u> doesn't leave us to guess what the operative governing principle here is: "The very issue here is whether, in a removed case (as in an original one), an amended complaint dropping federal claims destroys jurisdiction." 604 U.S. at 37. And, it tells us the answer again and again: "Once again, **<u>federal jurisdiction—or its absence—follows from the amended complaint</u>**." <u>Id.</u> at 38. And, the Supreme Cout has taken pains to emphasize that this rule applied in both diversity cases and removal context: "[***<u>I]n removed cases too, amending a complaint to join a non-diverse party destroys diversity jurisdiction</u>***. <u>Id.</u> at 38-39. All in all, <u>Royal Canin</u> isn't just about supplemental jurisdiction. Dkt.108 at 6 ("analyzes the supplemental-jurisdiction statute"); 10 ("supplemental jurisdiction");' 15 ('supplemental-jurisdiction statute"); 16 ("separate statutory scheme").

**D. Defendant mis-states the *Miller v. Gammie* standard.**

Defendant argues that under Circuit precedent, <u>Broadway Grill</u> remains controlling. <u>E.g.</u>, Dkt.108 at 11 ("clearly irreconcilable"). Defendant misstates the Ninth Circuit's standard. It is not the *<u>holdings</u>* that must be irreconcilable, but rather the *<u>rationales</u>* / *<u>approaches</u>* / *<u>modes of analysis</u>* that determine. <u>Muller v. Gammie</u> says to expressly:

> We ***<u>hold</u>*** that the issues decided by the higher court need not be identical in order to be controlling. *<u>Rather, the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent</u>* in such a way that the cases are clearly irreconcilable.

Miller v. Gammie, 335 F.3d 889, 900 (9th Cir. 2003) (en banc); id. (lower courts "***bound not only by the holdings of higher courts' decisions but also by their 'mode of analysis***'"); id. ("As we have explained, the blanket absolute immunity for social workers recognized in *Babcock* is directly at odds with the functional ***approach taken by the Supreme Court***"). It is the mode of analysis, the approach, the rationale taken by the Supreme Court – not just the express holding that governs going forward. As such, Defendant simply misstates the governing standard.

As discussed in Plaintiffs' principal briefing, the rationales are highly different. What was Broadway Grill's rationale? A forum-manipulation concern that the Supreme Court has expressly rejected. A reliance upon the legislative history (not the text and, regardless, a misreading of the legislative history). An overlooking of 100-year-old precedents to the contrary. Dkt.109 at 20 ("Indeed, Royal Canin not only directly conflicts with Broadway Grill's holding but also directly undermines its rationales, not just its holding."); Dkt.109 at 20-23. Indeed, the Eighth Circuit was an outlier in Royal Canin – and the Supreme Court *unanimously* affirmed its principles adoption of sound jurisdictional principles.

Defendant cites a single district-court case from the Seventh Circuit. Dkt.108 at 12 (citing Zurbriggen v. Twin Hill Acquisition Co., 2025 WL 1092973, at *4 n.4 (N.D. Ill. Apr. 11, 2025); 16 ("only court to have addressed a question about compatibility of *Royal Canin* with a decision like *Broadway Grill*"). That case is not on point. Notably, *unlike* Miller v. Gammie, the Seventh Circuit does not permit a district court to acknowledge the Supreme Court's intervening authority. Zurbriggen, No. 1:17-cv-5648, 2025 U.S. Dist. LEXIS 69906, at *13 n.4 (N.D. Ill. Apr. 11, 2025) ("Neither Royal Canin nor any subsequent decision has overruled that holding, and it is not this Court's place to find it abrogated by implication."). Miller says otherwise about what district courts, including this Honorable Court must do: "In future cases of such clear irreconcilability, a three-judge panel of this court ***and district courts*** should consider themselves bound by the intervening higher authority and reject the prior opinion of this court as having been effectively overruled." Miller v. Gammie, 335 F.3d at 900 (9th Cir. 2003) (en banc). Moreover, in Zurbiggen, there was no occasion to consider the effect of Royal Canin because all jurisdictional prerequesites were plainly met: "even if *Royal Canin*'s broader holding extended to § 1332(d), the operative fourth amended complaint

unambiguously invokes CAFA and pleads its jurisdictional prerequisites." Zurbriggen v. Twin Hill Acquisition Co., No. 1:17-cv-5648, 2025 U.S. Dist. LEXIS 69906, at *13 n.4 (N.D. Ill. Apr. 11, 2025). That's not true here. There isn't subject-matter jurisdiction established under either complaint, but the amended complaint raises additional problems to exercising jurisdiction.

**E. The *Broadway Grill* holding is inapposite.**

As an another key point, Broadway Grill cannot govern because by its plain language it applies where there were class definitions in the original complaint. See Dkt.109 at 20. As this Honorable Court acknowledged. There were no definitions in the original complaint. Dkt.45 at 5.

**F. The *Broadway Grill* rationale is contrary to *Royal Canin.***

Defendant uses a lot of hyperbolic language about the consistency of Royal Canin, Broadway Grill, and Mondragon. Dkt.108 at 6 ("no tension"); 14 ("no effect"); 15 ("entirely consistent"). If that were true, the Supreme Court wouldn't have GVR'd. Yet, the operative test is to examine whether their rationales are reconcilable – not whether one could fathom their holdings sitting side-by-side. That's because Miller says as much *and* because the Supreme Court's rationales are governing and require a faithful application of its principles as a starting point. And, the rationales are in direct conflict. The Supreme Court has *rejected* the policy concerns of purported forum manipulation. Royal Canin, 604 U.S. 22, 42 n.9 (2025) (noting that 'the 'forum-manipulation concerns' fail[] on multiple levels"); Dkt.109 at 20-23.

**G. Defendant's reliance on §1332(d)(7) doesn't support *Broadway Grill.***

Notably, Royal Canin did address 28 U.S.C. § 1332(d)(7), as Defendant concedes, but then argues doesn't matter. Dkt.108 at 17 ("passing, parenthetical reference to CAFA"). The Royal Canin reference there is telling. See Dkt.109 at 22-23. It full, the Supreme Court says in its citation: "

> That result accords with Congress's usual view of how amended pleadings can affect jurisdiction. On that view, apparent in varied federal statutes, an amendment can wipe the jurisdictional slate clean, giving rise to a new analysis with a different conclusion. Consider 28 U. S. C. §1653: It states broadly that, in both trial and appellate courts, "[d]efective allegations of jurisdiction may be amended" to ensure that a case can go forward. So a case falling outside the federal court's jurisdiction can come within it by virtue of an amendment. Or take the statute laying out procedures [**52] for removal. It provides that even "if the case stated by the initial pleading is not removable," an amendment may make it so: The defendant can remove the case after receiving "an amended pleading" establishing that the case is newly subject to federal jurisdiction.

> §1446(b)(3); **<u>see §1332(d)(7) (similarly providing that an "amended complaint" in a proposed class action may create "[f]ederal jurisdiction"</u>**). In such statutes, Congress conceives of amendments as having the potential to alter jurisdiction.

<u>Royal Canin</u>, 604 U.S. at 34. In other words, §1332(d)(7) **<u>supports</u>** the idea that **<u>amended pleadings</u>** govern, which supports Plaintiffs' position here. The statutory text does the same thing, stating that: "Citizenship of the members of the proposed plaintiff classes shall be determined for purposes of paragraphs (2) through (6) as of the date of filing of the complaint **<u>or amended complaint</u>**, or, if the case stated by the initial pleading is not subject to Federal jurisdiction, as of the date of service by plaintiffs of an **<u>amended pleading, motion, or other paper</u>**, indicating the existence of Federal jurisdiction." 28 U.S.C. § 1332(d)(7). The plain text supports the idea that amendment affects jurisdiction.

### H. Faithful application of Supreme Court rationales and holdings is required.

Defendant argues for an "exacting" – *i.e.*, super narrow – reading of Supreme Court cases. Dkt.108 at 10 ("exacting"); Dkt.108 at 10 ("some tension" not enough); Dkt.108 at 11 ("without running afoul"). <u>Miller</u> does not support that. But, to the extent that this Honorable Court thinks that anything other than *<u>starting</u>* with the Supreme Court's rationales and frameworks and then faithfully applying them is operative, Plaintiffs respectfully submit that such a view isn't what the Ninth Circuit has held. <u>Miller</u> shouldn't be read that way, but should it be, Plaintiffs preserve their objection to such a reading as contrary to the Constitutional hierarchy of the federal courts.

## IV. Regardless of the Outcome on this, Updates on the Merits Issue Since 2021 Entail that Briefing on the Merits Must Also Occur.

Finally, Defendant suggests that this Honorable Court simply re-enter a final judgment now. <u>E.g.</u>, Dkt.108 at 6 ("the prior final judgment in favor of Netflix should be reinstated"); Dkt.108 at 7 ("final judgment for Netflix is warranted"); 19 ("once again enter judgment"); 19 ("reinstated"). Plaintiffs object and respectfully submit that this request is highly improper for many reasons detailed herein. ***<u>First</u>***, there have been major updates on the *<u>merits</u>* issues since this Honorable Court ruled upon them in January 2022. Dkt.74. Notably, under the Rule of Decision Act, the governing authorities on *<u>all</u>* merits issues are *<u>California</u>* cases and statutory frameworks. 28 U.S.C. § 1652.

Under the Rule of Decision Act, *California* case law control on all issues on the merits. And, accordingly, Plaintiffs should have an opportunity to address them before a re-entry of judgment. For example, the California Supreme Court has issued important clarifications on anti-SLAPP which confirm it doesn't apply here.

***Second***, before re-entering judgment, Plaintiffs should be afforded the opportunity to amend their complaint. Notably, prior to the Ninth Circuit appeal, this Honorable Court graciously offered Plaintiffs the opportunity to advise if they intended to amend. Dkt.74 at 5-6. Plaintiffs indicated that they would want to exercise that right if the case returned to this Honorable Court after appeal. Dkt.75 at 3. This Honorable Court noted as much in the judgment. Dkt.75 at 3 ("Given the Court's order, plaintiffs agree at this time that amendment would be futile and reserve the possibility of amendment after exhausting their appeal."). Re-entering final judgment would short-circuit any opportunity to amend their complaint. ***Third***, Defendants have not filed a motion and the rules and the precedents require a motion to grant dispositive relief. Dispositive motions must be filed by *motion*. Fed. R. Civ. P. 12(b) ("may assert the following defenses by ***motion***"); Fed. R. Civ. P. 56(a) ("***Motion*** for Summary Judgment"). This motion requirement accords with the principle of party presentation – that the *parties* must present issues. This is called the principle of party presentation and it applies in this Circuit. E.g., Stevens v. Davis, 25 F.4th 1141, 1169 (9th Cir. 2022) ("A basic principle of our adversarial system is 'the principle of party presentation.'").

***Fourth***, this isn't a big ask. If Defendant believes that re-entry of judgment is correct and no intervening authorities have *any* effect upon the merits analysis, then Defendant can simply copy and paste its prior motion and re-submit it – adding citations to this Honorable Court's order as it sees fit. That's accomplishable quite readily. Then, Plaintiffs will have a chance to apprise this Honorable Court of intervening law and Defendant can reply. Yet, simply entering judgment when no motion has been filed, without a chance to amend, without a chance to brief, and without a presentation of the issues and authorities to which Plaintiffs can respond, is highly problematic. Worse still, it would preclude this Honorable Court from getting the law right by addressing the effect of intervening merits authority. Cf., e.g., Day v. McDonough, 547 U.S. 198, 210 (2006) (requiring "fair notice and an opportunity to present their positions").

## CONCLUSION

This Honorable Court should answer the which-complaint question in favor of the *amended complaint* under Royal Canin and determine jurisdiction thereof. If this Honorable Court believes that the Royal Canin has no effect and Broadway Grill still controls, then it should not decide unnecessary questions – and only determine whether identification of a diverse person and place of domicile *at the time of filing* is necessary and has occurred, as well as whether Defendant has shown that this person has suffered Article III injury in fact.

DATED: September 26, 2025

Respectfully submitted,

*/s/ Ryan Hamilton*

Ryan Hamilton
HAMILTON LAW LLC
5125 South Durango, Suite C
Las Vegas, Nevada 89113
(702) 818-1818
Ryan@HamLegal.com

*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing via electronic filing in CM/ECF.

DATED: September 26, 2025

*/s/ Ryan Hamilton*
Ryan Hamilton